UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

ANTHONY ZUPPO, )
   Petitioner, )
)
)
v. )  Case No.     504
)
WARDEN THOMAS CARROLL, )
       Respondent. )
)

FILED JUL 18 2005 U.S. DISTRICT COURT DISTRICT OF DELAWARE

---

OPENING BRIEF FOR GROUND ONE OF PETITIONER'S
HABEAS CORPUS

---

UNITED STATES DISTRICT COURT
J. Caleb Boggs Federal Building
844 King Street
Lockbox 18
Wilmington, DE 19801

ATTORNEY GENERAL OFFICE
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801

Dated; July 15, 2005

ANTHONY ZUPPO Pro-se
Delaware Correction Center
1181 Paddock rd.
Smyrna, DE 19977

Petitioner

TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . ii

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . 4

ARGUMENT

    I. THE TRIAL COURT'S DENIAL OF THE DEFENDANT'S REQUEST TO PROCEED PRO-SE VIOLATED THE DEFENDANT'S SIXTH AMENDMENT RIGHT TO REPRESENT HIMSELF. . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . 10

TABLE OF CITATIONS

CASES

Arnold v. U.S., 414 F.2d 1056 . . . . . . . . . . . 8

Bayless v. U.S., 381 F.2d 67 . . . . . . . . . . . 8

Burstein v. U.S., 178 F.2d 665. . . . . . . . . . . 9

Butler v. U.S., 317 F.2d 249 . . . . . . . . . . . 8

Chaman v. Spitzer, 553 F.2d 886 . . . . . . . . . . 9

Haslam v. U.S., 431 F.2d 362 . . . . . . . . . . . 8

Phillips v. Tobin, 548 F,2d 408 . . . . . . . . . . 8

Martinez v. Court of Appeal of California, 528 U.S. 152. . . . 8

Riggins v. U.S., 255 F. Supp. 777 . . . . . . . . . 8

Spirles v. Ricks, 297 F. Supp. 2d 629 . . . . . . . . 9

U.S. v. Cash, 47 F.3d 1083. . . . . . . . . . . 9

U.S. v. Dinneen, 463 F.2d 1036 . . . . . . . . . . 9

U.S. v. Dujanovic, 486 F.2d 182 . . . . . . . . . . 8

U.S. v. Lawrence, 605 F.2d 1321. . . . . . . . . . 8

U.S. v. Lepiscopo, 458 F.2d 977 . . . . . . . . . . 9

U.S. v. Pinkey, 548 F.2d 305 . . . . . . . . . . . 9

U.S. v. Mohawk, 20 F.3d 1480 . . . . . . . . . . . 8

U.S. v. Warner, 428 F.2d 730 . . . . . . . . . . . 9

Williams v. Bartlell, 842 F. Supp., 64 . . . . . . . . 9

## NATURE AND STAGE OF PROCEEDINGS

    The defendant was arrested after his relationship with the alleged victim, Wendy Reynolds. They dated from August 2000, till January 6th, 01 The defendant was arrested on January 6th, for three misdemeanors so that Reynolds could retrieve her belongings from the Defendant's home.

    On March 17th 2001, Zuppo and Reynolds had talked and Reynolds stated that she wanted to get back together. That same night Reynolds told Zuppo about the Rape charges he was being indicted for. From Mach 19th 2001 up to July 2001 Reynolds informed the Attorney Generals Office, the Prosecutor, Paul Wallace, and everyone else that knew of the charges against Zuppo that he was innocent, and that it was concentual sex. When Reynolds talked to the prosecutor, later that night he sent detective O'Sullivan to Zuppo's house and arrested him because Reynolds was at his house, the date was April 2, 2001. Then on April 5, 2001 Reynolds bails out Zuppo from jail. On April 10 2001 Zuppo was arrested again for picking Reynolds up from work. Zuppo was in jail from April 10, 2001 till June 8, 2001. Reynolds bailed out Zuppo from jail again, and was at EVERY arraignment Zuppo had during that time trying to have the no contact order dropped, and Reynolds had a paid lawyer, Jerome Capone, submit to the Courts a sworne affidait he drafted for her stating that it was concentual sex and that Zuppo did nothing wrong to her. On June 20th 2001 they where married in a chapel in Pennsylvania owned by Zuppo's friend and boss. On June 31st 2001, Zuppo and Reynolds had a argument. Reynolds threatened Zuppo with a knife. Zuppo tried to have Reynolds drop the knife in fear for her saftey as well as his own. Reynolds' fingers had been severely cut during the argument. Zuppo continued to take Reynolds to theropy for her fingers for the next three weeks. The police where not involved because Zuppo did nothing wrong, or criminal to warrent any charges, it was an accident.

