IN THE SUPREME COURT OF THE STATE OF DELAWARE

**FILED**

JUL 18 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ANTHONY ZUPPO | ) | |
| Defendant-below, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. 87, 2005 |
| | ) | |
| STATE OF DELAWARE | ) | |
| Plaintiff-below, | ) | |
| Appellee. | ) | 0 5 - 5 0 4 |
| | ) | |

---

ON APPEAL FROM THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND
FOR NEW CASTLE COUNTY

---

APPELLANT'S OPENING BRIEF

Dated: *March 27*ᵗʰ 2005

ANTHONY ZUPPO , Pro-se
Delaware Correction Center
1181 Paddock rd.
Smyrna, DE 19977
Appellant

TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . ii

SUMMARY OF ARGUMENT . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . 2

ARGUMENT

    I.  THE TRIAL COURT'S DENIAL OF THE DEFENDANT'S FIRST
        POST-CONVICTION RELIEF FOR INEFFECTIVE ASSISTANCE
        OF COUNSEL PURSUANT TO SUPERIOR COURT CRIMINAL -
        RULE 61 . . . . . . . . . . . . . 5

CONCLUSION . . . . . . . . . . . . . . . 17

DEFENDANT'S SENTANCE . . . . . . . . . . . EXHIBIT

TABLE OF CITATIONS

<u>Cases</u>

<u>Albury v. State</u>, Del. Supr., 551 A.2d(1988).  .  .  .  .  .  .  5

<u>Freeman v. State</u>, Del. Supr., 317 A.2d(1974)  .  .  .  .  .  .  5

<u>State v. McKay</u>, Del. Supr., 382 A.2d(1978)  .  .  .  .  .  .  6

<u>State v. Flagg</u>, Del. Supr., 770 A.2d(1999)  .  .  .  .  .  .  6

<u>Wiest v. State</u>, Del. Supr., 542 A.2d(1988)  .  .  .  .  .  .  6

<u>Draper v. State</u>, 51 Del., 390 A.2d(1958)  .  .  .  .  .  .  6

<u>Flamer v. State</u>, Del. Supr., 227 A.2d(1967).  .  .  .  .  .  6

<u>Keller v. State</u>, Del. Supr., 425 A.2d(1981).  .  .  .  .  .  7

<u>Strickland v. Washington</u>, 466 U.S. 668(1984)  .  .  .  .  .  5,8

<u>Woods v. State</u>, Del. Supr., 315(1973)  .  .  .  .  .  .  .  9

<u>Lamuel Scott v. State</u>, Del. Supr., A.2d(1990)  .  .  .  .  .  9

<u>Williams v. State</u>, Del. Supr., 494 A.2d(1985)  .  .  .  .  .  9

<u>Ward v. State</u>, Del. Supr., 575 A.2d(1990)  .  .  .  .  .  .  9

<u>Webb v. State</u>, Del. Supr., 663 A.2d(1995)  .  .  .  .  .  .  9

<u>Slater v. State</u>, Del. Supr., 606 A.2d(1992).  .  .  .  .  .  9

<u>State v. Stevenson</u>,  Del. Oyer & Term, 188 A.2d(1936)  .  .  .  10

<u>Copper v. Fitz Harris</u>, 586 F.2d(9th Cir. 1978)  .  .  .  .  13

<u>Trump v. State</u>, 753 A.2d(Del. 2000).  .  .  .  .  .  .  14

<u>Caldwell v. State</u>, Del. Supr., 770 A.2d(2001)  .  .  .  .  14

<u>Morris v. State</u>, Del. Supr., 795 A.2d(20020)  .  .  .  .  14

<u>Williams v. State</u>, Del. Supr., 803 A.2d(2002)  .  .  .  .  14

<u>Weddington v. State</u>, Del. Supr., 545 A.2d(2000).  .  .  .  14

<u>Ryan v. United States</u>, 89U.S. L. Ed. 917(1892)  .  .  .  .  15

<u>Remmer v. United States</u>, 347U.S. 74S. Ct. L. Ed. 654(1954)  .  .  15

<u>Waller v. United States</u>, 389 A.2d 801  .  .  .  .  .  .  16

<u>CommonWealth v. Santiago</u>, PA. 318 A.2d 737 .  .  .  .  .  16

<u>466 U.S.</u> at 687  &  <u>Dawson</u> 673 A.2d at 1190.  .  .  .  5 thru 16

SUMMARY OF ARGUMENT

ANTHONY ZUPPO is claiming Ineffective Assistance of Counsel.

When a defendant is appointed counsel by the State, that counsel must have the intentions of proving the defendant innocent. Counsel must not be bias, or prejudice towards the defendant. Counsel must investigate ALL avenues and seek out ALL potential witnesses to benifit the defense.

A criminal defendant's right to have an impartial jury trial is one of the most fundamental rights under the United States Constitution. Inherent in the United States Constitution are the paramount notions of justice and fair process during criminal proccedings. Specifically, the Sixth, and Fourteenth Amendments to the United States Constitution require impartiality and fairness. The Sixth Amendment states;

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial (by an impartial jury)of the state and district wherein the crime shall have been committed; which district shall have been previously ascertained, by law, and to be informed of the nature, and cause, of the accusations; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense". [Emphasis added.]*

STATEMENT OF FACTS

THE FOLLOWING is a summary of facts noted by the truth of the trial transcripts.

