IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEWCASTLE COUNTY

Anthony Zuppo

   Petitioner

v.s.

State of Delaware

   Respondent

)
)
)
)
)
)
)
)
)
)

CR. A. NO._____

FILED

JUL 1 8 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

MOTION FOR POSTCONVICTION RELIEF

MEMORANDUM OF LAW

Dated : September 22, 2003

Anthony Zuppo

Anthony Zuppo

Delaware Corection Center

1181 Paddock Rd.

Smyrna, De. 19977

A-27

GROUND ONE: INEFFECTIVE ASSISTANCE OF COUNSEL

STANDARD AND SCOPE OF REVIEW

A defendant to succeed on a claim of ineffective assistance of counsel, a movant must engage in the TWO-PART analysis enunciated in Strickland vs. Washington, 466 U.S. 668 (1984) and adopted by the Delaware Supreme Court in, Albury vs State, Del. Supr., 551 A.2d (1988).

ARGUMENT ONE: INEFFECTIVE ASSISTANCE DUE TO COUNSELS FAILURE TO FILE MOTION TO SUPPRESS ERRONEOS ADMIS-SION OF ILLEGALLY SIEZED EVIDENCE IN VIOLATION OF 4th AMENDMENT RIGHTS THUS DEFENDANT'S WAS DENIED HIS 6th AMENDMENT RIGHT.

In this case the defendant is relying on not only Strickland vs Washington case but also United States vs Baynes, 687 F.2d 659 (3rd Cir. 1970); and Kimmelman vs Morrison, 106 S. CT. 2574 (1986).

After the defendant was indicted and charges were dropped on three different occasions, original counsl withdrew from the case and a public defender was appointed to the defendant's case. The last reindictment was September 24, 2001, after being nolle prosequi.

On September 28, 2001, counsel James Bayard Jr. filed discovery. Even if the items obtained in State's Exhibit #8 (Rope, Blindfold, and Velcro restraints) "Exhibit A I" were illegally obtained, they were revealed to attorney for defense through discovery. He the failed

A-28

to communicate what evidence the State had against the defendant.

An erroneous error occured when counsel failed to investigate how the State's evidence was obtained. This prevented counsel from asserting and objecting to a 4th admendment claim to improper seizure of evidence at trial or, filling for a pretrial supression hearing. Since counsel failed to prepair, he could not effectively communicated with the defendant. Defense counsel failed in his duty to protect defendants Constitutional claims and rights so that he (defendant) would receive a fail trial.

First the defendant must show that their is a legitimate 4th Amendment Claim to establish that he was deprived of effective representation and a Fair Trial. "A Search and Seizure, etc, without a warrant must be based on probable cause and exigent circumstances which make securing of a warrant impracticable. Suspicion is no substitute for probable cause, <u>Freeman vs State</u>, Del. Supr., 317 A. 2d 540 (1974).

Only during an arrest, evidence of the alleged crime in which the defendant has been arrested for maybe seized. Suspicion does not justify the seizing of other property without a warrent. Suspicion is not substitute for probable cause. Property that is unrelated to the arrest <u>can not</u> just be taken. Probable cause must be established and a warrant obtained to remove evidence from property.

On the day in question, January 6th 2001, Wendy Reynolds left he place of residence. She left with the intentions, only to return for her belongings. She did return to retrieve he belongings with the aid of officer Michael Eckerd.

A-29

The defendant Anthony Zuppo was arrested for Offensive Touching, Terroristic Threatening, and Unlawful Imprisonment 2nd Degree. During Ms. Reynolds statement to Officer Eckerd, the Rope, Blindfold, and restraints were never mentioned. They were not used or part of the alleged crimes which the defendant was arrested for.

The residence at 107 Lea rd. Newcastle was owned soli. by Anthony Zuppo. Since Ms. Reynolds had vacated the residence, the only right she had was to retrieve her belongings which she did with the aid of Sean Hacket and Officer Eckerd. This did not give either persons the right to take anything from the residence without permission, which neither party had. Officer Eckerd did not have a warrant or Court Order to enter the resident without the permission from the defendant.

Pursuant to the transcripts, Eckerd's testimony states Ms. Reynolds retrieved the Rope, Blindfold, and Restraints from under the Master bed. Exhibit A-1. The transcripts reflect that no testimony as to a warrant to seize and remove the defendant's property was given. There was no exigent circumstances why Officer Eckerd did not obtain a warrant since the defendant was already detained by arrest.

This evidence had a very impressionable effect on the jury. Without this evidence, the jury would not have been prejudiced. The testimony of the defendant would have had more impact as trustworthy. Without, the defendant would not have been convicted of Unlawful Imprisonment 1st Degree and the Attempted Rape 2nd, Rape 2nd most likely would have been lesser charges, and a good chance of acquittal.

A-30

Certainly, defense attorneys errors caused his further failure to file a Motion of Suppression. Failure to Motion to Suppress the illegally obtained evidence prejudiced the defendant by influencing the jury which lead to the conviction. The influenced jury also convicted on higher degree of other charges.

The defendant must and has shown "cause". Pursuant to Rule 12(F) on Pretrial Motions; prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

It was error of defense counsel for his failure to timely object to admission of evidence that was siezed improperly without a warrant. Due to defense counsel's unprofessional cross examination of Officer Eckerd and failure to challenge the evidence under cross, defense counsel permitted the violation of the defendant's constitutional to a 4th Amendment claim.

Whereas, for cause shown, the court should grant relief from a waiver of rights that the defendant was not aware of and that his attorney is suppose to protect.

Where as, the evidence should be excluded and defendant given a new trial.

Where as, relying on both the language stone and the different natures of Fourth and Sixth Amendment claims, the court of [477 U.S. 373] Appeals concluded that stone should not be entended to bar consideration of Sixth Amendment claims based on counsel's alleged failure competently to litigate Fourth Amendment claims, 752 F.2d 918 (1985). The Court of Appeals determined that defendant's trial counsel has been "Grossly Ineffective," 752 F.2d at 922.

A-31

Therefor, the defendant's attorney should be found ineffective and conviction reversed and remanded for new trial.

ARGUMENT TWO: DEFENSE COUNSEL FAILED TO FILE A MOTION FOR A SPEEDY TRIAL.

On January 6th 2001, the defendant was arrested on three charges, Offensive Touching, Terroristic Threatening, and Unlawful Imprisonment 2nd Degree. Defense counsel failed to file for a speedy trial which that would have brought these offenses to trial in less than 180 days. Exhibits A-2 thru A-8

Due to the judge granting the withdraw of earlier counsel made this prejudice to the defendant due to the delay. It is well noted that memories fade with time which was evident threw out trial since so many prosecution's witnesses had to refer to statements or note's.

Also due to delays and other charges, the defendant was not brought to trial for over a year. Certainly very prejudical to the defendant for the following reasons. The defendant was not found guilty of Terroristic Threatening and the Unlawful Imprisonment 2nd disapeared from the Docket. Any and all other charges that followed these first three charges, the jury would not have heard any evidence presented in the effort to convict the defendant. The jury would not have known about the first charges and other decisions might have been made.

