IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **ANTHONY ZUPPO**, | : |
| | : |
| Petitioner, | : |
| | : |
| v. | : Civ. Act. No. 05-504-SLR |
| | : |
| **THOMAS CARROLL**, | : |
| Warden, and **M. JANE BRADY**, | : |
| Attorney General of the State of | : |
| Delaware, | : |
| | : |
| Respondents. | : |

## **ANSWER**

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In February 2002, the petitioner, Anthony Zuppo, was convicted by a Delaware Superior Court jury of second degree rape, second degree assault, first degree unlawful imprisonment, attempted second degree rape, third degree assault, five counts of non-compliance with bond, harassment, offensive touching, and three counts of aggravated act of intimidation. *See Zuppo v. State*, 807 A.2d 545, 546 (Del. 2002). Zuppo was sentenced to an aggregate of twenty-six years, eleven months in prison, suspended after twenty years, five months for decreasing levels of supervision. On appeal, the Delaware Supreme Court affirmed Zuppo's convictions and sentences. *Id*. In September 2003, Zuppo applied *pro se* for postconviction relief under Delaware Superior Court Criminal Rule 61. The Superior Court denied the motion, and that decision was affirmed by the Delaware Supreme Court in July 2005. *Zuppo v. State*, 2005 WL 1653622 (Del.). Zuppo's federal habeas petition is dated July 15, 2005. D.I. 2.

Facts

As detailed by the Delaware Supreme Court, *Zuppo*, 807 A.2d at 546-47, the facts leading to Zuppo's arrest and conviction are as follows:

> In September 2000, Wendy Reynolds and Anthony Zuppo began dating and they moved in together quickly thereafter. According to Reynolds' testimony at trial, Zuppo became violent and controlling. Zuppo would not allow her to leave the house without him, and he often referred to her derogatorily. On one particular occasion, Zuppo pinned her to the couch and beat her. Reynolds considered leaving after the beating but, instead, forgave Zuppo. Shortly thereafter, according to Reynolds, Zuppo raped her. Zuppo maintains that she consented.
>
> Reynolds attempted to move out the evening following the alleged rape but claimed Zuppo choked her and threatened to shoot her. Reynolds reported these incidents to the police. The police arrested Zuppo for Terroristic Threatening and Offensive Touching. As a condition of Zuppo's release on bond, a Justice of the Peace Court ordered Zuppo to have no contact with Reynolds.
>
> Despite the no contact stipulation, Reynolds testified at trial that Zuppo tried contacting her at work a matter of days after his release. Reynolds also testified that Zuppo made a harassing phone call to her place of residence. Zuppo denied making the harassing phone call. A Wilmington Police Officer testified that he traced the call from Reynolds' residence to a gas station near Zuppo's residence.
>
> The day after the phone call to Reynolds' residence, Reynolds and Zuppo attempted reconciliation. Reynolds again moved in with Zuppo. The police, however, then arrested Zuppo for violation of bail conditions. For reasons known only to her, Reynolds posted Zuppo's bail and accompanied him to Pennsylvania for one week. In Reynolds' own words, however, "the abuse started right away." [citation omitted] Inexplicably, Reynolds, sporting a clearly visible black eye, married Zuppo while in Pennsylvania.
>
> The marriage failed to resurrect the relationship. One evening, shortly after arriving back in Delaware, Zuppo and Reynolds engaged in an argument that culminated in Zuppo attacking Reynolds. Reynolds claimed she picked up a kitchen knife in self-defense. Zuppo remained undeterred. He pressed on, knocked her backwards and grabbed her wrist. Zuppo then tried to rip the knife from Reynolds and in the process he cut her hand to the bone. Finally, Reynolds called the police and told them about everything Zuppo had done to her. She did so "[b]ecause [she] thought if [she] stayed much longer that he really would kill me." [citation omitted] At the time of trial, Reynolds' hand had been operated on twice, and she appeared to face a serious, long-term disability.

