IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ANTHONY ZUPPO,                    )
                                  )
            Petitioner,           )
                                  )
      v.                          )   Civ. No. 05-504-SLR
                                  )
THOMAS CARROLL,                   )
Warden, and CARL                  )
C. DANBERG, Attorney              )
General of the State              )
of Delaware,                      )
                                  )
            Respondents.          )

---

Anthony Zuppo.  Pro se petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware
Department of Justice, Wilmington, Delaware.  Counsel for
respondents.

---

**MEMORANDUM OPINION**

Dated: October 2ᵗʰ, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

Petitioner Anthony Zuppo ("petitioner") is an inmate in

custody at the Delaware Correctional Institution in Smyrna,

Delaware.  Before the court is petitioner's application for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (D.I. 2)

The State has filed its answer that habeas relief is not

warranted.  For the reasons that follow, petitioner's application

will be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The facts of petitioner's case are as follows:

In September 2000, Wendy Reynolds and [petitioner] began
dating and they moved in together quickly thereafter.
According to Reynolds' testimony at trial, [petitioner]
became violent and controlling.  [Petitioner] would not allow
her to leave the house without him, and he often referred to
her derogatorily.  On one particular occasion, [petitioner]
pinned her to the couch and beat her.  Reynolds considered
leaving after the beating but, instead, forgave
[petitioner].  Shortly thereafter, according to Reynolds,
[petitioner] raped her.  [Petitioner] maintains that she
consented.

Reynolds attempted to move out the evening following the
alleged rape but claimed [petitioner] choked her and
threatened to shoot her.  Reynolds reported these incidents
to the police.  The police arrested [petitioner] for
Terroristic Threatening and Offensive Touching.  As a
condition of [petitioner's] release on bond, a Justice of
the Peace Court ordered [petitioner] to have no contact with
Reynolds.

Despite the no contact stipulation, Reynolds testified at
trial that [petitioner] tried contacting her at work a
matter of days after his release.  Reynolds also testified
that [petitioner] made a harassing phone call to her place
of residence.  [Petitioner] denied making the harassing phone

1

call.  A Wilmington Police Officer testified that he traced
the call from Reynolds' residence to a gas station near
[petitioner's] residence.

The day after the phone call to Reynolds' residence,
Reynolds and [petitioner] attempted reconciliation.
Reynolds again moved in with [petitioner].  The police,
however, then arrested [petitioner] for violation of bail
conditions.  For reasons known only to her, Reynolds posted
[petitioner's] bail and accompanied him to Pennyslvania for
one week.  In Reynolds' own words, however, "the abuse
started right away." [citation omitted] Inexplicably,
Reynolds, sporting a clearly visible black eye, married
[petitioner] while in Pennsylvania.

The marriage failed to resurrect the relationship.  One
evening, shortly after arriving back in Delaware,
[petitioner] and Reynolds engaged in an argument that
culminated in [petitioner] attacking Reynolds.  Reynolds
claimed that she picked up a kitchen knife in self-defense.
[Petitioner] remained undeterred.  He pressed on, knocked
her backwards and grabbed her wrist. [Petitioner] then tried
to rip the knife from Reynolds and in the process he cut her
hand to the bone.  Finally, Reynolds called the police and
told them about everything [petitioner] had done to her.
She did so "[b]ecause [she] thought if [she] stayed much
longer that he really would kill me." [citation omitted] At
the time of trial, Reynolds' hand had been operated on
twice, and she appeared to face a serious, long-term
disability.

Zuppo v. State, 807 A.2d 545, 546-47 (Del. 2002).

In September 2001, a grand jury returned a final indictment

charging petitioner with the following twenty two offenses: (1)

second degree kidnaping occurring on or about January 5, 2001;

(2) terroristic threatening occurring on or about January 5,

2001; (3) offensive touching occurring on or about January 5,

2001; (4) second degree kidnaping occurring on or about January

3, 2001; (5) attempted first degree rape occurring on or about

January 3, 2001; (6) first degree rape occurring on or about

January 3, 2001; (7) third degree assault on or about December
18, 2000; (8) non-compliance with bond conditions or no-contact
provisions on or about January 7, 2001; (9) non-compliance with
bond conditions on or about January 9, 2001; (10) harassment on
or about January 9, 2001; (11) non-compliance with bond
conditions or no-contact provisions on or about March 16, 2001;
(12) aggravated act of intimidation on or about March 16, 2001;
(13) non-compliance with bond conditions or no-contact provisions
on or about March 16 2001; (14) non-compliance with bond
conditions on or about April 2, 2001; (15) aggravated act of
intimidation on or about April 10, 2001; (16) aggravated act of
intimidation on April 10, 2001; (17) non-compliance with bond
conditions or no-contact provisions on or about April 10, 2001;
(18) non-compliance with bond conditions on or about July 1,
2001; (19) second degree assault on or about July 1, 2001; (20)
possession of a deadly weapon during the commission of a felony
on or about July 1, 2001; (21) possession of a deadly weapon
and/or ammunition by a person prohibited on or about July 1,
2001; (22) non-compliance with bond conditions or no-contact
provisions between August 7, 2001 and August 11, 2001.  (D.I. 19,
Indictment by the Grand Jury)

The Superior Court severed Count 21 (possession of a deadly
weapon and/or ammunition by a person prohibited).  On the morning
of trial, the State entered a nolle prosequi for three charges of

3

non-compliance with bond. State v. Zuppo, ID No. 0101004412,
Cmm'r. Rep. and Rec., at 16 (Del. Super. Ct. Aug. 9, 2004).
In February 2002, a Delaware Superior Court jury convicted
petitioner of first degree unlawful imprisonment (lesser included
offense of second degree kidnaping - Count 1), second degree
rape, third degree assault, five counts of non-compliance with
bond, harassment, offensive touching, three counts of an
aggravated act of intimidation, and second degree assault.  The
jury found petitioner not guilty of terroristic threatening and
possession of a deadly weapon during the commission of a felony,
and the Superior Court granted defense counsel's motion for
judgment of acquittal for second degree kidnaping (Count 4).
(D.I. 19, Del. Super. Ct. Crim. Dkt. Entry #26)  The Superior
Court sentenced petitioner to an aggregate of twenty-six years,
eleven months in prison, suspended after twenty years, five
months for decreasing levels of supervision.  The Delaware
Supreme Court affirmed petitioner's convictions and sentences.
Id.