    On August 1 2001 Zuppo was arrested for Assult 1st, PDWDCF, and Non-Comp. of Bond for marring Reynolds. Reynolds old boyfriend, Sean Hackett called detective O'Sullivan and told her that Reynolds and Zuppo where married and that Zuppo cut Reynolds hand in a argument.

    On January 29 2002 trial began and after the first day of trial, Zuppo saw how the public defender, James Batard Jr. was doing NOTHING to help his defense. That night Zuppo talked to a real lawyer that knew both Reynolds and Zuppo and Zuppo came to the conclusion of tring to change

1

counsel, or to proceed Pro-se if that was not an option. Zuppo was VERY nervous at the time of his request because he does not do this every day so he could not go on with this public defender because he was working with the prosecutor to help convict Zuppo and the trial transcripts do prove this allegation without any doubt, as does his lack of proper reprensentation as proven in Zuppo's Post-Conviction Relief, and also his Brief to the Supreme Court along with all the reply Briefs.

The jury found Zuppo guilty of fifteen counts and not guilty of Count II, Terroristic Threatening and Count XVII, Possession of a Deadly Weapon During the Commission of a Felony.

The defendant was sentenced on April 11, 2002. A notice of Appeal was filed by the public defender on April 15, 2002. The opening brief he filed clearly shows how he tried to make himself look good and again did NOTHING for the defendant Anthony Zuppo.

On September 26, 2003 Zuppo submitted his Post-Conviction Relief to the Superior Court, it was denied on February 28, 2005."Zuppo's Dirrect Appeal was denied on October 4, 2002".

Zuppo submitted his Brief to the Supreme Court on March 27, 2005 and it was filed on March 29, 2005. The decision was recieved on

## SUMMARY OF ARGUMENT

Sixth Amendment of the United States Constitution grants criminal defendant right to represent himself in proceedings against him, and if defendant choices to forego services of defense counsel and act on his own behalf, state cannot compel him to accept a lawyer he does not want, counsel that is thrust upon accused becomes organ of the state interposed between unwilling defendant and his right to defend himself personally.

## STATEMENT OF FACTS

THE FOLLOWING is a summary of facts noted by the truth of the trial transcripts.

In August of 2000, Wendy Reynolds and Anthony Zuppo began to date. On November 1st, 2000, Reynolds moved into Zuppo's house.(A- 8) During the move in of Reynolds, lies that Reynolds told to Zuppo in the begining of their relationship, started to surface. On December 18th, Reynolds started arguing with Zuppo about something that she lied about in the begining of their relationship. Both were in the bedroom at that time. Zuppo then left the bedroom, and went out to the livingroom to get away from Reynolds, as to try and stop the arguing.(A- 9) Reynolds followed Zuppo into the livingroom and didn't stop badgering him. Zuppo asked Reynolds to leave him alone. Reynolds started to, slap, and punch Zuppo on the head and arm. Zuppo told Reynolds over, and over that he would hit her in her arm as to stop her from hitting him, if she didn't stop. Zuppo told Reynolds this numorous times before he had to hit her to stop the abuse.(A- 9)

On December 20, 2000, Zuppo asked Reynolds to get married and Reynolds accepted. Around that time, Reynolds psychiatrist changed her medication from Prozac to another kind for stress from Reynolds job. Reynolds was more agresive, and argumentitive due to the change of her medication.(A- 10)

On January 5th 2001, at around 9:30am, Reynolds called Zuppo from her work to talk about a problem she was having at work. This turned into an argument. Zuppo told Reynolds that it would be better for their relationship if they spent some time apart. Zuppo said that they moved in together to soon. Reynolds became hysterical over the phone crying so Zuppo told her that they would talk later and hung up.(A-11)

Saturday, January 6th 2001, Reynolds went shopping around 2:00pm That evening around 4:30pm the poli e showed up at Zuppo's house and charged him with three misdermeanors that shocked and awed Zuppo because he didn't do anything but ask Reynolds to move. The police were there to help Reynolds, and to protect Sean Hackett her "ex-boyfriend" while they removed Reynolds belongings.(A-10)

On March 17 2001, Zuppo called Reynolds around 11:30pm. During their conversation, Reynolds stated that she wanted to meet somewhere and talk about getting back together. Zuppo and Reynolds spent the night together and decided to save their relationship. That morning

-4-

in bed, Reynolds told Zuppo of the rape charges that he was being indicted on. Reynolds told Zuppo that on January 6 2001, that officer Eckerd would not go to the house, that Zuppo owns soley, to assist in Reynolds getting her belongings. Eckerd told her that he could not get Zuppo out of the house unless he did something wrong to her. Reynolds told Zuppo that she felt pressured to make something up because she had rented a truck, Hackett was their to help, and the officer was insisting that Zuppo had to have done something wrong for her to want to move out. Reynolds stated that Zuppo grabbed her during a fight and pushed her down. Officer Eckerd then asked if Zuppo tryed anything sexual, Reynolds told Zuppo that she told office Eckerd of the sex they had on January 3rd but she said that she said "stop" so the officer would go to the house to get her belongings, and thats how the charges began.(A-11,12)