In August of 2000, Wendy Reynolds and Anthony Zuppo began to date. On November 1st, 2000, Reynolds moved into Zuppo's house.(A-12) During the move in of Reynolds, lies that Reynolds told to Zuppo in the begining of their relationship, started to surface. On December 18th, Reynolds started arguing with Zuppo about something that she lied about in the begining of their relationship. Both were in the bedroom at that time. Zuppo then left the bedroom, and went out to the livingroom to get away from Reynolds, as to try and stop the arguing.(A-13) Reynolds followed Zuppo into the livingroom and didn't stop badgering him. Zuppo asked Reynolds to leave him alone. Reynolds started to, slap, and punch Zuppo on the head and arm. Zuppo told Reynolds over, and over that he would hit her in her arm as to stop her from hitting him, if she didn't stop.Zuppo told Reynolds this numorous times before he had to hit her to stop the abuse.(A-13)

On December 20, 2000, Zuppo asked Reynolds to get married and Reynolds accepted. Around that time, Reynolds psychiatrist changed her medication from Prozac to another kind for stress from Reynolds job. Reynolds was more agresive, and argumentitive due to the change of her medication.(A-14)

On January 5th 2001, at around 9:30am, Reynolds called Zuppo from her work to talk about a problem she was having at work. This turned into an argument. Zuppo told Reynolds that it would be better for their relationship if they spent some time apart. Zuppo said that they moved in together to soon. Reynolds became hysterical over the phone crying so Zuppo told her that they would talk later and hung up.(A-15)

Saturday, January 6th 2001, Reynolds went shopping around 2:00pm That evening around 4:30pm the poli e showed up at Zuppo's house and charged him with three misdermeanors that shocked and awed Zuppo because he didn't do anything but ask Reynolds to move. The police were there to help Reynolds, and to protect Sean Hackett her"ex-boyfriend" while they removed Reynolds belongings.(A-14)

On March 17 2001, Zuppo called Reynolds around 11:30pm. During their conversation, Reynolds stated that she wanted to meet somewhere and talk about getting back together. Zuppo and Reynolds spent the night together and decided to save their relationship. That morning

in bed, Reynolds told Zuppo of the rape charges that he was being in-
dicted on. Reynolds told Zuppo that on January 6 2001, that officer
Eckerd would not go to the house, that Zuppo owns soley, to assist in
Reynolds getting her belongings. Eckerd told her that he could not get
Zuppo out of the house unless he did something wrong to her. Reynolds
told Zuppo that she felt pressured to make something up because she had
rented a truck, Hackett was their to help, and the officer was insisting
that Zuppo had to have done something wrong for her to want to move out.
Reynolds stated that Zuppo grabbed her during a fight and pushed her
down. Officer Eckerd then asked if Zuppo tryed anything sexual, Reynolds
told Zuppo that she told office Eckerd of the sex they had on January
3rd but she said that she said "stop" so the officer would go to the
house to get her belongings, and thats how the charges began.(A-15,16)

    March 23,2001, Zuppo was arrested for Non-Comp.Bond. and Reynolds
bailded him out for $1000 dollars. April 2,2001 Zuppo was arrested
again at his house because Reynolds was there and again Reynolds bailed
him out for $5000 cash. On April 10,2001 Zuppo was arrested again after
picking Reynolds up from work at 5:00pm. Reynolds <u>again</u> bailed him out
on June 5,2001 for $43,000 dollars. During April 10th, and June 5th,
when Zuppo was in jail, Reynolds contacted Hiddie Scott of the Attorney
Generals Office and told her <u>several</u> times that Zuppo was innocent.
Reynolds also told Paul Wallace the prosecutor the same, that Zuppo
never assulted her and that it was <u>consentual sex</u>.

    During Zuppo's incarceration, Reynolds hired Jerome Capone to
draft up her affidavit stating the fact that she lied to officer Eckard
and that it was <u>Concentual Sex</u>. Capone presented Reynolds affidavit to
commissioner Reynolds during Zuppo's arraignment on May 8 2001 along
with Reynolds.(A-17,18)

    Upon Zuppo's release on June 8 2001, Zuppo and Reynolds stayed in
springfield PA. for two weeks because of the no-contact order that Rey-
nolds tried "numerous" times to have lifted at Zuppo's arraignments.(A-19)
Zuppo and Reynolds where happily married on June 20 2001, in Aston PA.
the BOTH entered into the marriage willingly. There were NO marks of any
kind on Reynolds exspecialy a "clearly visable black eye", as Reynolds
stated at trial.(A-20) An important witness for the defense, Dr. Rev Roe
which Zuppo requested Bayard to subpoena, was not investigated or ques-
tioned because defense counsel Mr. Bayard said he could not get in touch
with Dr. Rev. Roe. After Zuppo was rail-roaded at trial, he had NO prob-

lem getting in touch with Dr. Rev Roe. The Dr. Rev Roe supplied a sworn affidavit(A-21,22) proving that Reynolds made up this story. This shows another, of many lack of diligents on Mr. Bayards defense and also thus showing how he fell below his professional norm.

On June 31,2001, Reynolds and Zuppo ingaged in an argument that resulted in Reynolds hand being cut. A month later on July 30,01, Sean Hackett, Reynolds ex-boyfriend called Det. O'Sullivan and told her that Reynolds married Zuppo and her hand got cut by Zuppo. Reynolds told Det. O'Sullivan that her being cut was unintentional and not Zuppo's fault. Reynolds also told the Det. that Zuppo never did anything wrong to her and that Zuppo was NOT guilty of the charges that he was charged with. Zuppo requested Mr. Bayard to have this tape and another tape by Reynolds played and entered into evidence during trial and he said he'd handle it. The day of closing arguments, Zuppo addressed the Court to have the tapes and other crutial evidence entered into evidence before trial started and Judge Vaughn Jr. said it was to late ??!!.(A-23,24,25,26)

Since August 1st 2001, Zuppo has been incarserated for crimes he didn't comit and is and will continue to fight until he gets a new trial.