The other charges following the original three charges occured past the 180 days. The new offences charged were not based on the same act or transaction due to the time between the charges. The two or more acts or transactions were not connected together or constituting part of a common schene or plan.

When the jury heard evidence of crimes not committed to infer

A-33

a general criminal disposition or even a charg that should have been heard prior to other chargers can result in a general criminal disposition. Even the sheer mass of the charges in this case rendered it extremely unlikely that a jury will be able to resist the accumalative effect of linking the defendant to a general criminal disposition. This failure to have a speedy trial denied the defendant a fair trial and due process.

A-34

ARGUMENT THREE: DEFENSE COUNSEL FAILED TO FILE
A MOTION FOR SEVERANCE OF CHARGES.

Severance should not be denied when the sheer mass of charges in a case rendered it extremely unlikely that a jury will be able to resist the cumulative effect of evidence linking the defendant to separate charges. State vs McKay Del. Supr., 382 A.2d 260 (1975)

It is the duty of the defense counsel to insure that the defendant receives the fairest trial. It was defense counsels failure to Motion the court for a speedy trial. This motion would have prevented the charges from being joined in the Mass quanity. The Joiner of several sets of charges based on crimes committed months apart were improper and inapropriate where defendant would be forced to present separate and distinct defenses there to, subjecting defendant to embarrassment and confusion. State vs Flagg Del. Super., 770 A.2d 797 (999) emphasis added.

It was the prosecutors plan and scheme of the joining of the charges to deny the defendant a fair trial by bringing a mass of charges against the defendant at one time. The prosecutor knew that his chances would increase with the improper Joiner of charges. It is the duty of defense counsel to protect the defendant and to insure a fair process. It's evident that the result from the joining of charges was prejudical. The prejudice which the defendant did suffer from the joiner of offenses is; 1) The jury cumulated the evidence of the various crimes charged and found guilt when, if considered separatly, it would not be found; 2) The jury used the evidence of one of the crimes to infer a general criminal disposition of the defendant

A-35

in order to find guilt of the other crime or crimes. 3)The defendant was subject to embarrassment and confusion in presenting different and separate defenses to different charges. <u>Wiest vs State</u>, Del. Supr., 542 A. 2d 1193 (1988)"Emphasis added".

Unless offenses are indictable in same indictment, they are ordinarily are not proper for consolidation. <u>Draper vs State</u>, 51 Del. 390, 146 A. 2d 796 (1958). Only if the defendant does not consent to consolidation, he can object to the evidence of several charges as prejudical. <u>Flamer vs State</u> Del. Supr., 227 A. 2d 123 (1967).

Only by motion from prosecution can offenses be joined. This is so that the court can insure a fair trial without the defendant being prejudiced. It was error and prosecutional misconduct for the prosecutor to abuse the power to side step a process. It was error to nolle prosequi several times and the reindict several times just so that the prosecution could get the upper hand by overwhelming the defense, by bringing all charges together in one indictment. Thus prejudicing the defendant with other bad acts even if defendant was not convicted.

Pursuant to Rule 12(F) on Pretrial Motions, prior to any extension made by the court, shall constitute waiver thereof, but the court for "cause" shown may grant relief from the waiver.

A-36

ARGUMENT FOUR: DEFENSE COUNSEL FAILED TO COMPEL DISCOVERY.

It is the duty of counsel to compel discovery and should be done with pretrial motions under Rule 12. Motion to compele discovery under Rule 16.

The defendant has the right to review all evidence, Transcripts, tapes, and statements which have been given as evidence. Ray vs State, Del, Supr., 587 A.2d 439 (1991); "Jenks vs U.S." The defendant's attorney failed to provide to the defendant tapes; police reports, Court hearing preliminary transcripts, grand jury testimony, and signed statements. This prevented the defendant from participating in preparing his defense and prevented the defendant from giving an input to defense counsel, that could have lead to important information through investigation and interviews. Any false statements on tape, etc., only the defendant could provide insight on how to impeach the State's Witnesses or provide other defenses. Exhibits: A-9 A-10 A-51 A-52.

Pursuant to 26.2, Production of statements of witnesses, any statements which have been testified to; (F)(3) Even a statement, however taken or recorded, or a transcription there of, made by the witnesses to grand jury falls under the rules of discovery. Any signed statements given to the police or prosecutor which is used by any witness that testifies to the statements must be given up in discovery. The defense attorney failed to compel discovery or failed to provide any of the above evidence, tapes, Transcripts, reports, etc... so that the defendant could actively participate in his defense.

A-37

This prejudiced the defendants ability through out the trial and certainly had an impact on how his case was presented to the jury. Only through a evidentary hearing will this issue be satisfied as being moot.

The defense counsel over all his years in practice knew that special arraingments had to be made at the prison so the defendant could listen to taped statements. He failed the defendant in this case. Exhibits A-10  A-11.

The defendant is entitled to discovery of everything the State is entitled to persuant to Rule 16. The defendant is entitled to discovery of any criminal record of any states witness for impeachment purposes. The alleged victim has a prior criminal record in Maryland (Ms. Reynolds). Also Hermon Rivera has a criminal record which should have been used as impeachable evidence for truthfullness. It is the States duty to provide this information and the defense attorney's duty to investigate so that he can compele discovery of such information.

It is the defense counsels duty to compele the discovery of the Hospital report of the injurys to the alleged victims hand in the assult charge in July 01. The attorney's failure prevented his ability to secure testimony of what the alleged victim stated to medical personal on how the injury accored. Any statement, record, etc... was exculpatory evidence purtaining to the alleged victim. If prosecutor knew of this evidence and failed to provide, discovery was violated. Only through an evidentary hearing can it be established that the State knew of this evidence that the evidence was exculpatory, and the prosecutor elected not to inform the defence.

The evidence was needed for impeachment purposes, who treated alleged

A-38

victim, any statement given to Hospital personal, any medical insight on how injury occurred, and whether the alleged victim would recover fully from injurys.

The prosecution brought in statements to give to witnesses in the courtroom to refresh the witnesses memory without disclosing these statements to defense before or during trial. The defense certainly did not know what was on the paper that was presented to prosecution witnesses at trial. Exhibits A-12 A-34 A-42

The prosecution was also aware of the exculpatory value of the doctor's statements on the side effects of the medicine that the alleged victim was taking. Exhibits A-13 A-14. Failure to inform is violation of discovery.

Even the alleged victim's medical records were discoverable and state was in possesion of this information, even other information concerning the mental state.

\* State failed to produce pictures that they tried to introduce into evidence. Testimony was already given doing harm that was not reversible. Failure to give discovery to defense was a violation of defendants rights.

Why does Mr. Bayard question Sean Hacket on alleged pictures, then later objects to the pictures ?! Exhibits A-15 A-16

A-39

ARGUMENT FIVE: DEFENSE COUNSEL FAILE TO HAVE THE DEFENDANT ARRAIGNED ON CHARGES.