Discussion

In his petition for federal habeas relief, Zuppo raises two grounds for relief: (1) the trial court denied Zuppo's request to proceed *pro se* in violation of the Sixth Amendment's right to self-representation (D.I. 2, 3); and (2) Zuppo's trial counsel provided ineffective assistance for sixteen separate reasons (D.I. 2, 5). A state petitioner seeking federal habeas relief must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Alston v. Redman*, 34 F.3d 1237, 1241-42 (3d Cir. 1994). In order to demonstrate that a claim has been exhausted in state court, a petitioner "must show that he presented each claim to the Delaware Supreme Court." *Bailey v. Snyder*, 855 F. Supp. 1392, 1399 (D. Del. 1993); *See also Picard*, 404 U.S. at 275; *Burkett v. Love*, 89 F.3d 135, 138 (3d Cir. 1996); *Toulson v. Beyer*, 987 F.2d 984, 986 (3d Cir. 1993). Further, a petitioner must have raised in the state courts the legal and factual basis of the claims which he presents to the federal habeas court. *See* 28 U.S.C. § 2254(b); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Landano v. Rafferty*, 897 F.2d 661, 670-71 (3d Cir.), *cert. denied*, 498 U.S. 811 (1990); *Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir. 1986). Zuppo presented his self-representation claim to the state supreme court on direct appeal, thus exhausting state remedies. *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984). Zuppo presented his ineffective assistance of counsel claims to the state supreme court on appeal from the denial of his Rule 61 postconviction motion, thus exhausting those claims as well. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. Zuppo's claims, however, do not provide a basis for relief.

Section 104 of Title I of the Antiterrorism and Effective Death Penalty Act of 1996, codified as 28 U.S.C. § 2254, restricts the scope of collateral review of convictions and sentences for persons in custody pursuant to the judgment of a state court. As amended, § 2254(d) states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceeding unless the adjudication of the claim--
>     (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hameen v. State of Delaware*, 212 F.3d 226, 235 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 196-97 (3d Cir. 2000); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999) (determining the standard of review governing petitions for a writ of habeas corpus under revised § 2254(d)). Thus, under revised § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir.), *cert. denied*, 537 U.S. 1049 (2002); *Matteo*, 171 F.3d at 885; *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434 (D. Del. 1998). Moreover, factual determinations by state trial and appellate courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. *See* §§ 2254(d)(2), (e)(1). *See also Williams,* 529 U.S. at 402-13; *Affinito v.*

4

*Hendricks*, 366 F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000), *cert. denied*, 531 U.S. 1084 (2001).

*Self-representation claim*

On the second day of his trial, Zuppo asked the trial court to reassign counsel. The court denied the request, and Zuppo then requested that he be permitted to proceed *pro se*. After informing Zuppo of the risks of acting as his own counsel and considering the state prosecutor's objection to the request, the trial court denied Zuppo's request due to the untimeliness of the request and the potential disruption of the trial. On direct appeal from his conviction, the Delaware Supreme Court found that the trial court had "properly determined that Zuppo's interest in proceeding *pro se* failed to outweigh the state's interest in ensuring the integrity and efficiency of the trial." *Zuppo*, 807 A.2d at 549.

The Sixth and Fourteenth Amendments guarantee that a criminal defendant brought to trial in a state court has the right to assistance of counsel. *See Gideon v. Wainwright*, 372 U.S. 335 (1963). In *Faretta v. California*, 422 U.S. 806 (1975), the United States Supreme Court decided that a criminal defendant also "has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." 422 U.S. at 807. The right to self-representation, however, is not absolute. *Martinez v. Court of Appeal of California, Fourth Appellate District*, 528 U.S. 152, 161 (2000). A defendant must voluntarily and intelligently elect to conduct his own defense, and "most courts require him to do so in a timely manner." *Id.* at 162 (footnote omitted); *see Pitts v. Redman*, 776 F. Supp. 907, 915 (D. Del. 1991), *aff'd without op.*, 970 F.2d 899 (3d cir.), *cert. denied*, 506 U.S. 1003 (1992) ("Most importantly, a request for self-representation must also be timely."). The government's interest in ensuring the integrity and efficiency of the trial may outweigh the defendant's interest in acting as his own