     Petitioner filed a motion for post-conviction relief
pursuant to Delaware Superior Court Rule 61 ("Rule 61 motion").
The Rule 61 motion was referred to a Superior Court Commissioner
for findings and a recommendation.  See Del. Code Ann. tit. 10, §
512(b).  In a thirty-three page Report and Recommendation, the
Commissioner concluded that petitioner's sixteen ineffective

4

assistance of counsel claims were meritless and his claim alleging insufficient evidence was procedurally defaulted. State v. Zuppo, ID No. 0101004412, Cmm'r. Rep. and Rec. (Del. Super. Ct. Aug. 9, 2004). The Superior Court adopted the Commissioner's Report and Recommendation and denied petitioner's Rule 61 motion. State v. Zuppo, ID No. 0101004412, Order (Del. Super. Ct. Jan. 31, 2004). The Delaware Supreme Court affirmed the Superior Court's decision. Zuppo v. State, 2005 WL 1653622 (Del. 2005).

## III. GOVERNING LEGAL PRINCIPLES

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Absent exceptional circumstances, a federal court cannot review a habeas petition unless the petitioner has exhausted all means of available relief for his claims under state law. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971). A petitioner satisfies the exhaustion requirement by invoking "one complete round of the State's established appellate review process," which involves fairly presenting the claim to the state's highest court, either on direct appeal or in a post-conviction proceeding. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); See Lambert v. Blackwell,

5

134 F.3d 506, 513 (3d Cir. 1997).

If the state's highest court adjudicated a federal habeas claim on the merits, then a federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A state court decision constitutes an adjudication on the merits for the purposes of § 2254(d) if the "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), rev'd on other grounds by Rompilla v. Beard, 545 U.S. 374 (2005). Pursuant to § 2254(d), federal habeas relief may only be granted when the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

AEDPA also requires a federal court to presume that a state court's implicit and explicit determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. 28

U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 341
(2003)(stating that the clear and convincing standard in §
2254(e)(1) applies to factual issues, whereas the unreasonable
application standard of § 2254(d)(2) applies to factual
decisions).

## IV. DISCUSSION

Petitioner asserts two grounds for relief in his § 2254
application: (1) the trial court denied petitioner's request to
represent himself in violation of the Sixth Amendment; and (2)
defense counsel provided ineffective assistance on seventeen
occasions. (D.I. 2; D.I. 5)

### A. Self-representation claim

Petitioner presented his claim regarding the Superior
Court's alleged violation of his right to self-representation to
the Delaware Supreme Court on direct appeal. The Delaware
Supreme Court denied the claim as meritless. Therefore, the
court must review the claim under § 2254(d)(1) to determine if
the Delaware Supreme Court's denial of this claim was contrary
to, or an unreasonable application of, Supreme Court precedent.

The clearly established Supreme Court precedent applicable
to claims involving the Sixth Amendment right to self-
representation is Faretta v. California, 422 U.S. 806 (1975) and
its progeny. In Faretta, the Supreme Court held that a defendant
may competently and intelligently choose to represent himself

7

even if he does not "have the skill and experience of a lawyer,"
provided that the defendant is "made aware of the dangers and
disadvantages of self-representation, so that the record will
establish that he knows what he is doing and his choice is made
with eyes open." Id. at 835. The Faretta Court explained that
the right to self-representation is not absolute, and also
explained that the right to self-representation "is not a license
to abuse the dignity of the courtroom." Id. at 834 n.46. In
Martinez v. Court of Appeal of California, Fourth Appellate
District, 528 U.S. 152, 162 (2000), the Supreme Court held that,
even when a defendant makes a clear and unequivocal request to
proceed pro se at the trial level, the "government's interest in
ensuring the integrity and efficiency of the trial at times
outweighs the defendant's interest in acting as his own lawyer."
For example, "most courts require [the defendant to make a
request to proceed pro se] in a timely manner." Id. The
Martinez Court also explained that, although the "right to defend
oneself at trial is 'fundamental' in nature, it is clear that
representation by counsel is the standard and not the exception."
Id. at 161.

Here, petitioner asked the trial court to reassign counsel
on the second day of his trial. When the trial court denied that
request, petitioner asked to proceed pro se. The trial court
informed petitioner about the risks of proceeding pro se, and

8

then conducted an inquiry into petitioner's reasons for seeking
self-representation. During that inquiry, the prosecutor
conveyed his concern that petitioner's request was untimely - one
witness had already been fully questioned and another witness was
near the end of cross-examination - and that permitting
petitioner to represent himself would prejudice the State. The
trial judge recessed and, upon reconvening, denied petitioner's
request to proceed pro se. The trial judge noted that petitioner
did not know the Rules of Evidence and that petitioner had only
asked to represent himself after the judge denied his request for
new counsel. The prosecutor asked the judge to specifically
address the untimeliness of petitioner's request and the
detrimental impact that granting the request would have on the
proceedings. The trial judge then stated that he was also
denying petitioner's request for self-representation because it
was untimely. (D.I. 19, App. to Appellant's Op. Br. in Zuppo v.
State, No. 208, 2002, at A-59 through A-66)

On direct appeal, petitioner argued that the Delaware
Superior Court violated his right to self-representation because
the "record does not reflect a clear balance by the trial court
of the prejudice to the defendant versus the potential disruption
of the trial." Zuppo, 807 A.2d at 548. The Delaware Supreme
Court cited to Faretta and Martinez and rejected petitioner's
argument, specifically noting that the "record suggests that the

9

trial judge implicitly weighed the competing interests with care." Zuppo, 807 A.2d at 548-49.