    March 23,2001, Zuppo was arrested for Non-Comp.Bond. and Reynolds bailded him out for $1000 dollars. April 2,2001 Zuppo was arrested again at his house because Reynolds was there and again Reynolds bailed him out for $5000 cash. On April 10,2001 Zuppo was arrested again after picking Reynolds up from work at 5:00pm. Reynolds again bailed him out on June 5,2001 for $43,000 dollars. During April 10th, and June 5th, when Zuppo was in jail, Reynolds contacted Hiddie Scott of the Attorney Generals Office and told her several times that Zuppo was innocent. Reynolds also told Paul Wallace the prosecutor the same, that Zuppo never assulted her and that it was consentual sex.

    During Zuppo's incarceration, Reynolds hired Jerome Capone to draft up her affidavit stating the fact that she lied to officer Eckard and that it was Concentual Sex. Capone presented Reynolds affidavit to commissioner Reynolds during Zuppo's arraignment on May 8 2001 along with Reynolds.(A-13,14)

    Upon Zuppo's release on June 8 2001, Zuppo and Reynolds stayed in springfield PA. for two weeks because of the no-contact order that Reynolds tried "numerous" times to have lifted at Zuppo's arraignments.(A-15) Zuppo and Reynolds where happily married on June 20 2001, in Aston PA. the BOTH entered into the marriage willingly. There were NO marks of any kind on Reynolds exspecialy a "clearly visable black eye", as Reynolds stated at trial.(A-16) An important witness for the defense, Dr. Rev Roe which Zuppo requested Bayard to subpoena, was not investigated or questioned because defense counsel Mr. Bayard said he could not get in touch with Dr. Rev. Roe. After Zuppo was rail-roaded at trial, he had NO prob-

lem getting in touch with Dr. Rev Roe. The Dr. Rev Roe supplied a sworn affidavit(A-17,18) proving that Reynolds made up this story. This shows another, of many lack of diligents on Mr. Bayards defense and also thus showing how he fell below his professional norm.

 On June 31,2001, Reynolds and Zuppo ingaged in an argument that resulted in Reynolds hand being cut. A month later on July 30,01, Sean Hackett, Reynolds ex-boyfriend called Det. O'Sullivan and told her that Reynolds married Zuppo and her hand got cut by Zuppo. Reynolds told Det. O'Sullivan that her being cut was unintentional and not Zuppo's fault. Reynolds also told the Det. that Zuppo never did anything wrong to her and that Zuppo was NOT guilty of the charges that he was charged with. Zuppo requested Mr. Bayard to have this tape and another tape by Reynolds played and entered into evidence during trial and he said he'd handle it. The day of closing arguments, Zuppo addressed the Court to have the tapes and other crutial evidence entered into evidence before trial started and Judge Vaughn Jr. said it was to late ??!!.(A-19,20,21,22)

 Since August 1st 2001, Zuppo has been incarserated for crimes he didn't comit and is and will continue to fight until he gets a new trial.

ARGUMENT

I. THE TRIAL COURT'S DENIAL OF THE DEFENDANT'S REQUST TO PROCEED PRO SE VIOLATED THE DEFENDANT'S SIXTH AMENDMENT RIGHT TO REPRESESENT HIMSELF.

STANDARD AND SCOPE OF REVIEW

The standard and scope of review is the abuse of discretion by the trial court not allowing the defendant to represent himself at trial.

GROUND ONE

Zuppo first asked the court to reassign counsel, he thought that he had to request that before asking to proceed pro-se. The trial court did deny his request to reassign counsel so he asked to proceed pro-se.

Zuppo has had a problem with the public defender, James Bayard Jr., since he was assigned to Zuppo's case. Zuppo did try to have counsel reassigned by filing a Motion to Change Counsel. (see P.C.R. exhibits AA-26 thru AA-29). Zuppo mailed from Gander Hill Prison THREE copys of said motion , one to the Attorney General's Office, one to Paul Wallace, the prosecutor, and one to James Bayard Jr. the Public Defender and they all said that they did not recieve a copy of the motion???. Zuppo mailed one copy to a private attorney he knows to review it for corrections and he recieved it . On the Notice of Motion  (AA-26) it states to send a copy of the Motion to the Deputy Attorney Generals Office and on the Affidavit of Service page (AA-29) it states to send copys to the prosecutor and public defender so thats what Zuppo did. On the form that Zuppo was given, it did not say to send a copy to the Prothonotary Office to be time and dated or he would have done that to . Zuppo strongly feels that the forms don't tell you to do that so that the attorney generals office does not have to comply with the law by answering the Motion if its not filed with the prothonotary's office.