## ARGUMENT

I.  THE TRIAL COURT'S DENIAL OF THE DEFENDANT'S FIRST POST-CONVICTION RELIEF FOR INEFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO SUPERIOR COURT CRIMINAL - RULE 61.

### STANDARD AND SCOPE OF REVIEW

A defendant to succeed on a claim of Ineffective Assistance of Counsel, a movant must engage in the Two-Part analysis enuneiated in Strickland v. Washington 466 U.S. 668(1984) and adopted by the Delaware Supreme Court in, Albury v. State, Del. Supr., 551 A.2d, (1988).

ARGUMENT ONE: Ineffective Assistance due to counsel's failure to File motion to Suppress Erroneous Admission of Illegally siezed evidence in violation of 4th Amendment rights thus defendant was denied his 6th Amendment right:

Zuppo's 4th & 6th Amendment rights were violated when Wendy Reynolds acts as a officer of the state by giving Zuppo's property to Officer Eckerd on January, 6th 2001 after he requested her to get it from the house for him. Reynolds did not reside at Zuppo's house at that time and had NO legal right to Zuppo's belongings, only her own. If you read Zuppo's Post-Conviction Relief, then the Judge Vaughn's decision you will see that Judge Vaughn only relied on the commissioner's report and did not in any way review Zuppo's Post-Conviction Relief and just went by her report.

Freeman v. State Del. Supr., 317 A.2d 540(1974) states that "A search and seizure, etc., without a warrant must be based on probable cause and exigent circumstances which make securing of a warrant impracticable, suspicion is NO substitute for probable cause", officer Eckerd had none, no evidence of any rape, or any visible marks, or signs of any abuse, no exigent circumstance warrented officer Eckerd to enter Zuppo's house and to remove any of Zuppo's belongings. If Judge Vaughn had accually reviewed Zuppo's Post-Conviction Relief then he could might have concidered Zuppo's argument.

Mr. Bayard's errors were so grievous that his performance fell below an objective standard or reasonableness, and shows prejudice towards the defendant. 466 U.S. at 687: see Dawson, 673 A.2d at 1190.

5

ARGUMENT THREE: Defense counsel failed to file a Motion for
Severance of charges:

Zuppo argues that the charges from January, 6th 2001, Terroristic
Threatening, Offensive Touching, and Unlawful Inprisonment shoul have
been already heard in the lower courts. Trial was over a year and 23
days after those charges. Also the charges of Assualt 1st, PDWDCF,
and Non comp. Bond on August 1st 2001, where not related to the char-
ges Zuppo was indicted on in March, 2001. State v. McKay Del. Supr.,
382 A.2d 260(1978), State v. Flagg Del. Supr., 770 A.2d 797(1999),
Wiest v. State Del. Supr., 542 A2d 1193(1988),"Emphasis added",
Draper v. State 51 Del., 390, 146 A.2d 796(1958), and Flamer v. State
Del. Supr., 227 A.2d 123(1967), all support Zuppo's Argument and are
cited in his Post-Conviction Relief. Paul Wallace, Prosecutor, joined
the offences together without filing any Motion, infact only by a
motion from the prosecutor, can the offences be joined.This is so the
courts can insure a fair trial without the defendant being prejudiced.
It was and is prosecutional misconduct for the prosecution to abuse
his power and to side-step the legal process, and to nolle-prosequi
several times just to join all charges together without the Grand
Jury being informed for the second or third time that Zuppo was in-
dicted. This was very prejudice to Zuppo's case. Pursuant to Rule 12
(f) on Pretrial Motions, prior to any extension made by the court,
shall constitute waiver thereof, but the court for "cause" shown may
grant relief from the waiver .

Mr. Bayard's errors were so grievous that his performance fell
below an objective standard or reasonableness, and shows prejudice
towards the defendant. 466 U.S. at 687; see Dawson, 673 A.2d at 1190.

ARGUMENT FOUR: Defense Counsel failed to compel discovery:

Zuppo proves by the testomony straight from Mr. Bayard and a letter
from Deputy Warden Hawthorn, that Mr. Bayard kept Zuppo from listing
to taped statements that the prosecution had. Their is NO doubt of
this allegation by Zuppo, it is absolutely prejudice and shows malice
towards Zuppo.

Reynolds states about a letter from her doctor about her side-eff-
ects from medication. Exhibits A-13, A-14 of Post-Conviction attached.
Mr. Bayard did not question nor subpoena the doctor for trial to be
able to question him on the reliability of Reynolds statement about
that doctor drafting a false letter on her behalf.

6

Mr. Bayard did not even investigate about Wendy Reynolds, or Hermon Rivera's criminal record to discredit their testimony. They both have a felony record and could have impeached both witnesses.

Paul Wallace, Prosecutor, allowed various witnesses review from notes to refresh their memorys. Bayard did not object to the notes to see what they were reading. see Exhibits A-12-A-34-A-42 of Post-Conviction Relief attached. State failed to produce pictures that they tried to introduce into evidence. Testimony was already slid in as evidence about the pictures that allegedly showed bruises on Reynolds which left the jury with the uncontested assertions of the defendant, thus influencing the jury on its ultimate decision. Bayard questions Sean Hackett on the pictures then later in the trial, the prosecutor tries to enter these pictures into evidence and Bayard objects after Zuppo tells him to only because they were not presented in the discovery before trial. Why does Bayard object if he already questioned Sean Hackett about the pictures, he should have already known that the jury should never heard about these pictures but he discussed them anyway and you couldn't even make out what was in the pictures but Bayard let the testimony of these pictures prejudice the jury, thus hurting the defense. see Exhibits A-15, A-16, of Post-Conviction Relief attached.