No were in the Docket, transcripts or in writing did the court or the defense counsel see to it that the defendant plead to the charges or understand the charges presented to the court. Assult 1st Degree, Non Complance with Bond, and PDWDCF. Pursuant to Ray vs State, 262 A.2d 643 (1970), if the defense attorney enters a plea on behalf of the defendant, it must be done in his presence. Exhibits A-2 thru A-8

It was error of the defense attorney not to object to the courts failure to have the defendant arranged on the charges in the final indictment. Exhibits A-2 thru A-8. This error prevented the defendant from having a complete understanding of the indictment.

The defendant had been arranged on an indictment that had some of the charges that were in the final indictment. Only the court has the power to amend indictment as to matter of form, but not as a matter of substance, as long as no new, additional or different charges are there by and if the accused will not otherwise suffer prejudice to substatial rights. Keller vs. State, Del. Supr., 425 A.2d 152(1981) Exhibits A-2 thru A-8.

Pursuant to Rule 13, the court may order two indictments to be heard together. It is error, not only by the defense attorney for permitting several indictments to be heard together but it was also an abuse of power by the prosecutor to Nolle Prosequi charges so that the judge may be by passed and that all charges could be put in on indictment. This was done to avoid any objections or having the amendment to the indictment denied by the court. This act and conduct of the prosecutor

A-40

did violate the defendants rights (Not to be charged repetitively) thus prejudicing the defendant by time delay, memory Loss, Consoladation of charges along with overwhelming evidence. Defense counsel is just as much at fault with these violations since counsel permitted them to occur without objection.

Only the judge has the right to amend an indictment and can not add any additional charges. Pursuant to Rule 13, only the judge can order two different indictments to be heard at one trial. This is only after due consideration on the predical effect that it will have on the defendant. The prosecutor not only took this right from the judge but a chance for the defense to object.

When the prosecutor Nolle Prosequi the original indictment on at least three times. The sole purpose was to join several charges into one indictment just to prejudice the defendant. Clearly the prosecutor abused his authority which was not his to posses. It is a violation of Double Jeopardy to drop charges and then reindict on several occassions without any new evidence to substantiat this invasion on the defendant.

A-41

ARGUMENT SIX: DEFENSE COUNSEL FAILED TO FILE A
PRETRIAL MOTION TO DISMISS.

Prior to trial, the alleged victim (Wendy Reynolds) contacted an
attorney (Jerome Capone) and informed him that she wanted to recant
her statement that was given to the police during a Breach of Peace.
This statement to police had never been testified to as trustworthy or
anything signed by the alleged victim. She not only had contact with
Jerome Capone once but many times, in person by phone and had him go
to defendants arraignment to present Ms Reynolds recantation Exhibit A-17
Mrs. Reynolds had many of opportunities to change her mind on her recanting
a statement that she stated was false. Even after her attorney informed
her that she would be facing charges and a fine if she goes through
with her recanting of her statement on Jan 6th 01. Even with this
weighing over her head, she still insisted on bringing the Truth out in
the open. Exhibit A-17.

Ms. Reynolds even went to all the defendants arraignments
from March thru July 01. Ms. Reynolds gave testimony under oath which
she recanted her original statement as being false. The judge at Trial
was not aware of her prior testimony or was the jury made aware of it.
This goes to the credibility of the alleged victim. When the alleged victim
recanted and then gave sworne testimony, she then should have faced perjury
charges. The judge in this case was not aware of prior testimony or was
he?.

It was the defense counsel's failure to file a timely motion to
have the charges dismissed, At the time of recanting of Ms. Reynolds
statement, the defendant had not been charged with any intimidating

A-42

or harrasing any witness that the state swayed. At the time of Ms. Reynolds recanting her statement or giving testimony, the prosecution had no evidence to show or make one to believe that Ms Reynolds had been threatened into recanting her statement.

The prolonged wait on the defense attorney in presenting a document that was drafted by the alleged victim's own attorney as being voluntarily and truthfully made without any threat was presented to the prosecutor and the defense attorney. Even prior to the document, the alleged victim testified that her statement on Jun 6th and 28th was false. The alleged victim knew that she would be facing charges but insisted on recanting her statement to the court.

Ms. Reynolds recantation and testimony was proof beyond a reasonable doubt. The delays permitted pressure to be applied to Ms. Reynolds. Only after substaining her hand injury and a month later, and prosecution got a hold of her, did she then go back to her false statement. The defendant was prejudiced by not having the evidence of ALL Ms. Reynolds testimony of recanting presented at trial and under the circumstances which both occurred. Not when the evidence was clouded by other events.

A-43

ARGUMENT SEVEN: DEFENSE COUNSEL FAILED TO
INVESTIGATE, INTERVIEW AND SUBPOENA WITNESSES.

"Counsel has a duty to interview potential witnesses and make
an independent examination of facts, circumstances, pleadings and
laws involved." Rummel vs Estelle, 590 F.2d 103, 104 (5th Cir. 1979)
Thus "An attorney does not provide effective assistance if fails to
investigate sources of evidence which may be helpful to defense."
Davis vs Alabama, 596 F.2d 1214, 1217 (5th Cir. 1979). "The Cornerstones
of effective assistance of counsel" are the "Informed evaluation of
potential defenses to criminal charges and meaningful discussion
with one's client of the realities of his case." Gaines vs Hopper,
575 F.2d 1147 (5th Cir 1978). Found in Goodwin vs Balken, 684 F.2d
794 (1982) It is also ineffective assistance if attorney failed to
investigate a critical source of potentially exculpatory evidence.
United States vs. Baynes, 687 F.2d 659 (3rd Cir. 1980)

GROUND ONE: Counsel for the defense failed to interview and subpoena
Dr. Rev. Roe at the request of the defendant. Dr. Rev. Roe was
the minister that married Ms. Reynolds and the defendant June 20th
2001. This marriage took place after the alleged charges.

Dr. Rev. Roe would have testified that Ms. Reynolds had No
marks or black eye as stated. Even during other meetings prior
to the wedding that Ms. Reynolds had NO marks or brusing on
her. Exhibits. A-18 A-19 Also Officer Eckerd testifies to the
same fact. Exhibit A-50

A-44   Once again defense counsel states that he left messages
but Dr. Rev. Roe has not returned his calls. It has become

evident that defense counsel put forth very little effort to defend the defendant. Defense counsel made __NO__ attempt to visit Dr. Rev. Roe at his place of residence or work. Defense counsel assured the defendant that he spoke w.th Dr. Rev. Roe. and would be at trial.

Dr. William Rev. Roe's testimony would have shown that Ms. Reynolds was marrying the defendant freely and that she was excited about the marriage. This would have shown to the jury that Ms. Reynolds was not pressured into the marriage as she testified to. Also the physical marks, and black eye was a false statement, that her testimony was wrong since Dr. Rev. Roe. would have been able to discredit Ms. Reynolds testimony. Dr. Rev. Roe. could have given a better insight to the jury on the true feelings that Ms. Reynolds had for the defendant during that time before the state got a hold on Ms. Reynolds. Dr. Rev. Roe. could have to the court and jury what he observed and what was expressed to him during meetings that were held prior to their marraige.