5

lawyer. *Martinez*, 528 U.S. at 162.  To be timely, a request must be made before meaningful trial proceedings have begun.  *Pitts*, 776 F. Supp. at 915 (citing cases).  Requests for self-representation made after the trial itself has begun have generally been found to be untimely. *See, e.g., United States v. Jones*, 938 F.2d 737, 743 (7th Cir. 1991); *United States v. Smith*, 780 F.2d 810, 811 (9th Cir. 1986); *United States v. Lawrence*, 605 F.2d 1321, 1324-25 (4th Cir. 1979); *Pitts*, 776 F. Supp. at 914.  When considering an untimely request to proceed *pro se*, the court "must 'weigh 'the prejudice to the legitimate interests of the defendant' against the 'potential disruption of proceedings already in progress.'"  *United States v. Stevens*, 83 F.3d 60, 66-67 (2d Cir.), *cert. denied*, 519 U.S. 902 (1996) (quoting *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (2d Cir. 1965)).

      Here, Zuppo made his request for self-representation on the second day of trial, after initially asking for new counsel.  The Delaware Supreme Court found that the trial court had adequately considered "the relevant balancing of the competing interests inherent in Zuppo's mid-trial request to proceed *pro se*."  *Zuppo*, 807 A.2d at 548.  The state court's decision, citing specifically to *Faretta* and *Martinez*, clearly applied relevant United States Supreme Court precedent.  *See Werts*, 228 F.3d at 197 (state court "must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim").  Moreover, Zuppo was ambivalent about wanting to represent himself (only requesting to proceed *pro se* after being denied new counsel and then referring to advice provided by a private attorney). The likelihood of a disruption in the trial was high, given that Zuppo was entirely unprepared to act as his own attorney and admitted that he was unfamiliar with the rules of evidence.  Thus, the state court's finding that Zuppo's interest in proceeding *pro se* failed to outweigh the state's interest in ensuring the integrity and efficiency of the trial was reasonable application of the relevant

constitutional standards. Under the federal habeas statute, "it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). Zuppo has failed to carry his burden, and his claim should accordingly be denied.

*Ineffective assistance of counsel claims*

In his petition, Zuppo alleges sixteen claims of ineffective assistance of trial counsel.[1] D.I. 5. In order to establish that he received constitutionally ineffective assistance of counsel, Zuppo was required to demonstrate that: defense counsel's representation fell below an objective standard of reasonableness; and that but for counsel's unprofessional errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *Wells v. Petsock*, 941 F.2d 253, 259 (3d Cir. 1991). The *Strickland* analysis for a claim of ineffective assistance of counsel constitutes clearly established law under revised § 2254. *See Wiggins v. Smith*, 539 U.S. 510 (2003). A habeas petitioner must allege facts which, if accepted as true, would satisfy both prongs of the *Strickland* test: deficient performance and prejudice to the defense. *See Wells*, 941 F.2d at 259-60; *cf. Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. Thus, to sustain an ineffectiveness claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells*, 941 F.2d at 259-60; *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Against this backdrop, Zuppo has not established that the state court's decision warrants relief under § 2254.

---

[1] To the extent that Zuppo is also raising a claim as to the sufficiency of the evidence (*see* D.I. 5, Op. Br. at 13), that claim was procedurally defaulted in state court, and Zuppo has failed to allege cause for his procedural default in state court or prejudice. *See* D.I. 5 at A-79.

7

1. *Motion to suppress*

In his first claim, Zuppo contends that his counsel was ineffective because counsel failed to move to suppress Zuppo's property collected by Reynolds and given to police. At the time of Zuppo's arrest in January 2001, Reynolds retrieved a clothesline, blindfold and Velcro restraints from under the bed in the master bedroom of Zuppo's residence. Reynolds gave those items to the police. As the trial court correctly noted, a search or seizure conducted by a private party does not implicate the Fourth Amendment, and evidence discovered as a result of such a search is not subject to the exclusionary rule. *See Coolidge v. New Hampshire*, 403 U.S. 443 (1971); *Burdeau v. McDowell*, 256 U.S. 465 (1921). Because a motion to suppress would not have been successful, Zuppo could not demonstrate either deficient performance or prejudice from counsel's failure to file a suppression motion.