As an initial matter, the court finds that the Delaware Supreme Court's decision was not contrary to clearly established federal law because the state court correctly identified and applied Faretta and Martinez as the applicable Supreme Court precedent. See Williams, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court also concludes that the Delaware Supreme Court's decision did not involve an unreasonable application of Faretta and Martinez. First, although Faretta and Martinez require trial courts to determine that a defendant's waiver of representation is knowing and intelligent, these Supreme Court decisions do not require trial courts to explicitly detail the balancing of the government's interest in efficiency and integrity against the accused's right to self-representation when reviewing a request to proceed pro se made after the commencement of trial.[1]

---

[1]Even the Third Circuit Court of Appeals, which requires a "searching inquiry" to determine that the defendant's waiver of representation is knowingly and intelligently made, has not addressed the scope of the balancing inquiry a trial court must undertake to determine if the government's interests outweigh the defendant's interest when the defendant has requested to represent himself after the commencement of trial. See, e.g., Buhl v. Cooksey, 233 F.3d 783, 797 n.16 (3d Cir. 2000)(explaining that, "[a]fter a trial has commenced, the right of self-

10

Second, the record supports the Delaware Supreme Court's conclusion that the trial judge implicitly balanced petitioner's right to represent himself against the prejudice that would result to the State if petitioner were permitted to represent himself. At trial, petitioner argued that he wanted to proceed pro se because his attorney had not subpoenaed all the witnesses petitioner thought he should, and also because he and defense counsel had experienced numerous conflicts. The prosecutor asked the court to deny the request, specifically stating "[t]he things I would suggest the Court should look to in exercising its discretion, is one, whether or not his right to proceed pro se overcomes the obvious problems we will have in switching gears to do that and the disruption of the proceedings." (D.I. 19, Appendix to Appellant's Op. Br. in Zuppo v. State, No.208,2002 at A63) After hearing from both sides, the Superior Court judge stated "I frankly do not think that you are making a knowing and intelligent decision to represent yourself, and I'm inclined to deny your request." (D.I. 19, Appendix to Appellant's Op. Br. in Zuppo v. State, No.208,2002 at A65a) The judge then asked if anyone wanted to put anything on the record, and the State

---

representation is curtailed, and the judge considering the motion must weigh the prejudice to the legitimate interests of the defendant against the potential disruption of proceedings already in progress"); Gov't of Virgin Islands v. Charles, 72 F.3d 401, 404 (3d Cir. 1995).

11

explicitly mentioned that the court had greater discretion over petitioner's request to proceed pro se given the fact that the request was made afer the trial had commenced. Id. In response, the judge said that the court does have greater discretion to deny a request to proceed pro se when it occurs during the trial because it does have a tendency to disrupt proceedings. The judge specifically concluded that "in this case, I don't think you're prepared to examine witnesses, and I'm not inclined, under these circumstances on the second day of the trial, measured from when the evidence was introduced, I'm not inclined to grant your request. . . . I think it is untimely as well." Id. at A66.

Based on the foregoing, the court concludes that the Delaware Supreme Court reasonably found that the record adequately reflected "a clear and logical basis for the trial judge's reasoning." Zuppo, 807 A.2d at 549. The trial judge noted that petitioner's request was untimely, and "properly determined that [petitioner's] interest in proceeding pro se failed to outweigh the State's interest in ensuring the integrity and efficiency of the trial." Zuppo, 807 A.2d at 549. Thus, petitioner's claim regarding the violation of his right to self-representation does not warrant federal habeas relief.

## B.  Ineffective assistance of counsel claims that do not warrant relief under § 2254(d)(1)

Petitioner's habeas application asserts that counsel provided ineffective assistance. However, rather than explicitly

12

explain his allegations, petitioner merely attaches copies of his Rule 61 motion and his post-conviction appellate brief to his application. Reading both of those documents together, the court concludes that petitioner's application presents a total of seventeen ineffective assistance of counsel claims. Specifically, petitioner contends that counsel failed to: (1) file a motion to suppress; (2) file a speedy trial motion; (3) file a motion to sever the charges; (4) file a motion to compel discovery; (5) argue that the failure to arraign petitioner following the final indictment violated the Double Jeopardy Clause; (6) file a motion to dismiss based on Reynolds' recantation; (7) properly investigate the availability of witnesses or argue the admissibility of relevant evidence; (8) request a jury instruction on the lesser included offense of second degree reckless endangering on the second degree assault charge; (9) raise a self-protection defense; (10) argue that the State did not establish the elements of unlawful imprisonment; (11) effectively represent petitioner because of conflicts between petitioner and counsel; (12) properly examine or cross-examine various witnesses; (13) question Reynolds about her suicide note or introduce certain statements made by Reynolds to demonstrate discrepancies in her testimony; (14) object on fourteen separate occasions at trial; (15) argue that there was insufficient evidence to sustain his conviction; (16) ask for a

13

curative instruction after the prosecutor injected racial issues

into the trial; and (17) move for a mistrial after Reynolds spoke

to the jury.

Petitioner asserted a total of seventeen claims to the

Superior Court in his Rule 61 motion, but only sixteen of those

claims alleged ineffective assistance of counsel; the remaining

claim alleged that there was insufficient evidence to sustain his

conviction.   The Superior Court denied the sixteen ineffective

assistance of counsel claims as meritless and the remaining

substantive claim as procedurally defaulted.  On post-conviction

appeal, petitioner presented a total of sixteen claims to the

Delaware Supreme Court; he deleted the claim alleging that

counsel failed to file a speedy trial motion, but he re-casted

the substantive insufficient evidence claim to allege that

counsel's failure to argue insufficient evidence constituted

ineffective assistance.   The Delaware Supreme Court determined

that petitioner's sixteen ineffective assistance of counsel

claims were meritless and affirmed the Superior Court's

decision.[2]   Therefore, the court must review the sixteen

_____

[2]In affirming the Superior Court's judgment, the Delaware
Supreme Court described the ineffective assistance of counsel
claims as follows:  (1) counsel failed to file the appropriate
trial motions; (2) counsel failed to investigate, interview, and
subpoena witnesses; (3) counsel failed to request jury
instructions on lesser charges; (4) counsel failed to make the
proper objections and raise the proper defenses; (5) counsel
failed to properly cross examine the State's witnesses; (6)
counsel failed to introduce impeachment evidence; (7) counsel had
a conflict of interest with petitioner and demonstrated bias; and