During the first day of trial defense counsel James Bayard, did nothing to help defense and nothing to discredit the alleged victims false testimony. Later that night, Zuppo talked to a friend that was

7

very familiar with his case, and also a private attorney. Zuppo asked about going pro-se, and reviewed what he could and couldn't ask of a witness and what is unexceptable during trial. Zuppo had NO choice but to Proceed pro-se if the court would not reassign counsel, because the public defender, James Bayard Jr., was doing nothing to help Zuppo prove his innocents. Bayards actions, or lack of, during trial and in the dirrect appeal he submitted after trial on July 5, 2002, it clearly gives the court all the court needs to deny the appeal. Bayard cites cases that hinder the nature of the appeal and he helps the state in dening it. (see D.A. attached)

    Zuppo requested to represent himself and the trial court legaly had no right to deny Zuppo's request under the United States Constitution's Sixth Admendment.

> Martinez v. Court of Appeal of California, 528 U.S. 152
> Criminal defendants have a constitutional right to conduct their own defense at trial, if they voluntarily and intelligently elect to do so.
>
> U.S. v. Mohawk, 20 F.3d 1480
> Sixth Amendment confers upon criminal defendant right to represent himself at trial.
>
> U.S. v. Dujanovic, 486 F.2d 182,
> Phillips v. Tobin, 548 F.2d 408,
> Riggins v. U.S., 255 F. Supp. 777,
> An accused has a constitutional right to represent himself pro-se.
>
> Haslam v. U.S., 431 F.2d 362,
> Arnold v. U.S., 414 F.2d 1056,
> Butler v. U.S., 317 F.2d 249,
> Right to assistance of counsel under this amendment includes correlative right to dispense with counsel and to proceed in propria persona.
>
> Bayless v. U.S., 381 F.2d 67,
> U.S. v. Lawrence, 605 F.2d 1321,
> A defendant has a right to conduct his own case, and it is not only a statutory right but also a right under this

8

amendmend.

<u>Burstein v. U.S.</u>, 178F.2d 665,
<u>U.S. v. Pinkey</u>, 548 F.2d 305,
<u>U.S. v. Dinneen</u>, 463 F.2d 1036,
<u>U.S. v. Lepiscopo</u>, 458 F.2d 977,
<u>U.S. v. Warner</u>, 428 F.2d 730,
  The amendment does not force an attorney on a
  defendant.

* <u>Spirles v. Ricks</u>, 297 F. Supp. 2d 629,
  When a defendant knowingly, voluntarily, and un-
  equivocally elects to proceed Pro-se, a court is
  bound by the Constitution to honor that election
  regardless of how "Suicidal" it may appear to be.

* <u>Williams v. Bartlett</u>, 842 F. Supp. 64,
  Sixth Amendment guarantees the right to proceed
  Pro-se.

* <u>U.S. v. Cash</u>, 47 F.3d 1083,
  Defendant has constitutional right to proceed with-
  out counsel when he knowingly, voluntarily, and in-
  telligently elects to do so.

* <u>Chapman v. Spitzer</u>, 553 F. 2d 886,
  This Amendment grants, to EVERY criminal defendant
  State or Federal, the personal right to conduct his
  own defense.

   Zuppo conceeded his request to proceed Pro-se because he realized that the court, and public defender were going to do nothing to help in Zuppo's defense or to get the truth out during trial.
   Zuppo is begging the District Court of the United States to give him a second chance for a fair and just trial to prove his innocents. Zuppo will NOT have a public defender this time. Or can the District Court hold an Oral Argument hearing to allow Zuppo to prove and to be able to argue these allegations to the District Court.

## CONCLUSION

WHEREFORE in light of the aforementioned facts in Ground One, and in Ground Two, of the Petitioner's Habeas Corpus, the Petitioner prays that this Honorable Court rules in favor of the Petitioner and overturns his conviction and to release him from custody, or remand him over for a new and *fair* trial.

Respectfully Submitted,

*Anthony Zoppo*
Anthony Zoppo, Pro-Se
D.C.C. #283480
1181 Paddock Road
Smyrna, DE 19977

Date: July 15, 2005

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

_____,  )
     PETITIONER  )  CASE NO._____
  )
     V.  )
  )
_____,  )
     RESPONDENT  )

## ORDER

IT IS HEREBY ORDERED, THIS_____DAY OF_____, 2005 THAT THE ATTACHED MOTION FOR_____

_____

HAS BEEN READ AND CONSIDERED.

IT IS ORDERED THAT THE HABEAS CORPUS IS HEREBY GRANTED/DENIED.

IT IS FURTHER ORDERED THAT_____

_____

_____

_____

                                    _____
                                            JUDGE