Mr. Bayards errors were so grievous that his performance fell way below an objective standard or reasonableness, and shows prejudice towards the defendant. 466 U.S. at 687; see Dawson, 673 A.2d at 1190

ARGUMENT FIVE: Defense counsel failed to have the defendant arraigned on charges.

Again Judge Vaughn concurs with the Commissioner which leads Zuppo and should lead the Supreme Court to believe that Judge Vaughn did nothing but to concur just to sign-off of what the commissioner recommended. Zuppo does show proof of prejudice in the Docket sheet attached in his Post-Conviction Relief, that Zuppo was not rearraigned on the new indictments. If you look at the first indictment in March 2001, Zuppo was only arraigned on three charges only when the alleged victim told the Attorney Generals office that she lied and that Zuppo was innocent, is when the charges grew to 28, then at trial they dropped to 17. After Zuppo's last case review, Paul Wallace dropped all charges, then reindicted them, plus the Grand Jury never reconvened and never rearraigned Zuppo on the new set of charges. Zuppo suffered prejudice to substantial rights. Keller v. State, Del. Supr., 425 A.2d 152(1981). see Exhibits A-2 thru A-8 of

Post-Conviction Relief.

Mr. Bayards errors were so grievous that his performance fell way below an objective standard or reasonableness, and shows prejudice towards the defendant. 466 U.S. at 687; see Dawson, 673 A.2d at 1190

ARGUMENT SIX: Defense counsel failed to file a pretrial motion to dismiss.

Judge Vaughn, does not even address Zuppo's Sixth Argument. Wendy Reynolds recants her original statement from January, 6th & 28th 2001. She "Continually" attempts to have the charges against Zuppo Dropped, and the no contact order lifted for over FOUR months. Reynolds appeared at all Zuppo's arraignments between April, 10th & June, 5th 2001, and addressed the court all seven times, and once appeared with Jerome Capone and had him present her affidavit that he drafted, stating that she gave a false statement and that Zuppo and Reynolds had consentual sex on January, 3rd 2001. see Exhibit A-17 of Post-Conviction Relief attached. Zuppo requested Mr. Bayard to have the transcripts of ALL Zuppo's arraignments during that time for trial, he had none of them ready for trial.

Mr. Bayards errors were so grievous that his performance fell way below an objective standard or reasonableness, shows prejudice towards the defendant. 466 U.S. at 687; see Dawson, 673 A.2d at 1190

ARGUMENT SEVEN: Defense counsel failed to investigate, interview and subpoena witnesses.

Zuppo claims that defense counsel, Mr. Bayard, failed to investigate the availability of witnesses who could potentially contest the alleged victim's credibility, coupled with the failure to argue admissibility of arguably relevant evidence deprived defendant of the benefit of the evidence at trial. Defense counsel's minimal effort in investigating the facts of this case does not meet reasonable professional standards. Strickland v. Washington, 466 U.S. 668, 687(1984) These witnesses were no less avaulable before trial than they apparently were during Post-Conviction appellate review. Clearly, further investigation would have produced more information which would have influenced the jury if admissible. The lack of any product of an investigation into the victim's background left the jury with the uncontested assertions of the victim about her truthfulness. The lack of any substantial evidence against this defendant, other than the testimony of the prosecutrix, made this

case " a close one " see <u>Woods v. State</u>, Del. Supr., 315 A.2d 589,590 (1973), & <u>Lemuel Scott v. State</u>, Del. Supr., A.2d 438(1990). The Commissioner states in her report on August, 9th 2004 that " Zuppo has failed to establish how any of these witnesses could have contributed to the defense such that the outcome would have been different at trial " In Zupp's Post-Conviction Relief he states numorous witnesses, and in the Post-Conviction Exhibits there are affidavits which would have totally changed the outcome for the defense, proving that Reynolds was not abused or manipulated by Zuppo. All witnesses Zuppo asked to be investigated and subpoenaed for trial, would have testified that they never saw any marks on Reynolds or any signs of abuse. Bayard stated that he couldn't get in touch with them the day of trial. see Exhibits <u>A-18,A-19</u>,and <u>A-50</u> of Post-Conviction attached. Mr. Bayard has given false statements and testimony to Zuppo as well as the Court at trial. see also Exhibits <u>A-10,A-11</u> of <u>Post-conviction Relief</u> attached.

    Mr. Bayards errors were so grievous that his performance fell way below an objective standard or reasonableness, and shows prejudice towards the defendant. <u>466 U.S.</u> at 687; see <u>Dawson</u>, 673 A.2d at 1190.

<u>ARGUMENT EIGHT</u>: Defense counsel failed to have jury instructed on lesser included offenses,

    In the commissioners report and Judge Vaughn's decision, it clearly shows a lack of research and prejudice towards Zuppo. Judge Vaughn only relys on what the commissioner recommends, because if he actually reviewed Zuppo's Post-Conviction Relief then he would have answered the other two grounds in his decision. The commissioner also does not give a response to the other two grounds in Zuppo's Eighth Argument. Judge Vaughn just tries to finalize what the commissioner states, just like what Mr, Bayard did at trial, he just on cross-exam. of witnesses varifies the questions that Paul Wallace just asked. The trial transcripts prove this accusation.

    In <u>Williams v. State</u>, Del. Supr., 494 A.2d 1237,1241,1242(1985), it does show that defendant is entitled to instructions on lesser offenses. Reckless or Recklessness element under assualt second is also the <u>same</u> element needed in a lesser offense of reckless endangering 11 <u>Del</u>. C. 603. <u>Ward v. State</u>, Del. Supr., 575 A.2d 1156(1990). Since Zuppo was found Not Guilty of PDWDCF, he was entitled to have the jury to be able to charge him with a lesser included offense. <u>Webb v. State</u> Del. Supr., 663 A.2d 452(1995), <u>Slater v. State</u>, Del. Supr.,A.2d 606

1334(1992).