GROUND TWO: Pertaining to the Assult 3rd of December 18th, the defendant informed the defense attorney of a allibi witness, the defendant's son. The defendant's son was visiting his father at this time. Attorney failed to interview this potential witness or to inquire into the knowledge of what he percieved had happened or what he observed, if anything, pertaining to alleged crime that supposably accured. He failed to inquire into whether his son heard any argument between the parties or how they acted towards

A-45

eachother. Counsel's delay prejudiced the defendant along with the delay in trial since children forget these facts realitively fast.

GROUND THREE: As for the alleged Rape on January 3rd 01, attorney failed to investigate, interview or subpoena Kim Sills who the defendant did inform is attorney of the value of her testimony. Kim Sills informed the defendant that their were no messages or attempts the she knows of by the deffense attorney trying to contact her.

The defendant had no problem getting in touch with Mrs. Sills in March 2002, Mrs. Sills has been home all day long with health problems since November 2001. Mrs. Sills stated to the defendant that she would have returned a phone call to counsel if she would have had a message from him. Mrs. Sills would deffinetly been to trial to testifie if Mrs. Sills knew anything about the situation that Transpired against defendant.

Mrs. Sills testimony would have consisted to the fact that Mrs. Reynolds had informed Mrs. Sills that she had infact made up the story of the alleged Rape so that Officer Eakerd would be more willing to assist her in getting her belongings from the defendant's home.

Mrs. Sills, being a friend of Ms. Reynolds was asked to be a maid of honor at her wedding to the defendant. Mrs. Sills could infact inform the court and jury of her excitment of her marriage to the defendant. Ms. Reynolds and the defendant stayed at Mrs. Sills for two weeks prior to their marriage.

Mrs. Sills, being so close to both parties could have shead more light on the parties family life and this case. But due to counsels

A-46

error of not investigating, interviewing or calling this witness, the court and jury was never permitted to hear any testimony from this key witness for the defense.

GROUND FOUR: Defense counsel failed to interview, investigate or subpoena another key witness for the defense by not contacting Andrea Prouse (Neighbor). The amount of time that defense counsel had prior to trial gave counsel adequate time to get up with Andrea Prouse the next door neighbor. Counsels attempt, if any, was inadequate. Their are more methods of attempting to contact a witness then just sitting on your behind and just dialing a phone. Counsel failed to put an investigator on this case to handle what he could not.

Defense counsel failed to go to the home or have an investigator that that works for the public defenders office go to the home of Andrea Prouse. No evening Attempts were made due to the fact when it came quiting time, the public defender's office shut down.

Even if defense counsel could not get up with Andrea Prouse, he knew where she lived and could have had a subpoena served on her prior to trial. Defense counsels failure prevented valuable testimony from a witness that was present with the alleged victim at the time of the alleged assult in July. The court and jury never got to hear what Ms. Reynolds said to Andrea Prouse.

Andrea Prouse was the neighbor that took the alleged victim to the hospital. Exhibit A-20. Ms. Reynolds went to the hospital for a cut hand which resulted in Assult charges a month later in Aug 01. Andrea Prouse's testimony would have informed the court and jury that Ms. Reynolds did not want to call 911 because Ms. Reynolds did not

A-47

want to have the police involved and separate her and the defendant again for then being together, once again. Ms. Reynolds did not want to be apart from the defendant since they were happily married.

As for how Ms. Reynolds acted and what she stated to Andrea Prouse was very valuable testimony. Andrea Prouse's testimony would have shown that Ms. Reynolds had <u>no</u> "blood running down her face". In fact, testimony would have shown that <u>no</u> blood was on Ms Reynolds face as stated, that was stated just to make the defendant look worse to the jury. Exhibit. <u>A-21</u>.

Ms. Reynolds had told Andrea Prouse how the injury to her hand occured during the drive to the hospital. Andrea Prouse is the first person to hear how her hand really got cut, and the jury and court should have been able to hear that testimony. Andrea Prouse was also a witness of the events at the hospital, and the statements Ms. Reynolds gave to hospital personal. This testimony was very important to the defense case.

Counsels efforts could be nothing but inadequate since Andrea Prouse just had a baby three months before this insident and is home at <u>109 Lea rd. Newcastle</u>, all day till her mother comes home from work at 5:30pm, the Andrea's mother watches the baby so Andrea can go to work at 6:00pm. Its evident that counsel did not put any effort toward contacting Andrea Prouse.

Each charge is a separate case for defense counsel to handle. Defense counsel is to handle each charge as a separate case and must, must be effective on his assistance accordingly. Failure to treat as the only charge he is to defend against can lead to ineffective assistance of counsel.

A-48

GROUND FIVE: Defense counsel failed to investigate, interview or subpoena any hospital workers or records related to the alleged Assult in July 01. Any medical reports could very well have shown how an injury had occured and was very important for the court and jury to hear. Also the medical report would have shown what statement Ms. Reynolds had given to the hospital personal on how she cut her hand. The bottom line was that the medical reports were exculpatory evidence which should have been investigated, hospital personal interviewed and witnesses subpoena. Defense counsel failed to perform any of his dutyies concerning this charge. He was not prepared for trial.

Further more, the defendant was not with Andrea Prouse or Ms. Reynolds during the ride to the hospital. The defendant could not have influenced, threatened, etc... Ms. Reynolds into giving a false statement. The defendant was not even present at the hospital, therefore he again had no influence on her statement to hospital personal.

Ms. Reynolds did not even report her injury to the police. She did not pursue any charges, no crime was commited. Sean Hacket reported the injury a month later to have Ms. Reynolds and defendant apart. Police did not investagate into Andrea Prouse or the hospital. Police just arrested the defendant. Sean Hacket is Ms. Reynolds old boyfriend and wanted to go back out with Ms. Reynolds thats why he called police to have the defendant out of the picture. Exhibit. A-22.


GROUND SIX: Defense counsel failed to investigate, interview or subpoena the Doctor that was medicating Ms. Reynolds. Ms. Reynolds was taking medication that had side effects that she started to have. Counsel failed to have the Doctor brought before the court

A-49

to verify what he had put in writing and if ended Ms. Reynolds was suffering from these side effects. Exhibits A-13 A-14 Ms. Reynolds testifies that the doctor was willing to draft a false statement on his letter head to be used in a court proseding ?!. Defense counsel should have had this witness a trial to show that Ms. Reynolds indeed was suffering from these symtons and that Ms. Reynolds gave false testimony and commited perjury under oath because NO Doctor would put his career in jeopardy for no good reason.

GROUND SEVEN: Defense counsel failed to perform his duty to obtain crucial evidense.

Defense counsel wrote a letter to Arlen Mekler to have Mr. Mekler mail letters he obtained from defendant in May 01. These letters were sent to defendant while he was incarserated in April and May 01 from Ms. Reynolds. Exhibit A-23

Defendant received a letter from counsel stating Mr. Mekler did not have said letters ?. Exhibit A-24

On Oct 24th 01 the defendant wrote a letter to Arlen Mekler requesting these letters and within a weak the defendant received the letters Exhibit A-25

Once again this shows how little the defense counsel did in assisting with the preparations for trial. The letters were a easy task for an attorney to obtain. If he had difficulty with this simple task, no wounder he had trouble getting up with witnesses. It was becawse of this and other problems the defendant had with counsel that defendant submitted a motion for change of counsel. Exhibits A-26 thru A-29

A-50

GROUND EIGHT: Defense counsel failed to interview and subpoena witnesses.