2. *Speedy Trial*

Zuppo failed to brief his claim that his trial counsel was ineffective because he failed to file a speedy trial motion on appeal from the denial of his state postconviction motion, thus waiving that claim on appeal. Arguments not raised on appeal are waived, precluding federal habeas review. *See Carter v. Neal*, 940 F. Supp. 143, 152 (D. Del. 1995). Moreover, Zuppo would be procedurally barred from raising the claim in a second postconviction motion under Superior Court Criminal Rule 61(i)(4), barring previously adjudicated claims. *See Kennedy v. Kearney*, 1996 WL 534877, *2 (D. Del.). Thus, exhaustion is excused. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001). Although Zuppo is thus excused from satisfying the exhaustion requirement, his claim is procedurally defaulted. *Harris*, 489 U.S. at 263; *Werts*, 228 F.3d at 192. Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the default and

8

resulting prejudice, or a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).

Zuppo has not alleged cause for his failure to have raised the issue in his postconviction appeal. As a result, Zuppo has not established cause for his procedural default, and that alone is enough to warrant dismissal of his federal claims. *E.g., Elliott v. Kearney*, 2004 WL 724958, *4 n.5 (D. Del. Mar. 31, 2004). *See also Coleman*, 501 U.S. at 757; *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Carter v. Neal*, 910 F. Supp. 143, 151 (D. Del. 1995) (citing cases). In any case, Zuppo cannot establish prejudice.

The United States Supreme Court, in *Barker v. Wingo,* 407 U.S. 514 (1972), set forth a four factor test to determine whether a particular defendant has been deprived of the right to a speedy trial. Under the test, the court must consider: (i) the length of the delay; (ii) the reason for the delay; (iii) the defendant's assertion of the right; and (iv) prejudice to the defendant. 407 U.S. at 530. Unless the delay is "presumptively prejudicial," there is no need to inquire into the other factors. *Id.* In this case, Zuppo was arrested in January 2001. In July 2001, Zuppo's defense counsel moved to withdraw as counsel; that request was granted July 9, 2001. Because Zuppo was unrepresented at the scheduled final case review on July 23, 2001, no trial date could be selected. in November 2001, a trial date was set for January 29, 2002, a new attorney having been appointed for Zuppo. The case went to trial as scheduled and lasted for five days. Thus, about a year elapsed between the time of Zuppo's arrest and trial. Although a significant delay, this factor is not dispositive. The reason for the delay can be attributed in large part to the defense. The withdrawal of counsel and appointment of new counsel resulted in a delay in scheduling the trial. Neither the defendant nor his counsel moved for a speedy trial. Zuppo does not allege that he requested his counsel to file a speedy trial motion. Nor does he allege that his

ability to present his defense was impaired in any way due to the delay in scheduling the trial. Thus, considering the totality of the circumstances, Zuppo's claim of a speedy trial violation would have been unlikely to succeed. Because a speedy trial motion would not have been successful, Zuppo cannot demonstrate either deficient performance or resulting prejudice from counsel's failure to file a speedy trial motion, and this claim should be dismissed.

3. *Severance Motion*

Zuppo next asserts that his counsel did not move to sever the charges. Defense counsel did, in fact, request and obtain a severance of the charge of possession of a deadly weapon by a person prohibited. Further, on the morning of trial, the State entered a *nolle prosequi* as to three charges of non-compliance with bond. In addition, Zuppo failed to articulate how his defense would have been different if the first degree assault charge, related weapons charge and non-compliance with bond charge had been severed. In any case, Zuppo cannot show any prejudice, as the jury acquitted him on some charges while convicting on others, evidencing that the jury separately evaluated each charge. *See Fortt v. State*, 767 A.2d 799, 804 (Del. 2001) (defendant must show "a reasonable probability that 'substantial injustice' or unfair prejudice resulted from the joint trial of the alleged [] offenses in his case") (citations omitted); *Wiest v. State*, 542 A.2d 1193 (Del. 1988); *see also Pitts*, 776 F. Supp. at 922 ("Any likelihood of prejudice was also minimized by the trial judge's instructions to the jury, [] which indicated that the evidence of each offense was to be considered separately."). The state court's decision that Zuppo had failed to establish the prejudice prong of the *Strickland* test as to this claim is a reasonable application of the *Strickland* standard.