14

exhausted and adjudicated claims under § 2254(d)(1) to determine
if the Delaware Supreme Court's denials of these claims were
contrary to, or an unreasonable application of, Supreme Court
precedent.[3]

     The clearly established Supreme Court precedent governing
ineffective assistance of counsel claims is the two-pronged
standard enunciated by Strickland v. Washington, 466 U.S. 668
(1984) and its progeny. See Wiggins v. Smith, 539 U.S. 510
(2003). Under the first Strickland prong, a petitioner must
demonstrate that "counsel's representation fell below an

_____

(8) counsel improperly permitted race to be interjected as an
issue at trial. Zuppo, 2005 WL 1653622, at *1. A close reading
of the Delaware Supreme Court indicates that the state supreme
court condensed petitioner's sixteen claims into eight claims.
For example, the claim characterized as "failing to file the
appropriate trial motions" appears to include claims one, three,
four, six, and seventeen presented in petitioner's habeas
application; petitioner did not include claim two regarding
counsel's failure to file a speedy trial motion in his post-
conviction appellate brief. The claim characterized as "failing
to make the proper objections and raise the proper defenses"
appears to include claims five, nine, ten, fourteen, and fifteen
presented in his habeas application. Thus, the court concludes
that the Delaware Supreme Court adjudicated the merits of the
sixteen claims presented by petitioner for federal habeas review.
     If the court is mistaken, and the Delaware Supreme Court
actually failed to adjudicate claims one, three through six,
nine, ten, fourteen, fifteen, and seventeen, then the court must
apply the pre-AEDPA standard and review the claims de novo.
Holloway v. Horn, 355 F.3d 707, 718-19 (3d Cir. 2004).
Nevertheless, even reviewing the claims de novo, the court would
deny the claims as meritless for the same reasons expressed in
the text of the opinion.

     [3]However, as explained infra at 38-39, the speedy trial
allegation is procedurally barred and can only be reviewed upon a
showing of cause and prejudice, or if a miscarriage of justice
will occur absent review.

objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. Strickland, 466 U.S. at 688. Under the second Strickland prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." Id. at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. See Wells v. Petsock, 941 F.2d 253, 259-260 (3d Cir. 1991); Dooley v. Petsock, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." Strickland, 466 U.S. at 689.

Here, the Superior Court and the Delaware Supreme Court correctly identified Strickland as the proper standard and analyzed all sixteen claims within its framework. Therefore, the Delaware Supreme Court's denial of petitioner's ineffective assistance of counsel claims was not contrary to Strickland. See Williams, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit

16

comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court must also determine whether the state courts' analysis of the claims constituted an unreasonable application of Strickland. The court will review each allegation in seriatim.

## 1. Motion to suppress

When the police arrested petitioner, Reynolds gave the police a clothesline, blindfold, and Velcro restraints she took from under the bed in the master bedroom of Zuppo's residence. Petitioner contends that counsel performed deficiently because he did not file a motion to suppress that property.

In petitioner's post-conviction proceeding, the Superior Court Commissioner recommended denying the instant claim because a "search and seizure conducted by a private party does not implicate the Fourth Amendment, and evidence discovered as a result of such a search is not subject to the exclusionary rule." State v. Zuppo, ID No. 0101004412, Commissioner's Rep. and Rec., at 14 (Del. Super. Ct. Aug. 9, 2004). The Superior Court adopted that recommendation, and the Delaware Supreme Court affirmed the Superior Court's denial of the claim.

The United States Supreme Court has held that the Fourth Amendment protection only proscribes "governmental action [ . . . and] is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge

17

of any governmental official." United States v. Jacobsen, 466
U.S. 109, 113 (1984). Thus, because there was no basis for
filing a motion to suppress the property supplied by Reynolds,
counsel did not provide ineffective assistance. See United
States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999)(an attorney
does not provide ineffective assistance by failing to present
meritless arguments).

## 2. Severance motion

Petitioner contends that counsel performed ineffectively by
failing to sever the charges. The Superior Court Commissioner
concluded that counsel did not provide ineffective assistance
because: (1) counsel did, in fact, request and obtain a
severance of the charge of possession of a deadly weapon by a
person prohibited; (2) the jury acquitted petitioner of some
charges and convicted him on others, thereby demonstrating that
the jury evaluated the evidence as to each charge separately; (3)
petitioner did not specify which charges should have been
included in a motion to sever; and (4) the State entered a nolle
prosequi as to the three charges of non-compliance with bond.
(D.I. 19, State v. Zuppo, ID No. 0101004412, Com'rs. Rep. and
Rec. at 16-17) The Delaware Superior Court judge adopted the
Commissioner's Report and Recommendation because "all of the
charges which were tried at trial were properly joined and that
there was no prejudice to the defendant from the joinder of those

18

which were joined at trial." State v. Zuppo, ID No. 010100441, Order, Vaughn, Judge, at 3 (Del. Super. Ct. Jan. 31, 2004). The Delaware Supreme Court affirmed the Superior Court's decision, specifically noting that all of petitioner's claims were meritless.

As an initial matter, petitioner's application fails to specify which charges should have been severed. Additionally, the record reveals that counsel did file a motion to sever Count 21 of the final indictment charging petitioner with possession of a deadly weapon and/or ammunition by a person prohibited, which the Superior Court granted. (D.I. 19, Del. Super. Ct. Dkt. at Entry 26) Therefore, the record belies petitioner's vague claim that counsel failed to object to the joinder of charges.

Moreover, whether the charges were properly joined under Delaware law is a matter of state law, and "it is not the province of a federal habeas court to reexamine state court determinations on state law issues." Estelle v. McGuire, 502 U.S. 62 (1991); see Del. Super. Ct. Crim. R. 8(a). By affirming the Superior Court's decision to deny the instant claim as meritless, the Delaware Supreme Court implicitly adopted the Superior Court's finding that all of the charges tried at trial were properly joined. An attorney does not provide ineffective assistance by failing to raise meritless arguments, therefore, petitioner cannot establish the requisite prejudice under

19

Strickland.