In Zuppo's second ground he proves that Mr. Bayard did not proper-
ly cross-examine or object to prejudical statements by the prosecutor.
Reynolds stated that she wanted to stab Zuppo and Mr. Bayard never trys
to argue that she was the aggressor. Exhibit A-21 of Post-Conviction
Relief attached.

In Zuppo's third ground, or part three, he shows proof that he had
the right to try and subdue or attempt to prevent, if able, any injury
to either party. State v. Stevenson, Del. Oyer & Term, 188 A.2d 750
(1936), 11 Del. C. 464.

The commissioner or Judge Vaughn also does not respond to ground
four either in Zuppo's Eighth Argument of his Post-Conviction Relief.

Mr. Bayards errors were so grievous that his performance fell way
below an objective standard or reasonableness, and shows prejudice
towards the defendant. 466 U.S. at 687; see Dawson, 673 A.2d at 1190.

ARGUMENT NINE: Defense counsel failed to raise a self-protection
defense.

In the commissioners report and Judge Vaughn's decision of argu-
ment nine the commissioner claims that "The evidence in this case
clearly does not support a self-defense" and Judge Vaughn states "
There was no credible evidence to support such a defense", thats
because Mr. Bayard did not try to elicit the evidence needed from
Wendy Reynolds on cross-examination'. In Reynolds testimony she admits
that she followed Zuppo out of the bedroom, to the livingroom and con-
tinued to hit Zuppo after, Zuppo tried to get away from Reynolds. see
Exhibits A-30 of Post-Conviction Relief attached.

Mr. Bayards errors were so grievous that his performance fell way
below an objective standard or reasonableness, and shows prejudice to-
wards the defendant. 466 U.S. at 687; see Dawson, 673 A.2d at 1190

ARGUMENT TEN: Defense counsel failed to show that the element of unlaw-
ful imprisonment were not meant. Defendant intitled to jury instruction.

Again Mr. Bayard does not properly cross-examine Reynolds on the
issue of the restraints. Bayard never displays that the restraints were
for a persons pleasure not harm and couldn't be used to harm. Bayard
did not explain to the jury or display the restraints to show that
the person that has them on could infact get out of them at any time
that they would desire without any problem. Reynolds uses the restraints

to try and show that she was bound and couldn't get loose and thats how Zuppo could have raped her. The lack of proper display and defense to the jury about the restraints shows that Bayard fell WAY below the legal standards of his dutys. Bayard made errors so serious that Bayard was not functioning as the "Counsel" guaranteed the defendant by the Sixth Amendment. Zuppo proves all threw his brief that Bayards deficient performance prejudiced the defense, and gave to the prosecution the outcome at trial that they wanted.

Zuppo does show the two-part test of Strickland, in this brief over and over by proving, prejudice, and that there would have been a different outcome favoring the defendant at trial if Mr. James Bayard Jr. was not so defective in his assistance and didn't make so many grievous errors and wasn't so prejudiced towards Mr. Zuppo. Mr. Bayards assistance was so defective that it should require reversal of Zuppo's conviction!!!

ARGUMENT ELEVEN: Denial of effective assistance of counsel due to conflict and bias.

The commissioner quotes what Mr. Bayard says about Gander Hill interview rooms having a plexiglass partition with a small opening between the prisoner and visitor. Have someone go to Gander Hill, Pod 2F and they will see in the interview room that a prisoner can put their whole arm through the hole in the plexiglass, and yank the visitor right up against the glass and quickly get their point across.

Zuppo tried to change counsel with a motion on December, 12 2001, see Exhibits A-26 thru A-29 of Post-Conviction Relief attached, and at the second day of trial. Joseph Longobardi III can verify that Zuppo has had numorous problems and confrontations with Mr. Bayard since September, 2001 and the courts did nothing to help solve this problem.

Mr. Bayards errors were so grievous that his performance fell way below an objective standard or reasonableness, and shows prejudice towards the defendant. 466 U.S. at 687; see Dawson, 673 A.2d at 1190

ARGUMENT TWELVE: Defense counsel failed to ask questions that were very important.

Judge Vaughn abuses his discretion concerning Zuppo's Twelfth Argument when he doesn't take into account, Zuppo's response to the commissioners report.

11

Mr. Bayard had two main witnesses for the defense and, only asked a average total of '12' questions a witness, and that included if they knew both the defendant and alleged victim. Also the rope in question was about 2ft long if that, and would have been impossible to do what Reynolds testified to and would have had to be atleast 5-6ft. to come close to what Reynolds said at trial. Mr. Bayard did not argue this point to prove that Reynolds did nothing but make up this story and infact perjured herself on the stand. If Mr. Bayard was competent, and tring to prove Zuppo's innocents then he would have properly challenged Reynolds' entire testimony and would have absolutly been able to have discredited her testimony and proven to the jury that you couldn't have believed a word this woman says!!! If Mr. Bayard questioned Reynolds properly then her testimony would have fallen apart and the jury would have seen threw her lies and found in favor of the defendant, Anthony Zuppo.

Mr. Bayards errors were so grievous that his performance fell way below an objective standard or reasonableness, and shows prejudice towards the defendant. 466 U.S. at 687; see Dawson, 673 A.2d at 1190.

ARGUMENT THIRTEEN: Defense counsel failed to submit evidense to impeach.

Zuppo again shows prejudice by his defense counsel, Mr. Bayard in the lack of defense by not using the two tapes from Reynolds taken by the Detective on January 28 2001, and July 30 2001. Both tapes from Reynolds proves Zuppo's innocents, and Bayard refussed to admit both tapes into evidense when Zuppo asked Bayard to do so. The only time that Reynolds agreed to help the state to prosecute Zuppo, was when they could sway her to lie after Zuppo was incarserated and paid Reynolds $25,000dollars for her to say what the prosecutor, Paul Wallace, wanted her to say know matter if it was true or not, and he also threatened to put her in jail for lieing.