Before trial, defendant asked the defense counsel to question and subpoena inmates that defendant was incarcerated with between April 10th thru June 8th 01. Counsel again failed to interview to see if their testimony would be helpful to the defendant.

Inmate Bill Hammons was defendants cell mate and has spoken directly to Ms. Reynolds numerous times. Ms. Reynolds stated to Bill Hammons that she could not live without Defendant and how sorry she was for the false statement that put him in prison.

Also various other inmates had heard the defendant telling Ms. Reynolds over the phone to get out of defendant's house and that the defendant dosen't want anything to do with her anymore.

Defense counsel told the defendant that it was not permitted to have inmates testify on behalf of another inmate at trial. Defendant believes this to be false because defendant, after trial, read in the paper about how Steve Patrizio from P.A., had subpoena'ed inmates for Bruce Stewarts trial around Feb or March 02.

It appears that defense counsel gave false information to the defendant, in fact Mr. Bayard has given many false statements to the Defendant as well as the court during trial. Exhibits A-10 A-11.

Defense only subpoena'ed three witnesses for trial, two of which were not properly questioned to help the truth be told or to display defendants true character.

A-51

ARGUMENT EIGHT: DEFENSE COUNSEL FAILED TO HAVE JURY INSTRUCTED ON LESSER INCLUDED OFFENSES.

The evidence in the case that is introduced must support a jury verdict convicting the defendant of lesser crime rather than the indicted crime. The only question was whether his behavior created a substantial risk of death or only of physical injury. Because the evidence did not support either conclusion, the court held that the defendant was entitled to a instruction on lesser offense. Williams vs State, Del. Supr., 494 A.2d 1237, 1241–1242 (1985).

Recklessness or Reckless, element under assult second is also the same element needed in a lesser included offense of Reckless Endangering 11 Del. C. 603. Ward vs State, 575 A.2d 1156 (1990).

Pursuant to 11. Del. C. 612, the jury needed to find the element, the defendant recklessly caused serious physical injury to Ms. Reynolds. "Recklessly" defined, a person acts recklessly with respect to an element of an offense when the person is aware of and consciously disregard a substantial and unjustifiable risk that the element exist or will result from the conduct. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. "Recklessness" Construed, Recklessness is a less culpable state of mind then required to form intext, therefore reckless behavior is subsumed within intentional behavior. Ward vs State, Del. Supr., 575 A.2d 1156 (1990)

The element of reckless is not established if the actual result is outside the risk of which the defendant is aware. 11 Del. C. 263

A-52

Pursuant to 11 Del.C. 603; Reckless endangering in the Second degree;

A) A person is guilty of reckless endangering in the second degree when; the person recklessly engages in conduct which creates a substantial risk of physical injury to another person.

Since the defendant was found not guilty of PDWDCF, he was entitled to have the jury to be able to charge the defendant with a lesser included offence. <u>Webb vs State</u>, Del. Supr., 663 A.2d 452 (1995).

The courts in Delaware and other states properly place the burden of requesting lesser included offenses in jury instructions upon defense counsel, for it is they who determine trial tactics and presumably act in accordance with a formulated strategy. <u>Chao vs State</u>, Del. Supr., 604 A.2d 1351

A defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to aquit the defendant of the greater offense and to convict the defendant of the lesser, <u>Slater vs State</u>, Del. Supr., 606 A.2d 1334 (1992)

On the Assult 2nd, it was never established on how Ms. Reynolds hand was cut. It was never established that the defendant had the Knife in his hand at the time Ms. Reynolds was cut. In fact, the defendant was found innocent of PDWDCF. The jury does not really know how Ms. Reynolds' hand ended up getting cut.

Taking in consideration that at what point or even if the defendant possed the Knife of if it was after Ms. Reynolds hand was cut, was never established. It was very prejudical for prosecutor

A-53

to state otherwise in his closing argument since evidence did not support this conclusion.

Nowhere in the evidence does it support that the defendant was aware of the risk at the time of the alleged offense. As stated, Reckless is subsumed in intent which means that there has to be some intentional behavior which the alleged victim stated prior to that, "it was not intentional". Any tape or statement given by Ms Reynolds, the jury should have been present so as to draw their own conclusion.

PART TWO: Defense counsel failed to object or counter the prejudical statement of the prosecutor. "The defendant had the knife in his hand and Ms. Reynolds hand was cut." Certainly left the jury to draw inference from the statement, that the defendant had the knife but never was it established if if was before her hand was cut or if the defendant did even have the knife at all.

Defense counsel never argued that Ms. Reynolds had to put the knife down to throw the carrots and that she had to pick the knife back up, for what reason? Ms. Reynolds stated that she wanted to stab the defendant. Exhibit _A-21_ Ms. Reynolds intent was to stab the defendant and her action was threatening. The defendant had the right to subdue and protect Ms. Reynolds in his own house. The defendant was only aware of possible injury to Ms. Reynolds due to prior suicide attempts by Ms. Reynolds. The defendant's actions were justified by trying to prevent injury to any person. It was the duty of defense counsel to establish this prior to trial and prepare a defense. The record reflects that defense counsel was not prepared

A-54

dant to take the stand. In fact, defense counsel did
defendant to take the stand to defend himself. Defense
ot advise the defendant of his rights if he does take
l that he has the right not to answer questions that
ooses not to.

: Defense counsel failed to effectively cross examine Ms.
ow or when the Knife ended up in the defendants hand
fied to. In privious statements Ms. Reynolds stated
'I to the floor. Why didn't defense counsel present this

ounsel also failed to bring up that a person in danger may
blow. If a weapon be raised to shoot or strike, or
f other personal vilence be imminent, the person in
nay protect their person by striking, the first blow,
the purpose of repelling and preventing the attempted
<u>te vs Stevenson</u>, Del. Oyer & Term, 188 A.2d 750 (1956)
'f. The defendant had the right to subdue or attempt
able, any injury to either party.
counsels failure to present any of the above, denied the
ffective assistance of counsel and a chance of lesser
ases by not presenting to the jury, in instructions or
uments.

Due to the ambiguous language that is stated in Assult
erson would have trouble explaining the difference in what
y their testimony. Most lay persons can not explain the

A-55

difference in intentional and Reckless behavior. Reckless is subsume in intentional behavior so if it was non-intentional, then it must be an accident. Therefore Reckless can not be subsume into non-intentional and accident. A lay person may be misunderstood by this ambiguous language. This was never explained to the jury.

ARGUMENT NINE: DEFENSE COUNSEL FAILED TO RAISE A SELF PROTECTION DEFENSE.

As to the Assult on December 18th 2000, defense did not present a self protection defense. This case; self-protection justifies use of force when duress or coercion is act of Victim. Feliciano vs. State, Del. Supr., 332 A.2d 148 (1975)

There is a congruence of roles in a self defense pattern, thus. the original assailant is both coercer and victim. By the use of unlawful force against the defendant, the assailant coerces the latter to reciprocate in Kind, and then the defendant responds. Feliciano.