4.      *Motion to compel discovery*

Although framed in terms that his attorney failed to compel discovery, Zuppo actually

10

argues that his attorney did not provide him with the materials obtained in discovery, specifically taped statements. *See* D.I. 5, Op. Br. at 6. Zuppo does not explain whose statements were not provided or how his inability to listen to the tapes prejudiced him at trial. Zuppo also complains about his counsel's cross-examination of various witnesses, apparently because Zuppo believes that impeachment evidence was not presented. Specifically, Zuppo complains that his counsel failed to call Reynolds' doctor as a witness to testify about side effects of medication she was taking. *Id*. Because Reynolds testified that she did not experience any of the side effects mentioned in the doctor's note, and that she had requested the note from her doctor at Zuppo's suggestion, any testimony from the doctor about possible side effects would not have assisted Zuppo's defense. *See* D.I. 5 at AA13-14. Zuppo's concerns about the witnesses' use of notes to refresh their memories demonstrates his ignorance as to the rules of evidence. In any case, Zuppo did not show that but for any of his counsel's alleged deficiencies regarding his cross-examination of any witness, the outcome of the trial would have been different. Thus, the state court properly rejected this claim for failure to demonstrate prejudice under *Strickland*.

5.   *Arraignment*

Zuppo complains that his attorney should have ensured that he was arraigned after he was re-indicted in September 2001. Zuppo also alleged that his attorney should have objected to the re-indictment on double jeopardy grounds. Because the State entered a *nolle prosequi* on the charges from the earlier indictments, the September 2001 indictment in no way implicates the Double Jeopardy Clause. *See Serfass v. United States*, 420 U.S. 377, 388 (1975); *United States v. Cerilli*, 558 F.2d 697, 701 & n.8 (3d Cir. 1977). Thus counsel had no reason to object to the re-indictment. The record reveals that Zuppo was arraigned in May 2001, but there is no record of his arraignment following the final indictment in September 2001. Zuppo does not allege that

he was not informed of the charges against him, or that his defense was impaired by a failure to have a formal arraignment. Moreover, Zuppo participated in his trial without objection, implying he waived any right to a formal arraignment. *See Thomas v. United States*, 455 F.2d 469 (5th Cir. 1972) (arraignment waived by proceeding to trial); *King v. United States*, 25 F.2d 242 (6th Cir. 1928). Thus, Zuppo failed to demonstrate any prejudice as a result of the alleged error, and dismissal of the claim was a reasonable application of the *Strickland* standard by the state courts.

6.      *Motion to Dismiss*

Prior to trial, Reynolds recanted her original statement to police. Based on her recantation, Zuppo asserts that his counsel was ineffective because he failed to file a pre-trial motion to dismiss the charges. Reynolds' original statement implicating Zuppo, however, was admissible at trial regardless of any subsequent recantation. *See* DEL. CODE ANN. tit. 11, § 3507. Moreover, recantation testimony is viewed with great suspicion. *See Dobbert v. Wainwright*, 468 U.S. 1231, 1233 (1984); *Landano v. Rafferty*, 856 F.2d 569, 572 (3d Cir. 1988). Thus, defense counsel had no basis upon which to file a motion to dismiss. Because a criminal defendant is prosecuted by the State, not the victim, a victim's desire to "drop the charges" is not sufficient to override the State's decision to prosecute. Further, because Reynolds' recantations were revealed to the jury at trial, Zuppo cannot establish prejudice based on counsel's failure to move for dismissal pre-trial. *See, e.g., Bowen v. Snyder*, 1999 WL 1011972, *7 (D. Del.) (finding that because the jury could observe the demeanor of the witness in court, the jury could have concluded that her prior out-of-court statement was more trustworthy). Thus, the state courts correctly rejected Zuppo's claim.