### 3. Failure to compel discovery

Petitioner contends that counsel did not provide him with taped statements obtained during the discovery phase. As in his state post-conviction proceeding, petitioner fails to explain which statements were not provided or how his inability to listen to the tapes prejudiced him at trial. Thus, this vague claim does not warrant relief.

Petitioner also contends that counsel failed to call Reynolds' doctor as a witness to testify about the side effects Reynolds experienced while she was taking anti-depressants during January and February 2001. The Delaware state courts denied the claim after determining that petitioner did not substantiate prejudice under Strickland.

During petitioner's trial, both petitioner and Reynolds testified that the physician only wrote the note at Reynold's request. (D.I. 19, Appendix to Appellant's Op. Br. in Zuppo v. State, No. 208,2002, at A-46) Reynolds further explained that she did not even experience the side effects she described to her physician, and that she only asked her physician to write the note because she feared petitioner. (D.I. 19, "Exhibits for Rule 61 motion," at AA-13 to AA-14.)

Hence, even if Reynolds' physician had testified to writing the note, his testimony would not have rebutted Reynolds'

20

admission that she never experienced the side effects she
described to the physician. Accordingly, the court concludes
that the Delaware courts reasonably applied Strickland in denying
the instant claim.

### 4. Failure to insist on arraignment violated the Double Jeopardy Clause

The record reveals that petitioner's first indictment was
returned in March 2001, and then a re-indictment was returned in
May 2001 to include new offenses. After his May 2001
arraignment, petitioner was released on bail. While out on bail,
petitioner committed new offenses. Consequently, the grand jury
returned a final indictment in September 2001 which included
those new offenses.

Petitioner contends that counsel failed to insist on an
arraignment after September 2001 and that counsel should have
objected to the September 2001 "re-indictment" as violating the
Double Jeopardy Clause. Petitioner's argument is unavailing,
however, because the State entered a nolle prosequi on the
charges from the first two indictments well before jeopardy
attached. See generally (D.I. 19, Super. Ct. Dkt.); see also
Serfass v. United States, 420 U.S. 377, 388 (1975). Accordingly,
the state courts did not unreasonably apply Strickland in
determining that petitioner was not prejudiced by counsel's
failure to raise a meritless argument.

21

## 5. Failure to file pre-trial motion to dismiss

Petitioner contends that counsel should have filed a motion to dismiss his case because Reynolds recanted her original statement to the police prior to his trial. (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 8) This argument does not merit relief because petitioner cannot satisfy the prejudice prong of the Strickland test. First, recantation testimony is regarded with great suspicion and, pursuant to Delaware law, Reynolds' original statement implicating petitioner was admissible regardless of her subsequent recantation. See Dobbert v. Wainwright, 468 U.S. 1231, 1233 (1984); Landano v. Rafferty, 856 F.2d 569, 572 (3d Cir. 1988); Del. Code Ann. tit. 11, § 3507. Therefore, even if counsel had filed a motion to dismiss based on Reynolds' recantation, that motion was unlikely to succeed.

More significantly, however, is the fact that the jury knew about Reynold's recantation and heard the conflicting stories told by Reynolds and petitioner and, yet, the jury decided to convict petitioner on all but two of the charges.[4] See Bowen v. Snyder, 1999 WL 1011972, at *7 (D. Del. Oct. 22, 1999)(citing

---

[4]The jury found petitioner not guilty of terroristic threatening (Count 2) and possession of a deadly weapon during the commission of a felony (Count 20). Additionally, for Count 1, the jury found petitioner guilty of first degree unlawful imprisonment, the lesser included offense for second degree kidnaping.

22

Jackson v. Virginia, 443 U.S. 307, 326 (1979)(On habeas review, the court must defer to the jury's resolution of conflicts in the evidence)). Accordingly, the court concludes that the Delaware courts did not unreasonably apply Strickland in determining that petitioner was not prejudiced by counsel's action.

### 6. **Failure to investigate, interview, and subpoena witnesses**

Petitioner contends that counsel did not investigate the witnesses who were available to testify about his relationship with Reynolds, and he also contends that the witnesses would have testified that they never saw any marks on Reynolds or signs of abuse. (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 8-9) Petitioner included two letters with his application: one letter is from the pastor who actually married petitioner and Reynolds, and the other letter is from petitioner's employer. The pastor's letter is dated May 21, 2003, and states that Reynolds did not have a black eye during the ceremony and that it did not appear that Reynolds was being forced into the marriage. (D.I. 19, Appendix to Appellant's Op. Br. in Zuppo v. State, No.87,2005, at A-21) The letter from petitioner's employer is dated August 27, 2003, stating that he interacted with petitioner and Reynolds socially on several occasions and he never saw petitioner mistreat Reynolds. (D.I. 19, Exhibits to Rule 61 motion, at AA-57)

Petitioner raised the instant claim in his post-conviction

23

proceeding, and the Superior Court denied it as meritless. Specifically, the Superior Court concluded that the prosecution's case centered on the fact that Reynolds had been abused and manipulated by petitioner, therefore, "presenting additional variations in Reynolds' statements and/or behavior would have been entirely consistent with the State's case and thus unlikely to have changed the portrayal of [petitioner] as manipulative and controlling." State v. Zuppo, ID No. 0101004412, Cmm'rs. Rec. and Rep. at 20.

As an initial matter, the record reveals that petitioner's employer did testify during petitioner's trial. Therefore, petitioner's allegation concerning counsel's failure to investigate or subpoena his employer as a witness is factually baseless.

The court also concludes that the petitioner's claim regarding counsel's failure to investigate or subpoena the pastor as a witness does not warrant federal habeas relief. A petitioner has the burden of proving specific facts to support an allegation of ineffective assistance. Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir. 1996); Wells v. Petsock, 941 F.2d 253, 259-260 (3d Cir. 1991). Additionally, to succeed on a claim alleging a failure of counsel to investigate potential witnesses, a petitioner must demonstrate how the witnesses' testimonies would have been favorable and material. See United States v.