The commissioner doesn't even know the clear facts of Zuppo's case to even give a recommendation to the court. The commissioner states "Police officer Sean Hackett", Hackett is NOT a police officer, he is Reynolds ex-boyfriend and the person who stole Reynolds journal and gave it to the Attorney Generals office which is just another violation of illegal evidense. Officer Eckerd wrights down on his report on March 16th 2001 that Sean Hackett said that Zuppo called and said "your days are numbered", but at trial Paul Wallace the prosecutor, had Hackett add to his statement "watch your back your days are numbered, to make the charge

12

a felony, "Aggrevated act of Intimidation" and to help tie in the entire prosecution's case against Zuppo. The defense counsel, Mr. Bayard, played right along with the prosecution, he gets paid by the state.

The commissioner and Judge Vaughn do not respond to Zuppo's second Ground or about the transcripts requested by Zuppo from his six arraignments and prelimanary hearing. Zuppo addressed the court to have the evidence entered that Bayard didn't enter in Zuppo's defense, the morning of closing arguments before the proceedings began and Judge Vaughn told Zuppo that it was to late?!. see Exhibits A-23, A-24, A-25, A-26.

Mr. Bayards errors were so grievous that his performance fell way below an objective standard or reasonableness, and shows prejudice towards the defendant. 466 U.S. at 687; see Dawson, 673 A.2d at 1190.

ARGUMENT FOURTEEN: Evidence was insufficient to substain a conviction.

The commissioner in her report states "the claims raised by Zuppo in this argument of his petition were not raised in the trial court or on direct appeal".The reason for Zuppo's petition is Ineffective Assistance of Counsel, so of course the fourteenth argument wasn't raised at trial or on direct appeal, because defense counsel, James Bayard Jr. was ineffective, and was so prejudice towards the defendant that Bayard had no real defense. Judge Vaughn states that "the evidence was clearly sufficient to sustain the conviction", their was NO physical evidence of any kind, only sex toys that Reynolds testified to using the whole time of her relationship to Zuppo.

Zuppo argues to the Supreme Court to take Argument Fourteen into consideration and to not procedurally bar this argument for reasons that Mr. Bayard would not use the contents of this argument in the dirrect appeal because it shows how he was ineffective and shows prejudice also.

ARGUMENT FIFTEEN: Defense counsel failed to object in a timely manner or to ask for jury instructions for prejudicial evidence, statements, etc...

Judge Vaughn doesn't even answer Argument Fifteen properly, and only relys on the commissioners report for his answer. Zuppo request the Supreme Court review his Argument Fifteen, Copper v. Fitz Harris, 586 F.2d 1325,1333(9th cir. 1978)," the courts have previously recognized that "Prejudice" may result from the cumulative impact of multiple deficiencie". The improper statements are indeed, " so clear and defense counsel's failure to object" is so excusable that the trial Judge had no

reasonable alternative other than to intervene, <u>Trump v. State</u>, 753 A.2d at 964(Del. 2000), <u>Caldwell v. State</u>, 770 A.2d 522, Del. Supr.,(2001) " Prosecutors use of hearsay statements from state's witnesses is improper and warrents reversal".

Zuppo list fourteen seperate occasions during trial that defense counsel should have objected to, and did warrant an objection but he failed to object. Their are many more insidences that also warranted a objection that Bayard should have objected but he doesn't?.

Mr. Bayards errors were so grievous that his performance fell way below an objective standard or reasonableness, and shows prejudice towards the defendant. <u>466 U.S.</u> at 687; see <u>Dawson</u>, 673 A.2d at 1190.

<u>ARGUMENT SIXTEEN:</u>It was prosecutorial misconduct and error of defense counsel to allow racil issues before the court and jury, failure to have the jury instructed caused prejudice.

The commissioner tries to side-step this argument and to misslead the courts with a false quote, not a factual quote from the trial transcripts. The commissioner says that " The prosecutor next asked if Zuppo was bothered by the photo", that is a made up quote by the commissioner to try and elude the fact of what was said, because what was said does with out a doubt warrant a reversal with out any question.TTheir was not a question by the prosecutor, it was more of a statement to prejudice the jury. The prosecutor says,"**And it bothered you that you saw her like that with a BLACKMAN**",(emphasis added)see Exhibit <u>A-58</u> of <u>Post Conviction Relief</u> attached. Also Judge Vaughn's decision for Argument Sixteen is so brief and doesn't even answer the Argument. That can only mean that Judge Vaughn didn't even review any of this Argument.

"Improper statements by prosecution led to reversal of conviction" <u>Morris v. State</u> 795 A.2d 653, Del. Supr.,(2002) "When prosecutor's remarks are challenging veracity of defendant is improper and requires reversal". <u>Williams v. State</u> 803 A.2d 927, Del. Supr.,(2002).

> Del. Supr., 1988. As matter of De. Law, improper injection of race as issue into criminal proceedings violate right of due process which is guaranteed to all defendants under State Constitution. Del. C. Ann. Const. Art 1 § 7. <u>Weddington v. State</u>  545 A.2d 607

Mr. Bayards errors were so grievous that his performance fell way below an objective standard or reasonableness, and shows prejudice towards

the defendant. 466 U.S. at 687; see Dawson, 673 A.2d at 1190.

ARGUMENT SEVENTEEN: Defense counsel failed to ask for a mistrial.