The evidence presented in this case shows that the defendant on December 18th.00 did not want to be bothered by Ms. Reynolds or or even talk to her. But the persistant and reluctant Ms. Reynolds pursued the defendant from room to room. The defendant tried to get away from Ms. Reynolds. Ms. Reynolds confirmed this and she even admitted that she hit the defendant more than once. Exhibit A-30.

The defendant reacted to the aggression of Ms. Reynolds. When a person is assailed within one's own dwelling, a person need not retreat, but may make a stand there, even though retreat with saftey is possible. State vs Mills, Del. Gen.. Sess., 69 A. 841 (1908)

Defense counsel failed to give notice of defense and ask for instructions to be given to the jury. Each charge must be evaluated for ineffective assistance.

A-57

ARGUMENT TEN: DEFENSE COUNSEL FAILED TO SHOW THAT THE ELEMENT OF UNLAWFUL IMPRISONMENT WERE NOT MET. DEFENDANT ENTITLED TO JURY INSTRUCTIONS.

Defense counsel did not demonstrate or explain the meaning of restraint and that as a result of the restraint, the alleged victim was exposed to "Serious physical injury."

"Restrain" means to restrict another person's movement intentionally in such a manner as to interfere substantially with the persons liberty. By confining the person in the place where the restriction commences, without consent. A person is confined "without consent" when the confinement is accomplished by physical force, intenidation, or deception. 11 Del. C. 786.

A person is guilty of Unlawful Imprisonment 1st Degree when the person Knowingly and unkwfully restrains another person under circumstances which expose that person to the risk of serious physical injury.

"Serious physical injury" means _physical_ injury which creates a substantial risk of death or which causes serious and prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of any bodily organ." 11 Del. C. 206 (c).

Under Unlawful Imprisonment first, the defendant was entitled to a jury instruction of lesser included offenses. _Slater_ vs _State_, Del. Supr., 606 A.2d 1334 (1992). The reason is that the elements for this offense was not met by the State. There was not shown that the alleged victim was exposed to any serious physical injury. Also it was not proven that the velcro restraints were

A-58

of such that, they denied a person of liberty if so desired. The alleged victim was not placed in restraints (so called) without her consent. She expressed, she did not want to but never specified what. No testimony stated that the defendant physically forced the alleged victim into the restraints. Ms. Reynolds did not state that she resisted. There was no intemidation or deception proven so how can the state say it was without consent.

As for the velcro restraints, it was not demonstrated that they would interfere substantially with the persons liberty or movement. Velcro restraints could very easily be undone since there is plenty of space between the wrist that, the one hand can undo the other hand. This failure was do to Ineffective assistance of the defense counsel not to have the restraints demonstrated or to have asked the proper questions.

Anyway the jury should not have been able to hear or see the restraints since they were illegally obtained, See Ground One.

ARGUMENT ELEVEN: DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL DUE TO CONFLICT AND BIAS.

Defense counsel came to Gander Hill Prison for the second conference with the defendant. On this occation the defendant and counsel again had heated words and this time it lead to the grabbing of counsel. Counsel gave some threatening remarks which the defendant could not understand, but could tell that by his tone and actions that counsel wasn't to huppy about the incedent. Counsel did state to the defendant that "I'm not here to prove your innocents, I'm here to see that you get a fair trial."

The four or so times that defense counsel visited the defendant at Gander Hill Prison, the truley only thing that defense counsel tried to accomplish was to have the defendant to take a plea. Defense counsel would try to scare the defendant by stating, "If your found guilty you'll recieve Two Life sentances." Defense counsel did not try to prepair for trial he keep trying to get a plea and thats it! Shortly after the defendant tryed to have counsel dismissed. Exhibit A26 thru A29.

Due to this event, the defendant tried to file a motion to change counsel prior to trial. Exhibit A-49. This motion for some reason never made it to the docket or was heard by the court. The prosecution, Mr. Bayard and Attorney Generals office were sent copys. In closed is the ruff copy. Exhibit A26 thru A-29. Defendant also sent a copy to Joe Longabardi, a private attorney to hold. Defendant has been unable to get in touch with Mr. Longabardi to obtain the original copy.

A-60

The defendant was in fear of another charge, and this is why the confrentation with counsel was not brought befor this court. It is the feeling of the defendant that defense counsel did very little due to this insident. The only thing the defense counsel did was to make sure it appeared that he was reasonable. Everybody knows that a person wants to get even for someone placing their hands on them. Counsel had the power to get even, therefor h.s responsibilitys of proper representation must be suspecious and must be examined to the fullest extent of the law.

A-61

ARGUMENT TWELVE : DEFENSE COUNSEL FAILED TO ASK QUESTIONS THAT WERE VERY IMPORTANT.

1) Defendant asked counsel to challenge Ms. Reynolds on the issue of the Rope that was supposed to be used in a certain way. The Rope is only about 2 feet in length and it is impossible for the Rope to be near long enough to do what Ms. Reynolds states. Exhibit. A-44

If defense counsel would have brought this to light and allowed the court and jury to have had Ms Reynolds demonstrate how the Rope was used. The court and jury would have seen that the Rope could not have been used in the way Ms. Reynolds stated and would have had Ms. Reynolds back peddling for answers. This would have shown the jury another inconsistency and false statement from Ms. Reynolds, thus leaving the jury to wonder about Ms. Reynolds credibility.

2) The defendant wanted Mr. Bavell to be questioned to disprove what was stated in Ms. Reynolds testimony was false. Exhibit A-37. The defendant wanted Mr. Bavell, who was a witness to Ms. Reynolds and defendant's meeting in PA., to testify as to how Ms. Reynolds embrassed the defendant emotionally, crying with happiness and not wanting to let go. A person that was indead happy to have the defendant back. This was not questioned. Exhibits A-46 A-47

Mr. Bavell and Ms. Reynolds had spent numerous hours together from April thru June in regards to the defendant's bail and having Mr. Bavell present with Ms. Reynolds at court appearances for support and advise.

A-62

Mr. Bavell's testimony if counsel questioned adequatly would have infact shown to the jury and court that Ms. Reynolds was not pressured or threatened in anyway, Ms. Reynolds was infact doing what she wanted by her own free will, and thats why Mr. Bayard the defense counselor did not adequatly question Mr. Bavell, because it would have helped the <u>defense</u> and hurt the <u>prosecution</u> and defense counsel should have been the prosecution because he shure did help the prosecution enough!

3) Defense counsel did not adequatly question Mr. Lockwood about the time Ms. Reynolds and defendant got into an argument at work and how Ms. Reynolds was arguing back at the defendant and wouldn't back down like she's a battered woman. This would have shown to the jury that Ms. Reynold didn't and was not a battered woman.