7.      *Pre-trial investigation*

Zuppo charges that counsel did not investigate the availability of witnesses and failed to argue the admissibility of "arguably relevant evidence" at trial. D.I. 5, Op. Br. at 8. When a petitioner alleges that counsel failed to investigate his case, prejudice is demonstrated by showing what a "proper" investigation would have produced and that the information would have ended in a different result. *See United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996); *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987). Zuppo's claim is conclusory and vague. Zuppo presented no evidence to the state courts to support his supposition that some other investigation or preparation would have uncovered evidence that could have effectively changed the result of his trial. Moreover, because the prosecution presented a case that Reynolds had been abused and manipulated by Zuppo, presenting additional witnesses to show discrepancies in Reynolds' statements or behavior would have been consistent with the State's case and unlikely to have tempered the portrayal of Zuppo as coercive and controlling. Failure to set forth how some further defense could have affected the trial is fatal to an ineffectiveness claim. *See Strickland*, 466 U.S. at 697. The state courts correctly found that without evidence that the testimony of the persons at issue would have changed the result of trial, the claim had to be denied. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

8.      *Jury instructions*

Zuppo contends that his counsel should have requested a jury instruction on the lesser-included offense of second degree reckless endangering on the second degree assault charge.[2] The difference between the two charges stems from whether or not the victim was actually

---

[2] Second degree assault occurs when "[t]he person recklessly . . . causes serious physical injury to another person . . . ." DEL. CODE ANN. tit. 11, § 612(a)(1). In contrast, second degree reckless endangering occurs when"[t]he person reckless engages in conduct which creates a substantial risk of physical injury to another person . . . ." DEL. CODE ANN. tit. 11, § 603(a)(1).

injured and the severity of injury. *See* DEL. CODE ANN. tit. 11, §§ 603(a)(1), 612(a)(1). In this case, Reynolds suffered a serious physical injury to her hand, and thus there was no rational basis in the evidence to support an instruction on reckless endangering. Furthermore, defense counsel did request a lesser-included instruction on third degree assault which was denied by the trial court. *See State v. Zuppo*, ID No. 0101004412, Comm'r's Rpt. & Rec. at 21 (Del. Super. Ct. Aug. 9, 2004) ("Comm'r's Rpt. & Rec."). In light of the record, the state courts properly found that Zuppo failed to demonstrate that his counsel was delinquent by failing to request a jury instruction for a lesser-included offense and, because a request would not have been successful, Zuppo also failed to demonstrate any prejudice. *See Strickland*, 466 U.S. at 697.

Zuppo further argues that his counsel did not properly cross-examine Reynolds or object to "prejudicial statements" made by the prosecutor. D.I. 5, Op. Br. at 10. Zuppo does not say which statements were "prejudicial" or what was wrong with the cross-examination of Reynolds. Such conclusory claims were correctly dismissed by the state courts. *See Wells*, 941 F.2d at 259-60. To the extent that Zuppo charges that his counsel did not ask Reynolds about whether Zuppo was simply trying to prevent an injury to both Reynolds and himself, this claim also fails. Zuppo can not base an ineffectiveness claim on speculative answers by a witness. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991). The decision as to what evidence to present remains with defense counsel, and Zuppo failed to demonstrate how he was prejudiced by his counsel's decision to ask certain questions but not others.[3]

---

[3] To the extent that Zuppo is asserting that his counsel was also ineffective for failure to have objected to "ambiguous" jury instructions, that claim was not articulated on appeal to the state supreme court. *See* D.I. 5, Op. Br. at 10. Thus this claim is unexhausted, but excused because Zuppo would be barred from raising the issue in a second state postconviction motion. *See* DEL. SUPER. CT. CRIM. R. 61(i)(2). Zuppo has alleged neither cause for his procedural default, nor prejudice, and as a result this claim should be dismissed.

14

9. *Self defense claim*

Zuppo alleges that his counsel should have raised a self-protection defense regarding the December 2000 assault. In Delaware, a defendant must present credible evidence that the victim was the aggressor and that the defendant believed that force was immediately necessary to successfully assert a claim of self-defense. *See* DEL. CODE ANN. tit. 11, § 464(a) (2001); *Fetters v. State*, 436 A.2d 796, 798 (Del. 1981). Reynolds testified that Zuppo became very angry with her and refused to tell her what was wrong. D.I. 5 at AA30. Reynolds followed Zuppo out of the bedroom into the living room because she "wanted to talk about it." *Id.* Reynolds "kind of hit" his arm to get his attention. *Id.* Zuppo turned, grabbed her and pinned Reynolds down on the sofa. *Id.* He held her head down with one hand while punching her in the arm with his other hand. *Id.* Even accepting Zuppo's version of events, there was no credible evidence that Zuppo believed force was immediately necessary to protect himself from Reynolds. *See Fetters*, 436 A.2d at 798. Thus, there was no basis in the evidence for a self-defense claim, and Zuppo's counsel was not ineffective by failing to argue self-defense. The state courts' rejection of this claim was a reasonable application of the *Strickland* standard.