24

Gray, 878 F.2d 702, 711 (3d Cir. 1989). In petitioner's case, petitioner and Reynolds were married by the pastor in the State of Pennsylvania on June 20, 2001. However, because the final indictment did not charge petitioner with any offense that occurred in the month of June, the pastor's potential testimony regarding the absence of a black eye on June 20, 2001 only pertained to the nature of petitioner's relationship with Reynolds. The pastor's testimony would have constituted cumulative evidence because ample evidence relating to the nature of petitioner's relationship with Reynolds was presented to the jury. Therefore, the court concludes that the Delaware state courts reasonably applied Strickland in denying the instant claim.[5]

## 7.   **Failure to have jury instructed on lesser included offenses**

Petitioner appears to contend that he was entitled to have a lesser included offense instruction for second degree reckless endangering on the second degree assault charge because he was

_____

[5]To the extent petitioner contends that counsel should have procured the testimony of witnesses other than the pastor or petitioner's employer who also would have testified as to the absence of physical signs of abuse, the court concludes that, given the prosecution's theory of petitioner's continued abuse and manipulation of Reynolds, the Delaware state courts reasonably determined that such testimony would have only provided additional variations in Reynolds' stories and would not have changed the outcome of the trial. Therefore, once again, petitioner's claim fails to satisfy the prejudice prong of Strickland.

25

found to be not guilty of possession of a deadly weapon during the commission of a felony (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 9) The Superior Court denied this claim because the facts did not provide a rational basis for such an instruction.

After reviewing the record, the court concludes that the instant claim does not warrant federal habeas relief. In Delaware, a second degree assault occurs when "[t]he person recklessly . . . causes serious physical injury to another person . . ." Del. Code Ann. tit. 11, § 612(a)(1). Second degree reckless endangering occurs when "[t]he person recklessly engages in conduct which creates a substantial risk of physical injury to anther person. . . ." Del. Code Ann. tit. 11, § 603(a)(1). The difference between the two charges stems from whether or not the victim was actually injured and the severity of the injury. In petitioner's case, Reynolds actually suffered a serious injury to her hand, thereby eliminating any rational basis for supporting an instruction on reckless endangering. Moreover, defense counsel did request a lesser-included instruction for third degree assault, which the trial court denied. See Zuppo, ID no. 0101004412, Comm. Rpt. & Rec. at 21 (Del. Super. Ct. Aug. 9, 2004). Thus, the court finds that the Delaware courts reasonably determined that petitioner failed to satisfy either prong of

26

Strickland.[6]

## 8.    Failure to raise a self-protection defense

Petitioner contends that counsel should have argued that petitioner acted in self-defense for the December 2000 assault charge because Reynolds testified that she followed petitioner into the living room and continued to hit him after petitioner tried to get away from her. (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 10)  Petitioner also contends that counsel should have argued that petitioner acted in self-defense for the July 2001 assault charge because Reynolds testified that she wanted to stab petitioner.  The Superior Court denied these claims after determining that petitioner could not have succeeded with a self-defense claim and, therefore, counsel's decision to forego a claim of self-defense was not unreasonable or prejudicial.

Pursuant to Delaware law, the essential element of a self-protection defense is whether the defendant subjectively believed

---

[6]Petitioner also argues that counsel did not properly cross-examine Reynolds or object to "prejudicial" statements made by the prosecutor.  Petitioner does not specify which prosecutorial statements were prejudicial, thus, the court concludes that this vague claim does not warrant federal habeas relief.  As for petitioner's challenge to counsel's cross-examination of Reynolds, petitioner contends that counsel should have argued that Reynolds was the aggressor during the July 2001 incident because she admitted at trial that she wanted to stab petitioner. This claim is inter-related with petitioner's complaint that counsel did not raise the defense of self-protection, therefore, the court discusses the issue in claim eight of the text.

27

the use of force was necessary for protection. Del. Code Ann.
tit. 11, § 464(a); Tice v. State, 624 A.2d 399 (Del. 1993).
During his testimony describing the events that led to the
charges for December 2000 and July 2001, petitioner never stated
that he actually feared Reynolds or that he felt he needed to
protect himself against Reynolds. Moreover, even though
petitioner testified that Reynolds told him she wanted to stab
him during the July 2001 struggle, petitioner admitted to
initiating the physical contact with Reynolds and even escalating
that struggle. Thus, the Delaware state courts reasonably
applied Strickland in denying this claim because petitioner could
not have established a self-protection defense.

### 9. Failure to show that elements of unlawful imprisonment were lacking and failure to request a jury instruction to that effect

Count 1 of the final indictment charged petitioner with
second degree kidnaping that occurred on January 5, 2001, and
Count 4 charged petitioner with second degree kidnaping that
occurred on January 3, 2001. At the close of the trial, the
Superior Court granted defense counsel's motion for acquittal of
Count 4. With respect to Count 1, the Superior Court instructed
the jury on first and second degree unlawful imprisonment as
lesser-included offenses for second degree kidnaping. The jury
convicted petitioner of first degree unlawful imprisonment.

Petitioner contends that counsel should have requested a

28

jury instruction on lesser included offenses.  Based on the record, the court concludes this claim is factually baseless.

Petitioner also contends that counsel should have shown that the prosecution failed to establish the elements of first degree unlawful imprisonment for the events that occurred on January 5, 2001 (Count 1).  Specifically, petitioner argues that counsel did not "properly" cross-examine Reynolds about the velcro restraints used on her during the rape to show that she could have escaped.

The Superior Court denied this claim as factually baseless, finding that counsel did elicit testimony that Reynolds could have ripped the velcro restraints off with her teeth.  The Superior Court also noted that:  counsel requested lesser included instructions for both kidnaping counts (Counts 1 and 4), the trial court instructed the jury as to the definition of "restraint" as defined by statute, and the trial court charged the jury on both first and second degree unlawful imprisonment for Count 1.  Zuppo, ID No. 0101004412, at 24-25.