Judge Vaughn states in his decision that " The victim's comment to the jury was brief", that does not excuse the fact that the prosecutor's witness talked to the jury. It does not matter if she had a conversation, or stated two words, that is a fact and it is backed up by the trial transcripts and case law. see Exhibits A-39 A-40, of Post-Coviction attached. Nobody was shore what Reynolds did say. The prosecutor "Thinks", then Mr. Bayard says "He thinks", and nobody ever asks Reynolds what she said or took the time to question the juror, or jurors involved to find out what Reynolds accually said to them. Judge Vaughn clearly does not investigate this miscarriage of justice at trial, properly or to his legal abilitys, nor does Mr. Bayard try to do his dutys to have this issue properly handled the way a defense counsel tring to prove his client innocent would.

 Mattox v. United States, 146 U.S. 140,147-59, 13S.Ct. 50 53,36 L.Ed. 917(1892)=States that Private communications possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear.

Ryan v. United States, 89 U.S. App. D.C. 328,191 F.2d 779(1951). The court suggested that the proper procedure was to conduct a full evidentiary hearing and to allow the jurors involved to be examined and cross-examined. While it is important for the trial court to retain discretion in determining the extent and type of questioning appropriate under the circumstances of the case, once it is established that improper communications have occured, a searching inquiry for evidence of bias or prejudice must be made.

Remmer v. United States, 347 U.S. 227,229, 74S.Ct.450 451,98. L.Ed.654(1954)= Where an unauthorized communication with one or more members of the jury is brought to the trial courts attention during trial, and the presumption of prejudice to the defendant is not rebutted, the trial court must declare a mistrial.

> Waller v. United States, 389 A.2d 801=it states that
> " it is duty of trial judge to maintain integrity of
> trial by jury and if it appears at any stage of trial
> before verdict that misconduct of any juror or any ot-
> her person has tainted panel, trial should be stopped
> and mistrial granted.
>
> Common Wealth v. Santiago,Pa., 318 A.2d 737=it states
> that a mistrial should have been granted. "The minimal
> standards of constitutional due process guarantees to
> the criminally accused a fair trial by a panel of im-
> partial and "indifferent" jurors.

Even if the presumption of prejudice doctrine does not exist for all
cases of misconduct, in the case at bar, the nonincidental, intenti-
onal and nature of the conversation between Reymolds and jurors was
so egregious that Zuppo believes this case falls within the concept
of egregious actions. Mr. Bayard, trial court, and prosecutor must
be considered to be presumptively prejudicial tp petitioner.

   Finally, and most importantly, condoning such conduct as occ-
urred here as non-prejudicial would compromise the impartiality basis
for jury trial process in our adversary system. A states main witness
in a criminal case communicating to the jury during the trial, and
then failing to adequatly determine what was said by questioning the
jurors or witness as to what she said, might conceal an ulterior mo-
tive or hidden agenda. Even if that is not the case, the inherent
appearance of impropriety cast a shodow over the trial process, which
necessarily diminishes the integrity of the system in minds of defen-
dant and the public itself. In essence, the egregious circumstances
created by Reymolds and jurors in this factually narrow situation
place a significant burden on State to refute all possible prejudices.
While we cannot, for certain, affirmatively state that any such biases
or prejudices occurred in this case, we can be sure that the possibi-
lity for such strong in light of the substantial and personal contact
between the jurors and the State's witness during the trial.
   Mr. Bayards errors were so grievous that his performance fell
way below an objective standard or reasonableness, and shows preju-
dice towards the defendant. 466 U.S. at 687; see Dawson, 673 A.2d at
1190.

## CONCLUSION

After reviewing the record, Commissioners report, and Judge Vaughn's decision or "lack of", and case law. It is clear that Zuppo has proven the Two Part test by STRICKLAND. Zuppo clearly shows prejudice threw out all his arguments by defense counsel, James Bayard Jr. Zuppo also shows how there would have been a different outcome to favor the defendant if James Bayard's errors weren't so grievous and that his repensentation did not fall so far below an objective standard. Zuppo believes the investigative deficiencies by defense counsel concerning the critical issues of the alleged victim's believability where consent is a defense prejudiced the defendant's opportunity for a full and fair trial. Zuppo strongly request the Supreme Court of Delaware, to reverse the conviction and the case be remanded for a new and "fair" trial by the reasons set forth in Zuppo's Brief.

Dated: *March 27th* 2005

RESPECTFULLY SUBMITTED

ANTHONY ZUPPO    Pro-se
D.C.C. #283480
1181 Paddock rd.
Smyrna, DE 19977

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE

     VS.

ANTHONY G ZUPPO

Alias: See attached list of alias names.

DOB: 05/06/1965
SBI: 00283480

CASE NUMBER:
0101004412

CRIMINAL ACTION NUMBER:
IN01-09-2232
RAPE 2ND(F)
IN01-09-2231
ATT. RAPE 2nd(F)
IN01-08-1607
ASSAULT 1ST(F)
IN01-09-2238
AGG.ACT/INTIMI.(F)
IN01-09-2241
AGG.ACT/INTIMI.(F)
IN01-09-2242
AGG.ACT/INTIMI.(F)
IN01-09-2227
UNLAW IMPR 1ST(F)
LIO:KIDNAP 2ND
IN01-09-2233
ASSAULT 3RD(M)
IN01-09-2236
HARASSMENT(M)
IN01-09-2229
OFF TOUCHING(M)
IN01-09-2234
NONC W/CON BOND(M)
IN01-09-2235
NONC W/CON BOND(M)
IN01-09-2240
NONC W/CON BOND(M)
IN01-09-2243
NONC W/CON BOND(M)
IN01-09-2226
NONC W/CON BOND(M)

## SENTENCE ORDER

NOW THIS 11TH DAY OF APRIL, 2002, IT IS THE ORDER OF THE COURT THAT:

The defendant is adjudged guilty of the offense(s) charged.
The defendant is to pay the costs of prosecution and all
**APPROVED ORDER**    1    June 25, 2002 14:06

STATE OF DELAWARE
            VS.
ANTHONY G ZUPPO
DOB: 05/06/1965
SBI: 00283480

statutory surcharges.