Also about what defendant and Mr. Lockwood would discuss about defendant's relationship in the beggining with Ms. Reynolds. Defendant would ask what he should do pertaining to the lies from Ms. Reynolds the the defendant found out about. The defendant and Ms. Reynolds spent most of their free time together with Mr. Lockwood and his wife and family, vacations, going to dinner, going out on the boat, and swimming at Mr. Lockwood's house and everything two couples do together. Exhibit <u>A-57.</u>

Mr. Lockwood was going to testify about how Ms. Reynolds acted when the defendant in all situations but defense counsel never asked appropriate questions to rebuke the prosecutions witnesses. Defense counsel didn't ask questions needed to be asked to help the jury to have a true picture of the defendant, it was definetly one sided, because of counsels lack of preparation. Exhibits <u>A-45</u> <u>A-46</u>

A-63

4) Defendant asked counsel to question Ms. Reynolds about her statement that the "defendant would kill her if he got out of jail." Defendant wanted defense counsel to ask Ms. Reynolds "Why did you bail him out THREE different times from jail"?! if you thought the defendant would kill you?. Exhibit. A-37

ARGUMENT THIRTEEN: DEFENSE COUNSEL FAILED TO SUBMIT EVIDENSE TO IMPEACH.

GROUND ONE: Defense counsel failed to present to the court and the jury evidence that would show that Ms. Reynolds statement given to police and testimony at trial had changed dramaticly. This is why the defendant insisted on counsel to submitting the police reports, prelimanary hearing tapes, transcripts of her testimony to the commissioner as evidence and counsel didn't and it was not because of strategy because he had known and anyone with common sence can go threw the trial transcripts and see their was no intelligent strategy at all!.

The transcripts of hearings below contain statements of Ms. Reynolds recanting her statements to the police. Ms. Reynolds statements were under oath and the defendant was entitled to the evidence contained in the court records for the purpose of impeaching Ms. Reynolds. Also the defendant has the right to present to the upper court evidence that Ms. Reynolds committed perjury when she changed her testimony in the Superior Court.

GROUND TWO: Defense failed to enter the prelimanary tape at defendants request denying due process. Defense counsel did not enter into evidence or play the tape for the jury. This tape of August 14th 01 for Assult 1st and PDWDF. Defense counsel and prosecutor listened to the tape and brought back only 10 seconds of what was said. The 10 seconds were brought back to the court after break, and Det. O'sullivan was stating on the tape that Ms. Reynolds told the Det. that her injurys were unintentional. Exhibit A-31. The word accident defined

A-65

means "An event occurring by chance or unintentionally". The defendant asked counsel to enter the tape into evidence to show that Ms. Reynolds changed her story again and he said he would, he did not!. This tape would have shown the jury that Ms. Reynolds is now telling a different story from what she stated to the Detective on July 30th 01 Defense counsel makes sure that the jury don't get to hear the preliminary tape when Judge puts tape into evidence. Exhibit A-55.

GROUND THREE: The defendant wanted to use the police report from March 16th 01 and taped statement from Sean Hacket. Exhibit A-33. Defense counsel failed to use or enter into evidence the report or tape. In the police report, Sean Hacket states that the defendant said "Your days are numbered." At trial only after defense counsel asks what was said, then Sean Hacket adds "Watch your back, your days are numbered." Exhibit A-56. This police report would have shown that Sean Hacket gave a false statement under oath.

The defendant also brought up other arguments dealing with the evidence that should have been entered in defendants behalf, before the jury and court. Exhibits A-9 A-10 A-53 A-54 along with TWO taped statements from Ms. Reynolds, a taped statement and police report from March 16th 01 from Sean Hacket, the arraignment transcripts from 4/16/01, 4/23/01, 5/1/01, 5/8/01, 5/15/01 and 6/5/01 were Ms. Reynolds appears in front of Commissioner Reynolds and states at those times that she gave a false police statement and wanted the no contact order dropped. Why Mr. Bayard didn't have those transcripts and other evidence presented to the jury is beyond me.

A-66

ARGUMENT FOURTEEN: EVIDENCE WAS INSUFFICIENT
TO SUBSTAIN CONVICTION.

GROUND ONE: Atempted Rape in the second degree. Evidence was
insufficient to substain conviction. <u>United States <sup>vs.</sup> Hammonds,</u>
425 F. 2d 597 (1970) Pursuant to 11. Del. C. 541. the defendant
under the circumstances manifested a voluntary and complete
renounciation of the criminal purpose. The defendant also
abandoned the attempt. According to Ms. Reynolds testimony,
she stated that "she did not want to do this". She did not want
to do this was referred to the restraints?. There was no testimony
that prior to oral sex, that she testified that she resisted or
that the start of oral sex was forced. You must wonder how the
defendant placed his penis into a mouth that does not want to
be opened. Ms. Reynolds testified that she attempted to "bite".
This is false inference given to the jury since, biting would be
very easy. Ms. Reynolds only applied presure with her teeth
against the defendant's penis. Indicating that he did something
wrong? Only a fool would attempt it again. If it was attempted
a second time, Ms. Reynolds had to open her mouth! Ms.
Reynolds only stated that she didn't really want to do
this. She did not say what. She did not say that she would
not, She did not say no, No to what?! The one thing that is
certain, the defendant took the jester and stopped. This is
called abandonment of the attempt. Therefore he should not
have been convicted. Counsel failed to even raise this issue.

GROUND TWO: Argued in Argument Nine and is restated.

GROUND THREE: The Assault charg from July, the evidence, that the defendant recklessly cut (injuried) Ms. Reynolds was not proven. As stated in Argument Eight, reckless is intentional behavier not an accident or unintentional. Other evidence that was not presented in a fair hearing would have shown this. A Lesser offense instruction should have been given.

GROUND FOUR: Unlawful Imprisonment from January, 01. was not proven since serious physical injury was never shown. The Jury only could infer and the evidence did not support their inference.

GROUND FIVE: Rape 2nd, the evidence was not presented for Rape 2nd or proven. The Jury should have been instructed to a lesser included offense. The Jury drew inferences from surrounding charges to find guilt in the 2nd degree. Trial separation, would not have convicted and if jury did, it would have been to a lesser charge.

ARGUMENT FIFTEEN: DEFENSE COUNSEL FAILED TO OBJECT IN A TIMELY MANNER OR TO ASK FOR JURY INSTRUCTIONS FOR PREJUDICAL EVIDENCE, STATEMENTS, ETC...

The improper statements are, indeed,, "So clear and defense counsel's failure to object is so excusable that [The trial judge had]...no reasonable alternative other then to intervene". Trump vs State 753 A.2d at 964 (Del. 2000).

1) Defense counsel's questions were improper when he does the job of the prosecutor. When a threat that is alleged such as in this case dealing with Sean Hacket, "Your days are numbered." The prosecutor never asked the Officer during questioning what was said as a threat and what was not stated, only Mr. Bayard asked the question for the prosecutor. Exhibits A-32 A-33. Defense counsel's line of questions were very helpfull to prosecution and, any questions or evidence to impeach, defense counsel abandoned.

2) When the prosecutor handed a statement to Maria Maldonado to refresh her memory, a witness that stated she could not remember several times, was not objected to. The document was never shown to defense or the court. The prosecutor could have and most likely coached the witness on what to say. Exhibit A-34.