10.   *Unlawful imprisonment*

Zuppo complains that his counsel failed to show that the elements of unlawful imprisonment were not met and failed to ask for a jury instruction. D.I. 5, Op. Br. at 10. Zuppo states that his counsel failed to properly cross-examine Reynolds about the Velcro restraints on Reynolds during the rape. This claim has no basis in the record. In the first instance, defense counsel requested lesser-included instructions for both kidnapping counts (Counts I and IV). *See* Comm'r's Rpt. & Rec. at 24. On cross-examination of Reynolds, defense counsel elicited testimony that the wrist restraints were secured only with Velcro and that she could possibly

have ripped them off with her teeth. *Id*. at 24-25. Further, the court instructed the jury as to the definition of "restraint" as defined by statute and also charged the jury on both first and second degree unlawful imprisonment on Count I. *Id*. at 25. Defense counsel's motion for judgment of acquittal as to Count IV was granted by the court. D.I.5 at A23. Because the record shows no basis for Zuppo's complaint, this claim was entirely without merit.

11.   *Conflict and bias*

Zuppo asserts that he had a conflict with his defense counsel. In support of his argument, Zuppo points out that he attempted "to change counsel" in December 2001 and on the second day of trial. D.I. 5, Op. Br. at 11. Zuppo has not articulated how his disagreements with his counsel prejudiced him at trial. The record shows that his defense counsel actively defended Zuppo at trial and was successful in having some serious felony charges dismissed or reduced. Although it is clear that Zuppo and his counsel did not agree on all aspects of the trial strategy, a difference of opinion is not a sufficient basis for an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 690-91. This claim is without merit and the state courts were not unreasonable in rejecting this claim.

12.   *Examination of Witnesses*

In his next argument, Zuppo complains that his counsel did not properly examine or cross-examine various witnesses. D.I. 5, Op. Br. at 12. Zuppo asserts that defense counsel did not ask two unnamed defense witnesses enough questions. Further, Zuppo complains that counsel failed to ask Reynolds about the length of the rope used around her neck. Zuppo contends that if counsel had asked Reynolds about the rope, it would have been apparent to the jury that Reynolds was lying because the rope was not long enough to do what Reynolds had described in her testimony. The rope, however, was admitted as an exhibit at trial and available

for the jury to evaluate whether the rope could or could not have been used in the manner described by the victim. Any questions concerning the length of the rope would have done little, if anything, to assist the defense. Instead, as the trial court noted, such questions may have highlighted Reynolds' testimony about having a rope around her neck. Comm'r's Rprt. & Rec. at 26. Certainly, defense counsel's failure to ask Reynolds about the length of a rope available to the jury for inspection was reasonable trial strategy and would not have prejudiced Zuppo in any way. *See Strickland*, 466 U.S. at 690-91. Rejection of this claim by the state courts was a reasonable application of *Strickland*.[4]

13.    *Impeachment evidence*

Zuppo asserts that his counsel should have introduced certain out-of-court statements of Reynolds as evidence at trial to demonstrate the discrepancies in her statements. In her trial testimony, however, Reynolds admitted that she had made other statements and that she had told both the police and medical personnel at the hospital different versions of events than she was telling at trial. *See* Comm'r's Rpt. & Rec. at 28. The jury was shown ample evidence that Reynolds had changed her version and had tried to withdraw her complaints about Zuppo. As noted by the court, the prosecution's theory of the case was that Reynolds was a battered woman, and any additional evidence that Reynolds had changed her mind about pursuing her complaints would simply reinforce the idea that Reynolds was afraid of the possible consequences and was easily manipulated by Zuppo. *Id.* Zuppo could not show prejudice from his counsel's failure to present cumulative evidence. Zuppo's claims about Sean Hackett's testimony were unfounded