Although the record provided to the court does not contain defense counsel's cross-examination of Reynold's on this issue, the court concludes that the instant claim does not warrant habeas relief.  Pursuant to Delaware law, "[a] person is guilty of unlawful imprisonment in the first degree when the person knowingly and unlawfully restrains another person under circumstances which expose that person to the risk of serious

29

physical injury," and a "person is guilty of unlawful imprisonment in the second degree when the person knowingly and unlawfully restrains another person." Del. Code Ann. tit. 11, §§ 782, 781. The term "'restrain' means to restrict another person's movements intentionally in such a manner as to interfere substantially with the person's liberty . . . by confining the person . . . in the place where the restriction commences . . . without consent." Del. Code Ann. tit. 11, § 786(a). During the trial, Reynolds testified that petitioner tied her up with a rope and that she did not consent to any of the acts. Reynolds testified that petitioner restrained her hands with the velcro restraints, and petitioner also admitted to restraining Reynolds with the velcro restraints. In fact, although petitioner stated that Reynolds consented to the entire act, petitioner explained that Reynolds' arms were restrained behind her back and she was laying on them.

Viewing the total evidence presented in a light most favorable to the prosecution, even if counsel did not specifically question Reynolds about her ability to "bite off" the velcro restraints, the testimony given by both Reynolds and petitioner provided sufficient evidence for any rational trier of fact to find that the "restraint" element of first degree unlawful imprisonment was satisfied. Therefore, petitioner cannot demonstrate the requisite prejudice under Strickland.

## 10. Counsel was biased and conflicted

According to petitioner, he physically assaulted defense counsel during a conference at Gander Hill prison. Petitioner contends that the struggle biased counsel against him and prevented counsel from effectively representing him during the trial.

The Superior Court denied the instant claim as factually baseless because the opening in the plexiglass partition located in Gander Hill's interview room is too small to permit the assault as described by petitioner. The Superior Court also denied the claim after determining that petitioner was not prejudiced by counsel's performance. More specifically, the Superior Court concluded that counsel actively defended petitioner at trial and succeeded in having some serious felony charges dismissed or reduced.

Petitioner has not provided any evidence to rebut counsel's denial that such an attack ever occurred. Moreover, given counsel's successful motion for judgment of acquittal for Count 4, counsel's successful motion to sever Count 21, and the fact that the jury convicted petitioner of the lesser included offense for Count 4, petitioner has failed to demonstrate prejudice. Accordingly, the court concludes that the Delaware courts did not unreasonably apply Strickland in denying the instant claim.

31

## 11. **Failure to ask very important questions**

Petitioner contends that counsel only asked an average total of twelve questions for each of the two main defense witnesses.[7] There is no rule requiring an attorney to pose a minimum number of questions to witnesses in order to provide effective assistance. Therefore, the court concludes that petitioner's unsupported claim does not warrant federal habeas relief.

Petitioner also complains that counsel did not read the contents of Reynolds' suicide note to the jury.[8] In her suicide note, Reynolds declared her love for petitioner and stated that he was innocent. Petitioner contends that the result of his trial would have been different if counsel had read the suicide note to the jury.

---

[7] Petitioner does not identify the two main witnesses; however, reading this claim in conjunction with petitioner's Rule 61 motion, he appears to be referring to Robert Bovell and Milton Lockwood. See State v. Zuppo, ID No. 0101004412, at 26-7.

[8] Although petitioner did not raise this issue in his original Rule 61 motion, he did raise the issue in his post-conviction appeal in an addendum dated March 25, 2005. The State argues that the claim is procedurally barred because the Delaware Supreme Court would have been barred from addressing this claim pursuant to Delaware Supreme Court Rule 8. However, the Delaware Supreme Court did not apply any procedural bar to petitioner's claims, and a close review of the Delaware Supreme Court's opinion indicates that the State Supreme Court viewed this claim as alleging counsel's failure to introduce impeachment evidence. Therefore, the court concludes that the Delaware Supreme Court denied the instant claim as meritless, and federal habeas review must be afforded under the deferential standard supplied by § 2254(d)(1). Alternatively, if the claim is procedurally barred, petitioner has demonstrated neither cause nor prejudice excusing his procedural default.

32

Petitioner's speculative argument fails to overcome the strong presumption that counsel's representation was reasonable. Even though counsel did not read the suicide note to the jury, counsel did question Reynolds about her suicide attempt. Moreover, the jury knew about Reynolds' recantation and the fact that Reynolds had proclaimed petitioner's innocence to various individuals in the past.   Therefore, the contents of Reynolds' suicide note constituted cumulative evidence, and petitioner cannot demonstrate prejudice stemming from counsel's failure to introduce that evidence.   Accordingly, the court concludes that the Delaware Supreme Court's denial of this claim does not warrant habeas relief.

Petitioner also complains that counsel failed to question Reynolds about the length of the rope.   (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 12)   The Superior Court denied this claim after determining that petitioner was not prejudiced by counsel's decision to not ask about the rope.   The Superior Court explained that questions about the rope would not have "significantly assisted the defense regarding Reynolds' credibility"; in fact, such questions could have highlighted Reynolds' testimony about having a rope around her neck.   The Superior Court also noted that determining the questions posed to witnesses is part of counsel's trial strategy.   Zuppo, ID No. 0101004412, at 25-6.

33

After reviewing the record, the court agrees with the Superior Court's determination that questions about the rope may have brought further attention to the details of petitioner's sexual assault on Reynolds. Additionally, the rope was admitted into evidence, and the jury was able to evaluate whether the rope could or could not have been used in the manner described by Reynolds. Moreover, petitioner's specious arguments do not rebut the strong presumption that counsel's decision was part of his trial strategy, nor do they demonstrate that petitioner was prejudiced by counsel's performance. Accordingly, the court concludes that the Delaware courts did not unreasonably apply Strickland in denying this claim.

## 12.  **Failure to submit evidence to impeach**

Petitioner argues that counsel failed to submit the following impeachment evidence: two tapes of Reynolds taken in January and July 2001 that proved petitioner's innocence; evidence that the State paid Reynolds $25,000 to say what the prosecution wanted; and that the State threatened to incarcerate Reynolds for lying. (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 12-13) Petitioner contends that this evidence would have demonstrated discrepancies in Reynolds' testimony.