  AS TO IN01-09-2232 : TIS
  RAPE 2ND


   The defendant shall pay his/her restitution as follows:
$25000.00 TO VIOLENT CRIMES COMP. BOARD


**Effective August 1, 2001  the defendant is sentenced
as follows:**

 The defendant is placed in the custody of the Department
of Correction for 10 year(s) at supervision level 5


  AS TO IN01-09-2231 : TIS
  ATT. RAPE 2nd

 The defendant is placed in the custody of the Department
of Correction for 5 year(s) at supervision level 5


  AS TO IN01-08-1607 : TIS
  ASSAULT 1ST

 The defendant is placed in the custody of the Department
of Correction for 4 year(s) at supervision level 5


  - Suspended after serving 2 year(s)  at supervision level 5


  - For 2 year(s)  supervision level 2


  - Suspended after serving 1 year(s)  at supervision level 2


  - For 1 year(s)  supervision level 1


 Probation is consecutive to criminal action number
IN01092231

**APPROVED ORDER**    2    June 25, 2002 14:06

```
STATE OF DELAWARE
        VS.
ANTHONY G ZUPPO
DOB: 05/06/1965
SBI: 00283480
```

AS TO IN01-09-2238 : TIS
AGG.ACT/INTIMI.

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

- Suspended after serving 1 year(s)  at supervision level 5

- For 1 year(s)  supervision level 2

- Suspended after serving 6 month(s)  at supervision level
2

- For 6 month(s)  supervision level 1


Probation is consecutive to criminal action number
IN01081607


AS TO IN01-09-2241 : TIS
AGG.ACT/INTIMI.

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

- Suspended after serving 1 year(s)  at supervision level 5

- For 1 year(s)  supervision level 2

- Suspended after serving 6 month(s)  at supervision level
2

- For 6 month(s)  supervision level 1


Probation is consecutive to criminal action number
IN01092238


AS TO IN01-09-2242 : TIS
AGG.ACT/INTIMI.

The defendant is placed in the custody of the Department

**APPROVED ORDER**     3     June 25, 2002 14:06

STATE OF DELAWARE
        VS.
ANTHONY G ZUPPO
DOB: 05/06/1965
SBI: 00283480

of Correction for 2 year(s) at supervision level 5

  - Suspended after serving 1 year(s)  at supervision level 5

  - For 1 year(s)  supervision level 2

  - Suspended after serving 6 month(s)  at supervision level
2

  - For 6 month(s)  supervision level 1

 Probation is consecutive to criminal action number
IN01092241

 **AS TO IN01-09-2227 : TIS**
 **UNLAW IMPR 1ST**

 The defendant is placed in the custody of the Department
of Correction for 1 year(s) at supervision level 5

  - Suspended for 1 year(s)  at supervision  level 2

  - Suspended after serving 6 month(s)  at supervision level
2
  - For 6 month(s)  supervision level 1

 Probation is consecutive to criminal action number
IN01092242

 **AS TO IN01-09-2233 : TIS**
 **ASSAULT 3RD**

 The defendant is placed in the custody of the Department
of Correction for 6 month(s) at supervision level 5

  - Suspended for 6 month(s)  at supervision  level 2

 Probation is consecutive to criminal action number

**APPROVED ORDER**    4    June 25, 2002 14:06

STATE OF DELAWARE
        VS.
ANTHONY G ZUPPO
DOB: 05/06/1965
SBI: 00283480

IN01092227


AS TO IN01-09-2236 : TIS
HARASSMENT

The defendant is to pay a fine in the amount of $100.00
plus all surcharges and fees (see attachment).


AS TO IN01-09-2229 : TIS
OFF TOUCHING

The defendant is to pay a fine in the amount of $100.00
plus all surcharges and fees (see attachment).


AS TO IN01-09-2234 : TIS
NONC W/CON BOND

The defendant is placed in the custody of the Department
of Correction for 1 month(s) at supervision level 5


AS TO IN01-09-2235 : TIS
NONC W/CON BOND

The defendant is placed in the custody of the Department
of Correction for 1 month(s) at supervision level 5


AS TO IN01-09-2240 : TIS
NONC W/CON BOND

The defendant is placed in the custody of the Department
of Correction for 1 month(s) at supervision level 5


AS TO IN01-09-2243 : TIS
NONC W/CON BOND

The defendant is placed in the custody of the Department
of Correction for 1 month(s) at supervision level 5  .


AS TO IN01-09-2226 : TIS

**APPROVED ORDER**    5    June 25, 2002 14:06

STATE OF DELAWARE
         VS.
ANTHONY G ZUPPO
DOB: 05/06/1965
SBI: 00283480

NONC W/CON BOND

The defendant is placed in the custody of the Department
of Correction for 1 month(s) at supervision level 5

SPECIAL CONDITIONS BY ORDER

STATE OF DELAWARE
    VS.
ANTHONY G ZUPPO
DOB: 05/06/1965
SBI: 00283480

CASE NUMBER:
0101004412

Have no direct or indirect contact with Wendy Reynolds.

Defendant shall receive mental health evaluation and comply
with all recommendations for counseling and treatment
deemed appropriate.

NOTES

The no contact order with Wendy Reynolds is a zero
tolerance condition.

The state has 30 days to apply for additional restitution.

JUDGE JAMES T VAUGHN JR.

**APPROVED ORDER**     7     June 25, 2002 14:06