3) Officer Eckerd kept referring to the alleged victim as a victim. The Judge stopped questioning on defendants behalf and asked if defense wanted jury instructions, no instructions were given. Exhibit A-35

4) Even defense counsel used improper language by referring to alleged Rape as "Rape". Counsel referred to the defendant as a rapist. Exhibit A-36.

A-69

5) Prosecution brings up issues about P.A. and what might have happened there. Reffering to other alleged bad acts which are not permitted. Once again the trial Judge stopped questioning by the prosecutor in behalf of the defendant. Once again no objecting on part of defense counsel or request for Jury instructions. Exhibits A·37 A·38

6) Ms. Reynolds stated something to the Jury which was evident by all parties, including the Judge. When the Judge realized that the alleged victim said something to the Jury, the Judge stood in for the defendant again. Defense counsel did not object or ask for a mistrial. Defense counsel played it off as if nothing was said. He stated that "he thinks" but does not know what Ms. Reynolds said. Nobody but the Jury and prosecutor knows what was said, how convenient! Exhibits A-39 A-40

7) Also during Det. O'Sullivan's direct examination from prosecutor, the Judge stops questioning again on behalf of the defendant. Exhibit A-41

8) The Judge stopped questioning again when clearly the defense counsel should have. Exhibit A-42

9) Defense counsel failed to recall Ms. Reynolds to question hearsay statements from all the states witnesses. As an intial matter, these out of court statements are hearsay because the state has offered the testimony to prove the truth of the matter asserted in the statements. DRE 801(c) The statements are therefore inadmissable unless they fall within a recognized exception to hearsay rule. Defense counsel's failure to recall, prefented a chance to challenge the statements. Even to see if Ms. Reynolds

A-70

was available like stated. Exhibits <u>A-42</u> <u>A-48</u>.

10) Defense counsel failed to object properly to prevent the jury from hearing about pictures from Sean Hacket. Objection came later after the damage was already done. Also evidence was never given to the defense in discovery. Exhibits. <u>A-15</u> <u>A-16</u>

11) Jean the theripist of Ms. Reynolds read from notes which defense counsel failed to object or ask to see what witness was given to read, defense had <u>NO</u> idea what it said. Exhibit <u>A-42</u>

12) Detective Osullivan stated that the defendant had a "revoked License," and did not get an objection from defense counsel. Again the court stops questioning because of another bad act statement from prosecutor that is not allowed. Exhibit. <u>A-41</u>.

13) Ms. Reynolds speculates that "If it had been facing up, it probably would have been my eye." Mr. Bayard did not object or have anything done for the defense. Mr. Bayard, threw the whole trial let the prosecution run wild and get away with whatever the prosecution wanted the jury to hear. Exhibit <u>A-43</u>.

14) Defense counsel questions Sean Hacket about how did "Watch Your Back" sound, did it sound intimidating. Mr. Bayard brings that statement up many times and he knew that the defendant didn't say that and defendant wanted the police report entered to prove "Watch Your Back" wasn't said. The officers testimony, Exhibit <u>A-15</u> and the police report state that the only thing the defendant said was "Your days are numbered." Defense counsel helps prosecution again.

All the above was very prejudical to the defendant and jury

A-71

due to inferences from what was said. This contributed to the conviction of the defendant. Even in closing arguments, the evidence did not support the conclusion of the prosecutor and the defense did not state otherwise.

   <u>Caldwell vs State</u> 770 A. 2d 522, Del. Supr. (2001)"Prosecutors use of hearsay statements from states witness is improper and warrants reversal."

ARGUMENT SIXTEEN: IT WAS PROSECUTORIAL MISCONDUCT AND ERROR OF DEFENSE COUNSEL TO ALLOW RACIAL ISSUES BEFORE THE COURT AND JURY, FAILURE TO HAVE THE JURY INSTRUCTED CAUSED PREJUDICE.

The defense counsel did not protect his client by objecting or by asking that instructions be given, when prosecution brings racial issues into the questioning. Exhibit A-58. The defense counsel let the prejudical effect stand. The damage was already done. If it had not been for the Judge, who knows how far the prosecutor would have taken the racial issue. The prosecutor has used this tactic several times and each time it was the Judge that steps in. "Improper statements by prosecutor led to reversal of conviction". = Morris vs State 795 A.2d 653, Del. Supr. (2002). "When prosecutor's remarks are challenging vesacity of defendant is improper and requires reversal". = Williams vs State 803 A.2d 927, Del. Supr. (2002)

The prejudical effect that was done due to the prosecutions line of questioning was already planted into the jury's minds, thus influencing them and the outcome of their descion. There is no way that the damage can be undone. The jury was left with their conclusions of the defendant. This was never objected to by anyone in the court as being improper. All the jury knew is that the Judge wanted to talk to the attorneys and defense counsel "Mr. Bayard Jr." refused the Judge's offer to give instructions to the Jury, "Why"?. Exhibit A-58 Highly prejudical in causing the jury to become bias toward the defendant,

A-73

especially the black Jurist. The defendant could not have received a fair trial or verdict. The Jury was never even polled by court or defense counsel to see if every charge from the Jury was unanimous.

The prosecutor used hearsay from a state witness who was never even questioned by prosecutor on this issue. Thus having no bases for this line of questioning except to paint the defendant as a racist before a mixed Jury.

"Prosecutors use of hearsay statements from state witnesses was improper and warrants reversal." = <u>Caldwell vs. State</u>, 770 A. 2d 522, Del. Supr. (2001)

A-74

ARGUMENT SEVENTEEN: DEFENSE COUNSEL FAILED TO ASK FOR A MISTRIAL.

Ms. Reynolds was asked to show the jury her hand injury. She was instructed, not to say anything to the jury. She failed to comply with this instruction. Even the transcriptionist did not hear what Ms. Reynolds said to the jury. There was a lot of speculation on what was said, "I think" was the defense counsels response. Exhibits A-39 A-40. It was the judge who mentions that Ms. Reynolds spoke to the jury. Exhibit A-40. Nobody knows what was said or how many jurist heard what Ms. Reynolds said. Defense counsel never objected, and failed to ask for a mistrial for prejudicing the jury. Robert E. Ashley vs State, "second trial"

It was error not to inquire about what was said. Ms. Reynolds was never questioned out of the presence of the jury. The judge did not even question the jury one at a time. This brings into question on whether the defendant received a fair trial. "NO" No one can state that what was said to the jury was not prejudicial and that it was a fair trial.

A-75

## CONCLUSION

For the foregoing reasons, the outcome of the trial would be altered for one or more reasons. Each case (charge) should be considered separatly and then as a whole. If evidence was not permitted in one charge, it had a prejudical effect on the other charges. The courts have previously recognized that "Prejudice" may result from the cumulative impact of multiple deficiencies. <u>Copper vs. Fitz Harris</u>, 586 F. 2d 1325, 1333 (9th C. 1978) All errors should be considered as prejudice. Defense counsel fell way below reasonable.

Therefor the defendant is entitled to just relief.

Respectfully submitted by

Dated: <u>September 22, 2003</u>.

*Anthony Zuppo*

Anthony Zuppo
Delaware Correctional Center
1181 Paddock Rd.
Smyrna Delaware, 19977

A-76