---

[4] In an addendum, Zuppo also complains that his counsel did not properly explore the issue of Reynolds' suicide note. This issue was not raised in his postconviction motion and was thus precluded from review by the state supreme court. *See* DEL. SUPR. CT. R. 8. Because Zuppo has not alleged cause for, or prejudice from, his procedural default in state court, this claim should be dismissed.

accusations without any basis in the record. There is no reason to believe that either the prosecutor or the defense attorney influenced Hackett's testimony. As to Zuppo's complaint about his counsel's failure to have the transcripts of Zuppo's arraignments and preliminary hearing presented at trial, the transcripts would have been cumulative had they been admissible at all. Zuppo failed to demonstrate either prong of the *Strickland* test, and the state court properly rejected this claim.

14.   *Trial objections*

Zuppo asserts that his counsel's failure to object on fourteen separate occasions at trial created a cumulative impact that prejudiced Zuppo. Some of these occasions were when the prosecutor allowed a witness to refresh his or her memory. Comm'r's Rpt. & Rec. at 29. At other points, Zuppo complained that counsel should have asked for curative instructions. *Id*. The trial court properly found, however, that Zuppo failed to explain how any of these alleged deficiencies, or the cumulative effect of the alleged deficiencies, resulted in prejudice under *Strickland*. *Id.* Zuppo's conclusory and vague protestations of prejudice were simply inadequate to sustain a claim of ineffective assistance of counsel. The state court's finding that Zuppo failed to establish prejudice under *Strickland* was a reasonable application of the two-pronged test.

15.   *Racial issues*

Zuppo claims that his counsel was ineffective because he failed to ask for a curative instruction after the prosecutor questioned Zuppo about a black man. During the course of his cross-examination, an issue arose about a picture of Reynolds that Zuppo had seen that bothered him, and the following exchange occurred:

> A. [Zuppo]  She was sitting in a bathtub with another girl in a bathtub and there was a black man with boxer shorts, and you got a view of them and then the two looking at him.

>Q. [Prosecutor] And that bothered you?
>
>A. Wanted to know actually – like I said, we decided to be married, but yes, it bothered me.
>
>Q. And it bothered you that you saw her like that with a black man?
>
>A. No, it was the principle that she was in the bathtub with two girls and a guy standing in front of her.

D.I. 5 at AA58. Immediately following this exchange, the trial court requested a sidebar, expressing concern about injecting race into the case. Defense counsel, electing not to focus the jury on an irrelevant point, declined to ask for a curative instruction. *Id.* During the course of the four-day trial, there was no other mention of race in any context that might suggest that Zuppo was a racist. Defense counsel's strategic decision not to highlight the issue was professionally reasonable. Zuppo's own response to the question had mitigated any possible inference of racism. Thus, the state court properly found that neither prong of *Strickland* had been established as to this claim. Comm'r's Rpt. & Rec. at 30.

16.    *Motion for mistrial*

In his final claim for relief, Zuppo alleges that counsel was ineffective because he failed to ask for a mistrial when Reynolds spoke to the jury while displaying her injury. Reynolds apparently made a brief comment while showing her injured hand to the jury. D.I.5 at AA40. The prosecutor and defense counsel agreed that they had heard Reynolds referring to her hand. *Id*. The trial court determined that any comment was harmless. *See id.* Given the trial court's conclusion that no action needed to be taken as a result of the incident, a defense motion for a mistrial would not have been successful. Thus, the state court's finding that Zuppo failed to establish prejudice under *Strickland* was manifestly correct.

In sum, Zuppo failed to demonstrate prejudice as a result of any alleged deficiencies of defense counsel as required under the *Strickland* test. Thus, the state courts properly found Zuppo's claims to be without merit. Under the federal habeas statute, "it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). In this case, the decision of the state courts is a reasonable application of the relevant constitutional standards. Zuppo has failed to carry his burden, and his petition should accordingly be denied.

## Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Zuppo's trial and sentencing have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/ Elizabeth R. McFarlan
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 3759
elizabeth.mcfarlan@state.de.us

Date:  November 17, 2005