Reynolds testified that the version of the story she was telling at the trial differed from the various stories she told

34

the police, medical personnel at the hospital, and various
defense attorneys. Based on that admission, the Superior Court
determined that the impeachment evidence in question would have
been cumulative and, therefore, petitioner could not demonstrate
prejudice stemming from counsel's alleged failure to submit such
evidence.

Here, petitioner's habeas application fails to assert
concrete examples of prejudice stemming from counsel's failure to
introduce the cumulative evidence. Accordingly, the court
concludes that the instant claim does not warrant habeas relief.

## 13. Failure to timely object or request a jury instruction regarding prejudicial evidence, statements, etc.

Petitioner contends that his Rule 61 motion listed fourteen
separate occasions during trial when counsel should have objected
to the testimony. (D.I. 5, Appellant's Op. Br. in Zuppo v.
State, No.87,2005, at 13-4) However, petitioner fails to provide
concrete examples of prejudice. Thus, the court concludes that
this claim does not satisfy § 2254(d)(1).

## 14. Failure to argue that there was insufficient evidence to sustain petitioner's conviction

Petitioner appears to contend that, because there was no
obvious evidence of physical abuse, counsel should have argued
that there was insufficient evidence to sustain his conviction on
all the charges but second degree assault. (D.I. 19, Appellant's
Reply Br. in Zuppo v. State, No.87,2005, at 7) It is a well-

35

settled principle that, on habeas review, the court must accept a jury's factual determinations as to credibility issues and resolutions of conflicts in the evidence. See Jackson v. Virginia, 443 U.S. 307, 319, 326 (1979). During petitioner's trial, both Reynolds and petitioner gave their own differing versions of the events that led up to the charges against petitioner. By convicting petitioner of all but two of the charges,[9] the jury demonstrated that they resolved any conflicts in the testimonies against petitioner. Petitioner has not produced any clear and convincing evidence to rebut the presumption that the jury's factual determination was correct. Therefore, the court concludes that the Delaware Supreme Court's denial of the this claim does not warrant federal habeas relief.

## 15. **Failure to object to prosecutorial misconduct for introducing racial issues**

The following exchange occurred when the prosecutor questioned petitioner about his reaction to a photograph of Reynolds with three other individuals:

Petitioner: She was sitting in a bathtub with another girl in a bathtub and there was a black man with boxer shorts, and you got a view of them and then the two looking at him.

Prosecutor: And that bothered you?

Petitioner: Wanted to know actually - like I said, we

_____

[9]Several charges were nolle prossed. However, the Superior Court granted the motion to acquit for Count 4 and the jury convicted petitioner of the lesser included offense charged in Count 1.

36

decided to be married, but yes, it bothered me.

Prosecutor: And it bothered you that you saw her like that with a black man?

Petitioner: No, it was the principle that she was in the bathtub with two girls and a guy standing in front of her.

(D.I. 5, at AA58). After this exchange, the Superior Court judge requested a sidebar conference, and warned the prosecutor against injecting the issue of race into the trial. The judge then asked defense counsel if he wanted an instruction to that effect, and counsel replied no, "not at this point." Id.

In his habeas application, petitioner appears to contend that counsel should have objected to the prosecutor's statement that petitioner was bothered by seeing Reynolds pictured with an African American male. (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 14) The Superior Court denied this claim after determining that counsel's decision to forego an instruction was a reasonable strategic decision, and that the decision did not prejudice petitioner.

The trial excerpt clearly demonstrates that petitioner rebutted any inference that his problem with the photograph was due to the race of the man pictured. Therefore, petitioner cannot establish the requisite prejudice under Strickland, and the claim does not warrant habeas relief.

### 16. **Failure to ask for mistrial**

At the end of her testimony, Reynolds displayed her injured

37

hand to the jury and made a brief comment.  Both the prosecutor
and defense counsel informed the Superior Court that they
overheard Reynolds' statement, but they both told the court that
Reynolds' statement only referred to her hand injury.
Consequently, the trial court determined that Reynolds' comment
was harmless.  (D.I. 5, Appellant's Op. Br. in Zuppo v. State,
No.87,2005, at 15-17)

Petitioner contends that counsel should have moved for a
mistrial as a result of Reynold's comment to the jury.  (D.I. 5,
Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 15-17)
However, petitioner has not provided clear and convincing
evidence rebutting the two attorneys' statements that Reynolds'
comment only involved her hand injury, nor has he demonstrated
how Reynolds' comment prejudiced the result of his trial.
Therefore, the instant claim does not warrant federal habeas
relief.

## C.  Claim that counsel failed to file speedy trial motion is procedurally barred

Liberally construing the attachments to petitioner's habeas
application, petitioner appears to contend that counsel performed
deficiently by failing to file a speedy trial motion.  Petitioner
presented this claim to the Superior Court in his Rule 61 motion,
but he did not include the claim in his post-conviction appeal to
the Delaware Supreme Court.  Any attempt on petitioner's part to
obtain further state court review of the claim would be barred by

38

Delaware Superior Court Criminal Rule 61(i)(2). Thus, the claim
is exhausted but procedurally defaulted, and the court cannot
review its merits absent a showing of cause and prejudice, or a
showing that a miscarriage of justice will occur without such
review.

Petitioner's response to the State's answer fails to explain
his failure to present this claim to the Delaware Supreme Court.
In the absence of cause, the court does not need to address the
issue of prejudice. Moreover, the miscarriage of justice
exception does not excuse petitioner's procedural default because
petitioner has not presented new reliable evidence of his actual
innocence. Accordingly, the court will deny petitioner's
allegation regarding counsel's failure to file a speedy trial
motion as procedurally defaulted.

## V.  CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a
certificate of appealabilty. See Third Circuit Local Appellate
Rule 22.2. A certificate of appealability may only be issued
when a petitioner makes a "substantial showing of the denial of a
constitutional right." 28 U.S.C. § 2253(c)(2). This showing is
satisfied when the petitioner demonstrates "that reasonable
jurists would find the district court's assessment of the denial
of a constitutional claims debatable or wrong." Slack v.
McDaniel, 529 U.S. 473, 484 (2000).

For the reasons stated above, the court concludes that petitioner is not entitled to federal habeas relief. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254 will be denied.

An appropriate order will be entered.