IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTHONY ZUPPO, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 05-504-SLR |
| | ) |
| THOMAS CARROLL, | ) |
| Warden, and CARL | ) |
| C. DANBERG, Attorney | ) |
| General of the State | ) |
| of Delaware, | ) |
| | ) |
| Respondents. | ) |

---

Anthony Zuppo.  Pro se petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware
Department of Justice, Wilmington, Delaware.  Counsel for
respondents.

---

**MEMORANDUM OPINION**

Dated: October 2nd, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

Petitioner Anthony Zuppo ("petitioner") is an inmate in custody at the Delaware Correctional Institution in Smyrna, Delaware.  Before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (D.I. 2) The State has filed its answer that habeas relief is not warranted.  For the reasons that follow, petitioner's application will be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The facts of petitioner's case are as follows:

In September 2000, Wendy Reynolds and [petitioner] began dating and they moved in together quickly thereafter. According to Reynolds' testimony at trial, [petitioner] became violent and controlling. [Petitioner] would not allow her to leave the house without him, and he often referred to her derogatorily.  On one particular occasion, [petitioner] pinned her to the couch and beat her.  Reynolds considered leaving after the beating but, instead, forgave [petitioner].  Shortly thereafter, according to Reynolds, [petitioner] raped her. [Petitioner] maintains that she consented.

Reynolds attempted to move out the evening following the alleged rape but claimed [petitioner] choked her and threatened to shoot her.  Reynolds reported these incidents to the police.  The police arrested [petitioner] for Terroristic Threatening and Offensive Touching.  As a condition of [petitioner's] release on bond, a Justice of the Peace Court ordered [petitioner] to have no contact with Reynolds.

Despite the no contact stipulation, Reynolds testified at trial that [petitioner] tried contacting her at work a matter of days after his release.  Reynolds also testified that [petitioner] made a harassing phone call to her place of residence. [Petitioner] denied making the harassing phone

1

call. A Wilmington Police Officer testified that he traced
the call from Reynolds' residence to a gas station near
[petitioner's] residence.

The day after the phone call to Reynolds' residence,
Reynolds and [petitioner] attempted reconciliation.
Reynolds again moved in with [petitioner]. The police,
however, then arrested [petitioner] for violation of bail
conditions. For reasons known only to her, Reynolds posted
[petitioner's] bail and accompanied him to Pennyslvania for
one week. In Reynolds' own words, however, "the abuse
started right away." [citation omitted] Inexplicably,
Reynolds, sporting a clearly visible black eye, married
[petitioner] while in Pennsylvania.

The marriage failed to resurrect the relationship. One
evening, shortly after arriving back in Delaware,
[petitioner] and Reynolds engaged in an argument that
culminated in [petitioner] attacking Reynolds. Reynolds
claimed that she picked up a kitchen knife in self-defense.
[Petitioner] remained undeterred. He pressed on, knocked
her backwards and grabbed her wrist. [Petitioner] then tried
to rip the knife from Reynolds and in the process he cut her
hand to the bone. Finally, Reynolds called the police and
told them about everything [petitioner] had done to her.
She did so "[b]ecause [she] thought if [she] stayed much
longer that he really would kill me." [citation omitted] At
the time of trial, Reynolds' hand had been operated on
twice, and she appeared to face a serious, long-term
disability.

Zuppo v. State, 807 A.2d 545, 546-47 (Del. 2002).

In September 2001, a grand jury returned a final indictment
charging petitioner with the following twenty two offenses: (1)
second degree kidnaping occurring on or about January 5, 2001;
(2) terroristic threatening occurring on or about January 5,
2001; (3) offensive touching occurring on or about January 5,
2001; (4) second degree kidnaping occurring on or about January
3, 2001; (5) attempted first degree rape occurring on or about
January 3, 2001; (6) first degree rape occurring on or about

2

January 3, 2001; (7) third degree assault on or about December 18, 2000; (8) non-compliance with bond conditions or no-contact provisions on or about January 7, 2001; (9) non-compliance with bond conditions on or about January 9, 2001; (10) harassment on or about January 9, 2001; (11) non-compliance with bond conditions or no-contact provisions on or about March 16, 2001; (12) aggravated act of intimidation on or about March 16, 2001; (13) non-compliance with bond conditions or no-contact provisions on or about March 16 2001; (14) non-compliance with bond conditions on or about April 2, 2001; (15) aggravated act of intimidation on or about April 10, 2001; (16) aggravated act of intimidation on April 10, 2001; (17) non-compliance with bond conditions or no-contact provisions on or about April 10, 2001; (18) non-compliance with bond conditions on or about July 1, 2001; (19) second degree assault on or about July 1, 2001; (20) possession of a deadly weapon during the commission of a felony on or about July 1, 2001; (21) possession of a deadly weapon and/or ammunition by a person prohibited on or about July 1, 2001; (22) non-compliance with bond conditions or no-contact provisions between August 7, 2001 and August 11, 2001. (D.I. 19, Indictment by the Grand Jury)

The Superior Court severed Count 21 (possession of a deadly weapon and/or ammunition by a person prohibited). On the morning of trial, the State entered a nolle prosequi for three charges of

3

non-compliance with bond.  State v. Zuppo, ID No. 0101004412,
Cmm'r. Rep. and Rec., at 16 (Del. Super. Ct. Aug. 9, 2004).
In February 2002, a Delaware Superior Court jury convicted
petitioner of first degree unlawful imprisonment (lesser included
offense of second degree kidnaping - Count 1), second degree
rape, third degree assault, five counts of non-compliance with
bond, harassment, offensive touching, three counts of an
aggravated act of intimidation, and second degree assault.  The
jury found petitioner not guilty of terroristic threatening and
possession of a deadly weapon during the commission of a felony,
and the Superior Court granted defense counsel's motion for
judgment of acquittal for second degree kidnaping (Count 4).
(D.I. 19, Del. Super. Ct. Crim. Dkt. Entry #26)  The Superior
Court sentenced petitioner to an aggregate of twenty-six years,
eleven months in prison, suspended after twenty years, five
months for decreasing levels of supervision.  The Delaware
Supreme Court affirmed petitioner's convictions and sentences.
Id.

     Petitioner filed a motion for post-conviction relief
pursuant to Delaware Superior Court Rule 61 ("Rule 61 motion").
The Rule 61 motion was referred to a Superior Court Commissioner
for findings and a recommendation.  See Del. Code Ann. tit. 10, §
512(b).  In a thirty-three page Report and Recommendation, the
Commissioner concluded that petitioner's sixteen ineffective

                                4

assistance of counsel claims were meritless and his claim alleging insufficient evidence was procedurally defaulted. State v. Zuppo, ID No. 0101004412, Cmm'r. Rep. and Rec. (Del. Super. Ct. Aug. 9, 2004). The Superior Court adopted the Commissioner's Report and Recommendation and denied petitioner's Rule 61 motion. State v. Zuppo, ID No. 0101004412, Order (Del. Super. Ct. Jan. 31, 2004). The Delaware Supreme Court affirmed the Superior Court's decision. Zuppo v. State, 2005 WL 1653622 (Del. 2005).

## III. GOVERNING LEGAL PRINCIPLES

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Absent exceptional circumstances, a federal court cannot review a habeas petition unless the petitioner has exhausted all means of available relief for his claims under state law. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971). A petitioner satisfies the exhaustion requirement by invoking "one complete round of the State's established appellate review process," which involves fairly presenting the claim to the state's highest court, either on direct appeal or in a post-conviction proceeding. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); See Lambert v. Blackwell,

5

134 F.3d 506, 513 (3d Cir. 1997).

If the state's highest court adjudicated a federal habeas claim on the merits, then a federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A state court decision constitutes an adjudication on the merits for the purposes of § 2254(d) if the "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), rev'd on other grounds by Rompilla v. Beard, 545 U.S. 374 (2005). Pursuant to § 2254(d), federal habeas relief may only be granted when the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

AEDPA also requires a federal court to presume that a state court's implicit and explicit determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. 28

6

U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV.  DISCUSSION

Petitioner asserts two grounds for relief in his § 2254 application: (1) the trial court denied petitioner's request to represent himself in violation of the Sixth Amendment; and (2) defense counsel provided ineffective assistance on seventeen occasions.  (D.I. 2;  D.I. 5)

### A.  Self-representation claim

Petitioner presented his claim regarding the Superior Court's alleged violation of his right to self-representation to the Delaware Supreme Court on direct appeal.  The Delaware Supreme Court denied the claim as meritless.  Therefore, the court must review the claim under § 2254(d)(1) to determine if the Delaware Supreme Court's denial of this claim was contrary to, or an unreasonable application of, Supreme Court precedent.

The clearly established Supreme Court precedent applicable to claims involving the Sixth Amendment right to self-representation is Faretta v. California, 422 U.S. 806 (1975) and its progeny.  In Faretta, the Supreme Court held that a defendant may competently and intelligently choose to represent himself

7

even if he does not "have the skill and experience of a lawyer,"
provided that the defendant is "made aware of the dangers and
disadvantages of self-representation, so that the record will
establish that he knows what he is doing and his choice is made
with eyes open." Id. at 835. The Faretta Court explained that
the right to self-representation is not absolute, and also
explained that the right to self-representation "is not a license
to abuse the dignity of the courtroom." Id. at 834 n.46. In
Martinez v. Court of Appeal of California, Fourth Appellate
District, 528 U.S. 152, 162 (2000), the Supreme Court held that,
even when a defendant makes a clear and unequivocal request to
proceed pro se at the trial level, the "government's interest in
ensuring the integrity and efficiency of the trial at times
outweighs the defendant's interest in acting as his own lawyer."
For example, "most courts require [the defendant to make a
request to proceed pro se] in a timely manner." Id. The
Martinez Court also explained that, although the "right to defend
oneself at trial is 'fundamental' in nature, it is clear that
representation by counsel is the standard and not the exception."
Id. at 161.

Here, petitioner asked the trial court to reassign counsel
on the second day of his trial. When the trial court denied that
request, petitioner asked to proceed pro se. The trial court
informed petitioner about the risks of proceeding pro se, and

then conducted an inquiry into petitioner's reasons for seeking self-representation. During that inquiry, the prosecutor conveyed his concern that petitioner's request was untimely – one witness had already been fully questioned and another witness was near the end of cross-examination – and that permitting petitioner to represent himself would prejudice the State. The trial judge recessed and, upon reconvening, denied petitioner's request to proceed pro se. The trial judge noted that petitioner did not know the Rules of Evidence and that petitioner had only asked to represent himself after the judge denied his request for new counsel. The prosecutor asked the judge to specifically address the untimeliness of petitioner's request and the detrimental impact that granting the request would have on the proceedings. The trial judge then stated that he was also denying petitioner's request for self-representation because it was untimely. (D.I. 19, App. to Appellant's Op. Br. in Zuppo v. State, No. 208, 2002, at A-59 through A-66)

On direct appeal, petitioner argued that the Delaware Superior Court violated his right to self-representation because the "record does not reflect a clear balance by the trial court of the prejudice to the defendant versus the potential disruption of the trial." Zuppo, 807 A.2d at 548. The Delaware Supreme Court cited to Faretta and Martinez and rejected petitioner's argument, specifically noting that the "record suggests that the

9

trial judge implicitly weighed the competing interests with care." Zuppo, 807 A.2d at 548-49.

As an initial matter, the court finds that the Delaware Supreme Court's decision was not contrary to clearly established federal law because the state court correctly identified and applied Faretta and Martinez as the applicable Supreme Court precedent. See Williams, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court also concludes that the Delaware Supreme Court's decision did not involve an unreasonable application of Faretta and Martinez. First, although Faretta and Martinez require trial courts to determine that a defendant's waiver of representation is knowing and intelligent, these Supreme Court decisions do not require trial courts to explicitly detail the balancing of the government's interest in efficiency and integrity against the accused's right to self-representation when reviewing a request to proceed pro se made after the commencement of trial.[1]

---

[1]Even the Third Circuit Court of Appeals, which requires a "searching inquiry" to determine that the defendant's waiver of representation is knowingly and intelligently made, has not addressed the scope of the balancing inquiry a trial court must undertake to determine if the government's interests outweigh the defendant's interest when the defendant has requested to represent himself after the commencement of trial. See, e.g., Buhl v. Cooksey, 233 F.3d 783, 797 n.16 (3d Cir. 2000)(explaining that, "[a]fter a trial has commenced, the right of self-

10

Second, the record supports the Delaware Supreme Court's

conclusion that the trial judge implicitly balanced petitioner's

right to represent himself against the prejudice that would

result to the State if petitioner were permitted to represent

himself. At trial, petitioner argued that he wanted to proceed

pro se because his attorney had not subpoenaed all the witnesses

petitioner thought he should, and also because he and defense

counsel had experienced numerous conflicts. The prosecutor asked

the court to deny the request, specifically stating "[t]he things

I would suggest the Court should look to in exercising its

discretion, is one, whether or not his right to proceed pro se

overcomes the obvious problems we will have in switching gears to

do that and the disruption of the proceedings." (D.I. 19,

Appendix to Appellant's Op. Br. in <u>Zuppo v. State</u>, No.208,2002 at

A63) After hearing from both sides, the Superior Court judge

stated "I frankly do not think that you are making a knowing and

intelligent decision to represent yourself, and I'm inclined to

deny your request." (D.I. 19, Appendix to Appellant's Op. Br. in

<u>Zuppo v. State</u>, No.208,2002 at A65a) The judge then asked if

anyone wanted to put anything on the record, and the State

representation is curtailed, and the judge considering the motion
must weigh the prejudice to the legitimate interests of the
defendant against the potential disruption of proceedings already
in progress"); <u>Gov't of Virgin Islands v. Charles</u>, 72 F.3d 401,
404 (3d Cir. 1995).

11

explicitly mentioned that the court had greater discretion over petitioner's request to proceed pro se given the fact that the request was made afer the trial had commenced. Id. In response, the judge said that the court does have greater discretion to deny a request to proceed pro se when it occurs during the trial because it does have a tendency to disrupt proceedings. The judge specifically concluded that "in this case, I don't think you're prepared to examine witnesses, and I'm not inclined, under these circumstances on the second day of the trial, measured from when the evidence was introduced, I'm not inclined to grant your request. . . . I think it is untimely as well." Id. at A66.

Based on the foregoing, the court concludes that the Delaware Supreme Court reasonably found that the record adequately reflected "a clear and logical basis for the trial judge's reasoning." Zuppo, 807 A.2d at 549. The trial judge noted that petitioner's request was untimely, and "properly determined that [petitioner's] interest in proceeding pro se failed to outweigh the State's interest in ensuring the integrity and efficiency of the trial." Zuppo, 807 A.2d at 549. Thus, petitioner's claim regarding the violation of his right to self-representation does not warrant federal habeas relief.

## B. Ineffective assistance of counsel claims that do not warrant relief under § 2254(d)(1)

Petitioner's habeas application asserts that counsel provided ineffective assistance. However, rather than explicitly

12

explain his allegations, petitioner merely attaches copies of his
Rule 61 motion and his post-conviction appellate brief to his
application.  Reading both of those documents together, the court
concludes that petitioner's application presents a total of
seventeen ineffective assistance of counsel claims.
Specifically, petitioner contends that counsel failed to:   (1)
file a motion to suppress; (2) file a speedy trial motion; (3)
file a motion to sever the charges; (4) file a motion to compel
discovery; (5) argue that the failure to arraign petitioner
following the final indictment violated the Double Jeopardy
Clause; (6) file a motion to dismiss based on Reynolds'
recantation; (7) properly investigate the availability of
witnesses or argue the admissibility of relevant evidence; (8)
request a jury instruction on the lesser included offense of
second degree reckless endangering on the second degree assault
charge; (9) raise a self-protection defense; (10) argue that the
State did not establish the elements of unlawful imprisonment;
(11) effectively represent petitioner because of conflicts
between petitioner and counsel; (12) properly examine or cross-
examine various witnesses; (13) question Reynolds about her
suicide note or introduce certain statements made by Reynolds to
demonstrate discrepancies in her testimony; (14) object on
fourteen separate occasions at trial; (15) argue that there was
insufficient evidence to sustain his conviction; (16) ask for a

13

curative instruction after the prosecutor injected racial issues into the trial; and (17) move for a mistrial after Reynolds spoke to the jury.

Petitioner asserted a total of seventeen claims to the Superior Court in his Rule 61 motion, but only sixteen of those claims alleged ineffective assistance of counsel; the remaining claim alleged that there was insufficient evidence to sustain his conviction. The Superior Court denied the sixteen ineffective assistance of counsel claims as meritless and the remaining substantive claim as procedurally defaulted. On post-conviction appeal, petitioner presented a total of sixteen claims to the Delaware Supreme Court; he deleted the claim alleging that counsel failed to file a speedy trial motion, but he re-casted the substantive insufficient evidence claim to allege that counsel's failure to argue insufficient evidence constituted ineffective assistance. The Delaware Supreme Court determined that petitioner's sixteen ineffective assistance of counsel claims were meritless and affirmed the Superior Court's decision.[2] Therefore, the court must review the sixteen

---

[2]In affirming the Superior Court's judgment, the Delaware Supreme Court described the ineffective assistance of counsel claims as follows: (1) counsel failed to file the appropriate trial motions; (2) counsel failed to investigate, interview, and subpoena witnesses; (3) counsel failed to request jury instructions on lesser charges; (4) counsel failed to make the proper objections and raise the proper defenses; (5) counsel failed to properly cross examine the State's witnesses; (6) counsel failed to introduce impeachment evidence; (7) counsel had a conflict of interest with petitioner and demonstrated bias; and

14

exhausted and adjudicated claims under § 2254(d)(1) to determine if the Delaware Supreme Court's denials of these claims were contrary to, or an unreasonable application of, Supreme Court precedent.[3]

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by Strickland v. Washington, 466 U.S. 668 (1984) and its progeny. See Wiggins v. Smith, 539 U.S. 510 (2003). Under the first Strickland prong, a petitioner must demonstrate that "counsel's representation fell below an

_____

(8) counsel improperly permitted race to be interjected as an issue at trial. Zuppo, 2005 WL 1653622, at *1. A close reading of the Delaware Supreme Court indicates that the state supreme court condensed petitioner's sixteen claims into eight claims. For example, the claim characterized as "failing to file the appropriate trial motions" appears to include claims one, three, four, six, and seventeen presented in petitioner's habeas application; petitioner did not include claim two regarding counsel's failure to file a speedy trial motion in his post-conviction appellate brief. The claim characterized as "failing to make the proper objections and raise the proper defenses" appears to include claims five, nine, ten, fourteen, and fifteen presented in his habeas application. Thus, the court concludes that the Delaware Supreme Court adjudicated the merits of the sixteen claims presented by petitioner for federal habeas review.

If the court is mistaken, and the Delaware Supreme Court actually failed to adjudicate claims one, three through six, nine, ten, fourteen, fifteen, and seventeen, then the court must apply the pre-AEDPA standard and review the claims de novo. Holloway v. Horn, 355 F.3d 707, 718-19 (3d Cir. 2004). Nevertheless, even reviewing the claims de novo, the court would deny the claims as meritless for the same reasons expressed in the text of the opinion.

[3]However, as explained infra at 38-39, the speedy trial allegation is procedurally barred and can only be reviewed upon a showing of cause and prejudice, or if a miscarriage of justice will occur absent review.

15

objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. Strickland, 466 U.S. at 688. Under the second Strickland prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." Id. at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. See Wells v. Petsock, 941 F.2d 253, 259-260 (3d Cir. 1991); Dooley v. Petsock, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." Strickland, 466 U.S. at 689.

Here, the Superior Court and the Delaware Supreme Court correctly identified Strickland as the proper standard and analyzed all sixteen claims within its framework. Therefore, the Delaware Supreme Court's denial of petitioner's ineffective assistance of counsel claims was not contrary to Strickland. See Williams, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit

16

comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court must also determine whether the state courts' analysis of the claims constituted an unreasonable application of Strickland. The court will review each allegation in seriatim.

### 1. Motion to suppress

When the police arrested petitioner, Reynolds gave the police a clothesline, blindfold, and Velcro restraints she took from under the bed in the master bedroom of Zuppo's residence. Petitioner contends that counsel performed deficiently because he did not file a motion to suppress that property.

In petitioner's post-conviction proceeding, the Superior Court Commissioner recommended denying the instant claim because a "search and seizure conducted by a private party does not implicate the Fourth Amendment, and evidence discovered as a result of such a search is not subject to the exclusionary rule." State v. Zuppo, ID No. 0101004412, Commissioner's Rep. and Rec., at 14 (Del. Super. Ct. Aug. 9, 2004). The Superior Court adopted that recommendation, and the Delaware Supreme Court affirmed the Superior Court's denial of the claim.

The United States Supreme Court has held that the Fourth Amendment protection only proscribes "governmental action [ . . . and] is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge

17

of any governmental official." United States v. Jacobsen, 466
U.S. 109, 113 (1984). Thus, because there was no basis for
filing a motion to suppress the property supplied by Reynolds,
counsel did not provide ineffective assistance. See United
States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999)(an attorney
does not provide ineffective assistance by failing to present
meritless arguments).

## 2. Severance motion

Petitioner contends that counsel performed ineffectively by
failing to sever the charges. The Superior Court Commissioner
concluded that counsel did not provide ineffective assistance
because: (1) counsel did, in fact, request and obtain a
severance of the charge of possession of a deadly weapon by a
person prohibited; (2) the jury acquitted petitioner of some
charges and convicted him on others, thereby demonstrating that
the jury evaluated the evidence as to each charge separately; (3)
petitioner did not specify which charges should have been
included in a motion to sever; and (4) the State entered a nolle
prosequi as to the three charges of non-compliance with bond.
(D.I. 19, State v. Zuppo, ID No. 0101004412, Com'rs. Rep. and
Rec. at 16-17) The Delaware Superior Court judge adopted the
Commissioner's Report and Recommendation because "all of the
charges which were tried at trial were properly joined and that
there was no prejudice to the defendant from the joinder of those

18

which were joined at trial." State v. Zuppo, ID No. 010100441, Order, Vaughn, Judge, at 3 (Del. Super. Ct. Jan. 31, 2004). The Delaware Supreme Court affirmed the Superior Court's decision, specifically noting that all of petitioner's claims were meritless.

As an initial matter, petitioner's application fails to specify which charges should have been severed. Additionally, the record reveals that counsel did file a motion to sever Count 21 of the final indictment charging petitioner with possession of a deadly weapon and/or ammunition by a person prohibited, which the Superior Court granted. (D.I. 19, Del. Super. Ct. Dkt. at Entry 26) Therefore, the record belies petitioner's vague claim that counsel failed to object to the joinder of charges.

Moreover, whether the charges were properly joined under Delaware law is a matter of state law, and "it is not the province of a federal habeas court to reexamine state court determinations on state law issues." Estelle v. McGuire, 502 U.S. 62 (1991); see Del. Super. Ct. Crim. R. 8(a). By affirming the Superior Court's decision to deny the instant claim as meritless, the Delaware Supreme Court implicitly adopted the Superior Court's finding that all of the charges tried at trial were properly joined. An attorney does not provide ineffective assistance by failing to raise meritless arguments, therefore, petitioner cannot establish the requisite prejudice under

19

Strickland.

### 3.  **Failure to compel discovery**

Petitioner contends that counsel did not provide him with taped statements obtained during the discovery phase. As in his state post-conviction proceeding, petitioner fails to explain which statements were not provided or how his inability to listen to the tapes prejudiced him at trial. Thus, this vague claim does not warrant relief.

Petitioner also contends that counsel failed to call Reynolds' doctor as a witness to testify about the side effects Reynolds experienced while she was taking anti-depressants during January and February 2001. The Delaware state courts denied the claim after determining that petitioner did not substantiate prejudice under Strickland.

During petitioner's trial, both petitioner and Reynolds testified that the physician only wrote the note at Reynold's request. (D.I. 19, Appendix to Appellant's Op. Br. in Zuppo v. State, No. 208,2002, at A-46) Reynolds further explained that she did not even experience the side effects she described to her physician, and that she only asked her physician to write the note because she feared petitioner. (D.I. 19, "Exhibits for Rule 61 motion," at AA-13 to AA-14.)

Hence, even if Reynolds' physician had testified to writing the note, his testimony would not have rebutted Reynolds'

20

admission that she never experienced the side effects she described to the physician. Accordingly, the court concludes that the Delaware courts reasonably applied Strickland in denying the instant claim.

## 4. Failure to insist on arraignment violated the Double Jeopardy Clause

The record reveals that petitioner's first indictment was returned in March 2001, and then a re-indictment was returned in May 2001 to include new offenses. After his May 2001 arraignment, petitioner was released on bail. While out on bail, petitioner committed new offenses. Consequently, the grand jury returned a final indictment in September 2001 which included those new offenses.

Petitioner contends that counsel failed to insist on an arraignment after September 2001 and that counsel should have objected to the September 2001 "re-indictment" as violating the Double Jeopardy Clause. Petitioner's argument is unavailing, however, because the State entered a nolle prosequi on the charges from the first two indictments well before jeopardy attached. See generally (D.I. 19, Super. Ct. Dkt.); see also Serfass v. United States, 420 U.S. 377, 388 (1975). Accordingly, the state courts did not unreasonably apply Strickland in determining that petitioner was not prejudiced by counsel's failure to raise a meritless argument.

21

## 5. **Failure to file pre-trial motion to dismiss**

Petitioner contends that counsel should have filed a motion
to dismiss his case because Reynolds recanted her original
statement to the police prior to his trial. (D.I. 5, Appellant's
Op. Br. in Zuppo v. State, No.87,2005, at 8) This argument does
not merit relief because petitioner cannot satisfy the prejudice
prong of the Strickland test. First, recantation testimony is
regarded with great suspicion and, pursuant to Delaware law,
Reynolds' original statement implicating petitioner was
admissible regardless of her subsequent recantation. See Dobbert
v. Wainwright, 468 U.S. 1231, 1233 (1984); Landano v. Rafferty,
856 F.2d 569, 572 (3d Cir. 1988); Del. Code Ann. tit. 11, §
3507.  Therefore, even if counsel had filed a motion to dismiss
based on Reynolds' recantation, that motion was unlikely to
succeed.

More significantly, however, is the fact that the jury knew
about Reynold's recantation and heard the conflicting stories
told by Reynolds and petitioner and, yet, the jury decided to
convict petitioner on all but two of the charges.[4] See Bowen v.
Snyder, 1999 WL 1011972, at *7 (D. Del. Oct. 22, 1999)(citing

---

[4]The jury found petitioner not guilty of terroristic
threatening (Count 2) and possession of a deadly weapon during
the commission of a felony (Count 20). Additionally, for Count
1, the jury found petitioner guilty of first degree unlawful
imprisonment, the lesser included offense for second degree
kidnaping.

22

Jackson v. Virginia, 443 U.S. 307, 326 (1979)(On habeas review, the court must defer to the jury's resolution of conflicts in the evidence)). Accordingly, the court concludes that the Delaware courts did not unreasonably apply Strickland in determining that petitioner was not prejudiced by counsel's action.

### 6. Failure to investigate, interview, and subpoena witnesses

Petitioner contends that counsel did not investigate the witnesses who were available to testify about his relationship with Reynolds, and he also contends that the witnesses would have testified that they never saw any marks on Reynolds or signs of abuse. (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 8-9) Petitioner included two letters with his application: one letter is from the pastor who actually married petitioner and Reynolds, and the other letter is from petitioner's employer. The pastor's letter is dated May 21, 2003, and states that Reynolds did not have a black eye during the ceremony and that it did not appear that Reynolds was being forced into the marriage. (D.I. 19, Appendix to Appellant's Op. Br. in Zuppo v. State, No.87,2005, at A-21) The letter from petitioner's employer is dated August 27, 2003, stating that he interacted with petitioner and Reynolds socially on several occasions and he never saw petitioner mistreat Reynolds. (D.I. 19, Exhibits to Rule 61 motion, at AA-57)

Petitioner raised the instant claim in his post-conviction

23

proceeding, and the Superior Court denied it as meritless. Specifically, the Superior Court concluded that the prosecution's case centered on the fact that Reynolds had been abused and manipulated by petitioner, therefore, "presenting additional variations in Reynolds' statements and/or behavior would have been entirely consistent with the State's case and thus unlikely to have changed the portrayal of [petitioner] as manipulative and controlling." State v. Zuppo, ID No. 0101004412, Cmm'rs. Rec. and Rep. at 20.

As an initial matter, the record reveals that petitioner's employer did testify during petitioner's trial. Therefore, petitioner's allegation concerning counsel's failure to investigate or subpoena his employer as a witness is factually baseless.

The court also concludes that the petitioner's claim regarding counsel's failure to investigate or subpoena the pastor as a witness does not warrant federal habeas relief. A petitioner has the burden of proving specific facts to support an allegation of ineffective assistance. Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir. 1996); Wells v. Petsock, 941 F.2d 253, 259-260 (3d Cir. 1991). Additionally, to succeed on a claim alleging a failure of counsel to investigate potential witnesses, a petitioner must demonstrate how the witnesses' testimonies would have been favorable and material. See United States v.

24

Gray, 878 F.2d 702, 711 (3d Cir. 1989). In petitioner's case,

petitioner and Reynolds were married by the pastor in the State

of Pennsylvania on June 20, 2001. However, because the final

indictment did not charge petitioner with any offense that

occurred in the month of June, the pastor's potential testimony

regarding the absence of a black eye on June 20, 2001 only

pertained to the nature of petitioner's relationship with

Reynolds. The pastor's testimony would have constituted

cumulative evidence because ample evidence relating to the nature

of petitioner's relationship with Reynolds was presented to the

jury. Therefore, the court concludes that the Delaware state

courts reasonably applied Strickland in denying the instant

claim.[5]

## 7. **Failure to have jury instructed on lesser included offenses**

Petitioner appears to contend that he was entitled to have a

lesser included offense instruction for second degree reckless

endangering on the second degree assault charge because he was

---

[5]To the extent petitioner contends that counsel should have procured the testimony of witnesses other than the pastor or petitioner's employer who also would have testified as to the absence of physical signs of abuse, the court concludes that, given the prosecution's theory of petitioner's continued abuse and manipulation of Reynolds, the Delaware state courts reasonably determined that such testimony would have only provided additional variations in Reynolds' stories and would not have changed the outcome of the trial. Therefore, once again, petitioner's claim fails to satisfy the prejudice prong of Strickland.

25

found to be not guilty of possession of a deadly weapon during the commission of a felony (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 9) The Superior Court denied this claim because the facts did not provide a rational basis for such an instruction.

After reviewing the record, the court concludes that the instant claim does not warrant federal habeas relief. In Delaware, a second degree assault occurs when "[t]he person recklessly . . . causes serious physical injury to another person . . ." Del. Code Ann. tit. 11, § 612(a)(1). Second degree reckless endangering occurs when "[t]he person recklessly engages in conduct which creates a substantial risk of physical injury to anther person. . . ." Del. Code Ann. tit. 11, § 603(a)(1). The difference between the two charges stems from whether or not the victim was actually injured and the severity of the injury. In petitioner's case, Reynolds actually suffered a serious injury to her hand, thereby eliminating any rational basis for supporting an instruction on reckless endangering. Moreover, defense counsel did request a lesser-included instruction for third degree assault, which the trial court denied. See Zuppo, ID no. 0101004412, Comm. Rpt. & Rec. at 21 (Del. Super. Ct. Aug. 9, 2004). Thus, the court finds that the Delaware courts reasonably determined that petitioner failed to satisfy either prong of

26

Strickland.[6]

## 8.  **Failure to raise a self-protection defense**

Petitioner contends that counsel should have argued that petitioner acted in self-defense for the December 2000 assault charge because Reynolds testified that she followed petitioner into the living room and continued to hit him after petitioner tried to get away from her. (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 10)  Petitioner also contends that counsel should have argued that petitioner acted in self-defense for the July 2001 assault charge because Reynolds testified that she wanted to stab petitioner. The Superior Court denied these claims after determining that petitioner could not have succeeded with a self-defense claim and, therefore, counsel's decision to forego a claim of self-defense was not unreasonable or prejudicial.

Pursuant to Delaware law, the essential element of a self-protection defense is whether the defendant subjectively believed

---

[6]Petitioner also argues that counsel did not properly cross-examine Reynolds or object to "prejudicial" statements made by the prosecutor. Petitioner does not specify which prosecutorial statements were prejudicial, thus, the court concludes that this vague claim does not warrant federal habeas relief.  As for petitioner's challenge to counsel's cross-examination of Reynolds, petitioner contends that counsel should have argued that Reynolds was the aggressor during the July 2001 incident because she admitted at trial that she wanted to stab petitioner. This claim is inter-related with petitioner's complaint that counsel did not raise the defense of self-protection, therefore, the court discusses the issue in claim eight of the text.

27

the use of force was necessary for protection. Del. Code Ann. tit. 11, § 464(a); Tice v. State, 624 A.2d 399 (Del. 1993). During his testimony describing the events that led to the charges for December 2000 and July 2001, petitioner never stated that he actually feared Reynolds or that he felt he needed to protect himself against Reynolds. Moreover, even though petitioner testified that Reynolds told him she wanted to stab him during the July 2001 struggle, petitioner admitted to initiating the physical contact with Reynolds and even escalating that struggle. Thus, the Delaware state courts reasonably applied Strickland in denying this claim because petitioner could not have established a self-protection defense.

### 9. Failure to show that elements of unlawful imprisonment were lacking and failure to request a jury instruction to that effect

Count 1 of the final indictment charged petitioner with second degree kidnaping that occurred on January 5, 2001, and Count 4 charged petitioner with second degree kidnaping that occurred on January 3, 2001. At the close of the trial, the Superior Court granted defense counsel's motion for acquittal of Count 4. With respect to Count 1, the Superior Court instructed the jury on first and second degree unlawful imprisonment as lesser-included offenses for second degree kidnaping. The jury convicted petitioner of first degree unlawful imprisonment.

Petitioner contends that counsel should have requested a

28

jury instruction on lesser included offenses. Based on the record, the court concludes this claim is factually baseless.

Petitioner also contends that counsel should have shown that the prosecution failed to establish the elements of first degree unlawful imprisonment for the events that occurred on January 5, 2001 (Count 1). Specifically, petitioner argues that counsel did not "properly" cross-examine Reynolds about the velcro restraints used on her during the rape to show that she could have escaped.

The Superior Court denied this claim as factually baseless, finding that counsel did elicit testimony that Reynolds could have ripped the velcro restraints off with her teeth. The Superior Court also noted that: counsel requested lesser included instructions for both kidnaping counts (Counts 1 and 4), the trial court instructed the jury as to the definition of "restraint" as defined by statute, and the trial court charged the jury on both first and second degree unlawful imprisonment for Count 1. Zuppo, ID No. 0101004412, at 24-25.

Although the record provided to the court does not contain defense counsel's cross-examination of Reynold's on this issue, the court concludes that the instant claim does not warrant habeas relief. Pursuant to Delaware law, "[a] person is guilty of unlawful imprisonment in the first degree when the person knowingly and unlawfully restrains another person under circumstances which expose that person to the risk of serious

29

physical injury," and a "person is guilty of unlawful
imprisonment in the second degree when the person knowingly and
unlawfully restrains another person."  Del. Code Ann. tit. 11, §§
782, 781.  The term "'restrain' means to restrict another
person's movements intentionally in such a manner as to interfere
substantially with the person's liberty . . . by confining the
person . . . in the place where the restriction commences . . .
without consent."  Del. Code Ann. tit. 11, § 786(a).  During the
trial, Reynolds testified that petitioner tied her up with a rope
and that she did not consent to any of the acts.  Reynolds
testified that petitioner restrained her hands with the velcro
restraints, and petitioner also admitted to restraining Reynolds
with the velcro restraints.  In fact, although petitioner stated
that Reynolds consented to the entire act, petitioner explained
that Reynolds' arms were restrained behind her back and she was
laying on them.

Viewing the total evidence presented in a light most
favorable to the prosecution, even if counsel did not
specifically question Reynolds about her ability to "bite off"
the velcro restraints, the testimony given by both Reynolds and
petitioner provided sufficient evidence for any rational trier of
fact to find that the "restraint" element of first degree
unlawful imprisonment was satisfied.  Therefore, petitioner
cannot demonstrate the requisite prejudice under Strickland.

30

## 10. **Counsel was biased and conflicted**

According to petitioner, he physically assaulted defense counsel during a conference at Gander Hill prison. Petitioner contends that the struggle biased counsel against him and prevented counsel from effectively representing him during the trial.

The Superior Court denied the instant claim as factually baseless because the opening in the plexiglass partition located in Gander Hill's interview room is too small to permit the assault as described by petitioner. The Superior Court also denied the claim after determining that petitioner was not prejudiced by counsel's performance. More specifically, the Superior Court concluded that counsel actively defended petitioner at trial and succeeded in having some serious felony charges dismissed or reduced.

Petitioner has not provided any evidence to rebut counsel's denial that such an attack ever occurred. Moreover, given counsel's successful motion for judgment of acquittal for Count 4, counsel's successful motion to sever Count 21, and the fact that the jury convicted petitioner of the lesser included offense for Count 4, petitioner has failed to demonstrate prejudice. Accordingly, the court concludes that the Delaware courts did not unreasonably apply Strickland in denying the instant claim.

31

## 11. **Failure to ask very important questions**

Petitioner contends that counsel only asked an average total of twelve questions for each of the two main defense witnesses.[7] There is no rule requiring an attorney to pose a minimum number of questions to witnesses in order to provide effective assistance. Therefore, the court concludes that petitioner's unsupported claim does not warrant federal habeas relief.

Petitioner also complains that counsel did not read the contents of Reynolds' suicide note to the jury.[8] In her suicide note, Reynolds declared her love for petitioner and stated that he was innocent. Petitioner contends that the result of his trial would have been different if counsel had read the suicide note to the jury.

---

[7]Petitioner does not identify the two main witnesses; however, reading this claim in conjunction with petitioner's Rule 61 motion, he appears to be referring to Robert Bovell and Milton Lockwood. See State v. Zuppo, ID No. 0101004412, at 26-7.

[8]Although petitioner did not raise this issue in his original Rule 61 motion, he did raise the issue in his post-conviction appeal in an addendum dated March 25, 2005. The State argues that the claim is procedurally barred because the Delaware Supreme Court would have been barred from addressing this claim pursuant to Delaware Supreme Court Rule 8. However, the Delaware Supreme Court did not apply any procedural bar to petitioner's claims, and a close review of the Delaware Supreme Court's opinion indicates that the State Supreme Court viewed this claim as alleging counsel's failure to introduce impeachment evidence. Therefore, the court concludes that the Delaware Supreme Court denied the instant claim as meritless, and federal habeas review must be afforded under the deferential standard supplied by § 2254(d)(1). Alternatively, if the claim is procedurally barred, petitioner has demonstrated neither cause nor prejudice excusing his procedural default.

32

Petitioner's speculative argument fails to overcome the strong presumption that counsel's representation was reasonable. Even though counsel did not read the suicide note to the jury, counsel did question Reynolds about her suicide attempt. Moreover, the jury knew about Reynolds' recantation and the fact that Reynolds had proclaimed petitioner's innocence to various individuals in the past. Therefore, the contents of Reynolds' suicide note constituted cumulative evidence, and petitioner cannot demonstrate prejudice stemming from counsel's failure to introduce that evidence. Accordingly, the court concludes that the Delaware Supreme Court's denial of this claim does not warrant habeas relief.

Petitioner also complains that counsel failed to question Reynolds about the length of the rope. (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 12) The Superior Court denied this claim after determining that petitioner was not prejudiced by counsel's decision to not ask about the rope. The Superior Court explained that questions about the rope would not have "significantly assisted the defense regarding Reynolds' credibility"; in fact, such questions could have highlighted Reynolds' testimony about having a rope around her neck. The Superior Court also noted that determining the questions posed to witnesses is part of counsel's trial strategy. Zuppo, ID No. 0101004412, at 25-6.

33

After reviewing the record, the court agrees with the Superior Court's determination that questions about the rope may have brought further attention to the details of petitioner's sexual assault on Reynolds. Additionally, the rope was admitted into evidence, and the jury was able to evaluate whether the rope could or could not have been used in the manner described by Reynolds. Moreover, petitioner's specious arguments do not rebut the strong presumption that counsel's decision was part of his trial strategy, nor do they demonstrate that petitioner was prejudiced by counsel's performance. Accordingly, the court concludes that the Delaware courts did not unreasonably apply Strickland in denying this claim.

### 12. Failure to submit evidence to impeach

Petitioner argues that counsel failed to submit the following impeachment evidence: two tapes of Reynolds taken in January and July 2001 that proved petitioner's innocence; evidence that the State paid Reynolds $25,000 to say what the prosecution wanted; and that the State threatened to incarcerate Reynolds for lying. (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 12-13) Petitioner contends that this evidence would have demonstrated discrepancies in Reynolds' testimony.

Reynolds testified that the version of the story she was telling at the trial differed from the various stories she told

34

the police, medical personnel at the hospital, and various defense attorneys. Based on that admission, the Superior Court determined that the impeachment evidence in question would have been cumulative and, therefore, petitioner could not demonstrate prejudice stemming from counsel's alleged failure to submit such evidence.

Here, petitioner's habeas application fails to assert concrete examples of prejudice stemming from counsel's failure to introduce the cumulative evidence. Accordingly, the court concludes that the instant claim does not warrant habeas relief.

## 13. Failure to timely object or request a jury instruction regarding prejudicial evidence, statements, etc.

Petitioner contends that his Rule 61 motion listed fourteen separate occasions during trial when counsel should have objected to the testimony. (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 13-4) However, petitioner fails to provide concrete examples of prejudice. Thus, the court concludes that this claim does not satisfy § 2254(d)(1).

## 14. Failure to argue that there was insufficient evidence to sustain petitioner's conviction

Petitioner appears to contend that, because there was no obvious evidence of physical abuse, counsel should have argued that there was insufficient evidence to sustain his conviction on all the charges but second degree assault. (D.I. 19, Appellant's Reply Br. in Zuppo v. State, No.87,2005, at 7) It is a well-

35

settled principle that, on habeas review, the court must accept a
jury's factual determinations as to credibility issues and
resolutions of conflicts in the evidence. See Jackson v.
Virginia, 443 U.S. 307, 319, 326 (1979). During petitioner's
trial, both Reynolds and petitioner gave their own differing
versions of the events that led up to the charges against
petitioner. By convicting petitioner of all but two of the
charges,[9] the jury demonstrated that they resolved any conflicts
in the testimonies against petitioner. Petitioner has not
produced any clear and convincing evidence to rebut the
presumption that the jury's factual determination was correct.
Therefore, the court concludes that the Delaware Supreme Court's
denial of the this claim does not warrant federal habeas relief.

## 15. Failure to object to prosecutorial misconduct for introducing racial issues

The following exchange occurred when the prosecutor
questioned petitioner about his reaction to a photograph of
Reynolds with three other individuals:

> Petitioner: She was sitting in a bathtub with another girl
> in a bathtub and there was a black man with boxer shorts,
> and you got a view of them and then the two looking at him.
>
> Prosecutor: And that bothered you?
>
> Petitioner: Wanted to know actually - like I said, we

---

[9]Several charges were nolle prossed. However, the Superior
Court granted the motion to acquit for Count 4 and the jury
convicted petitioner of the lesser included offense charged in
Count 1.

36

decided to be married, but yes, it bothered me.

Prosecutor: And it bothered you that you saw her like that with a black man?

Petitioner: No, it was the principle that she was in the bathtub with two girls and a guy standing in front of her.

(D.I. 5, at AA58). After this exchange, the Superior Court judge requested a sidebar conference, and warned the prosecutor against injecting the issue of race into the trial. The judge then asked defense counsel if he wanted an instruction to that effect, and counsel replied no, "not at this point." Id.

In his habeas application, petitioner appears to contend that counsel should have objected to the prosecutor's statement that petitioner was bothered by seeing Reynolds pictured with an African American male. (D.I. 5, Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 14) The Superior Court denied this claim after determining that counsel's decision to forego an instruction was a reasonable strategic decision, and that the decision did not prejudice petitioner.

The trial excerpt clearly demonstrates that petitioner rebutted any inference that his problem with the photograph was due to the race of the man pictured. Therefore, petitioner cannot establish the requisite prejudice under Strickland, and the claim does not warrant habeas relief.

## 16. Failure to ask for mistrial

At the end of her testimony, Reynolds displayed her injured

37

hand to the jury and made a brief comment.  Both the prosecutor
and defense counsel informed the Superior Court that they
overheard Reynolds' statement, but they both told the court that
Reynolds' statement only referred to her hand injury.
Consequently, the trial court determined that Reynolds' comment
was harmless.  (D.I. 5, Appellant's Op. Br. in Zuppo v. State,
No.87,2005, at 15-17)

Petitioner contends that counsel should have moved for a
mistrial as a result of Reynold's comment to the jury.  (D.I. 5,
Appellant's Op. Br. in Zuppo v. State, No.87,2005, at 15-17)
However, petitioner has not provided clear and convincing
evidence rebutting the two attorneys' statements that Reynolds'
comment only involved her hand injury, nor has he demonstrated
how Reynolds' comment prejudiced the result of his trial.
Therefore, the instant claim does not warrant federal habeas
relief.

## C. Claim that counsel failed to file speedy trial motion is procedurally barred

Liberally construing the attachments to petitioner's habeas
application, petitioner appears to contend that counsel performed
deficiently by failing to file a speedy trial motion.  Petitioner
presented this claim to the Superior Court in his Rule 61 motion,
but he did not include the claim in his post-conviction appeal to
the Delaware Supreme Court.  Any attempt on petitioner's part to
obtain further state court review of the claim would be barred by

38

Delaware Superior Court Criminal Rule 61(i)(2). Thus, the claim is exhausted but procedurally defaulted, and the court cannot review its merits absent a showing of cause and prejudice, or a showing that a miscarriage of justice will occur without such review.

Petitioner's response to the State's answer fails to explain his failure to present this claim to the Delaware Supreme Court. In the absence of cause, the court does not need to address the issue of prejudice. Moreover, the miscarriage of justice exception does not excuse petitioner's procedural default because petitioner has not presented new reliable evidence of his actual innocence. Accordingly, the court will deny petitioner's allegation regarding counsel's failure to file a speedy trial motion as procedurally defaulted.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. See Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

39

For the reasons stated above, the court concludes that petitioner is not entitled to federal habeas relief. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI.  CONCLUSION

For the foregoing reasons, petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254 will be denied.

An appropriate order will be entered.

## Other Orders/Judgments

<u>1:05-cv-00504-SLR Zuppo v. Carroll et al</u>

### U.S. District Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from rld, entered on 10/25/2006 at 2:02 PM EDT and filed on 10/23/2006

**Case Name:**       Zuppo v. Carroll et al
**Case Number:**     <u>1:05-cv-504</u>
**Filer:**
**Document Number:** <u>38</u>

**Docket Text:**
MEMORANDUM OPINION. Signed by Judge Sue L. Robinson on 10/23/06. (rld, )

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/25/2006] [FileNumber=292665-0
] [2de37e4d73774bfc901ee0fad406cc1619d7e98db35e8d72ec4145a331ca5af8f80
a42bccf84a41fa40cc3f0a43187bddc1144b1663f05fa8dd3dbffa5934555]]

### 1:05-cv-504 Notice will be electronically mailed to:

Elizabeth Roberts McFarlan    elizabeth.mcfarlan@state.de.us,

### 1:05-cv-504 Notice will be delivered by other means to:

Anthony Zuppo
SBI #283480
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE 19977

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTHONY ZUPPO, | ) |
| Petitioner, | ) |
| v. | ) Civ. No. 05-504-SLR |
| THOMAS CARROLL,<br>Warden, and CARL<br>C. DANBERG, Attorney<br>General of the State<br>of Delaware, | ) |
| Respondents. | ) |

**ORDER**

For the reasons set forth in the memorandum opinion issued
this date, IT IS HEREBY ORDERED that:

1. Petitioner Anthony Zuppo's application for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.  (D.I. 2)

2. The court declines to issue a certificate of
appealability.

Dated: October 23, 2006

UNITED STATES DISTRICT JUDGE

## Other Orders/Judgments
<u>1:05-cv-00504-SLR Zuppo v. Carroll et al</u>

### U.S. District Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from rld, entered on 10/25/2006 at 2:04 PM EDT and filed on 10/23/2006
**Case Name:**      Zuppo v. Carroll et al
**Case Number:**    <u>1:05-cv-504</u>
**Filer:**
**WARNING: CASE CLOSED on 10/23/2006**
**Document Number:** <u>39</u>

### Docket Text:
ORDER DISMISSING application for writ of habeas corpus and DENYING writ (copy to pltf.); court declines to issue a certificate of appealability. (CASE CLOSED) Signed by Judge Sue L. Robinson on 10/23/06. (rld, )

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/25/2006] [FileNumber=292671-0
] [c6c73d8c829dd73551a6e3f60d8ae6f23458f3247e83614ad828270532decfa93f8
c87f636532054a44312bbcd5ca179247c3ae010f3324f4d3303f0f834e883]]

### 1:05-cv-504 Notice will be electronically mailed to:

Elizabeth Roberts McFarlan    elizabeth.mcfarlan@state.de.us,

### 1:05-cv-504 Notice will be delivered by other means to:

Anthony Zuppo
SBI #283480
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE 19977

$CV'05 -504 SLR$

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District of Delaware | |
|---|---|---|
| Name (under which you were convicted):    ANTHONY ZUPPO | | Docket or Case No.: |
| Place of Confinement:    D.C.C. Smyrna, DE 19977 | Prisoner No.:    283480 | |
| Petitioner (include the name under which you were convicted)    ANTHONY ZUPPO    v.    Respondent (authorized person having custody of petitioner)    WARDEN, THOMAS CARROLL | | |
| The Attorney General of the State of Delaware | | |

### PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: _____
   Superior Court of Delaware, Wilmington, DE 19801

   (b) Criminal docket or case number (if you know): __ 0101004412 _____
2. (a) Date of the judgment of conviction (if you know): Feburary, 4th 2002 _____
   (b) Date of sentencing: _____    April, 11th 2002 _____
3. Length of sentence: _____    20yrs, 5mths.
4. In this case, were you convicted on more than one count or of more than one crime? Yes ✖  No ☐
5. Identify all crimes of which you were convicted and sentenced in this case: _____
   [see attached sentencing order] _____
   _____
   _____

6. (a) What was your plea? (Check one)
   (1)  Not guilty ✖           (3)  Nolo contendere (no contest) ☐
   (2)  Guilty ☐               (4)  Insanity plea ☐

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or
   charge, what did you plead guilty to and what did you plead not guilty to? _____
   _____

**FILED**

JUL 1 8 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

(c) If you went to trial, what kind of trial did you have? (Check one)

Jury ☒        Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

Yes ☒   No ☐

8.  Did you appeal from the judgment of conviction?

Yes ☒   No ☐

9.  If you did appeal, answer the following:

(a) Name of court: Supreme Court

(b) Docket or case number (if you know): 208-2002

(c) Result: Affirmed

(d) Date of result (if you know): October, 4th 2002

(e) Citation to the case (if you know): ZUPPO v. STATE, 847 A.2d 505.

(f) Grounds raised: The trial Court's denial of the defendant's request to proceed Pro-se violated the defendant's sixth Amendment right to represent himself.

(g) Did you seek further review by a higher state court?   Yes ☐   No ☒

If yes, answer the following:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Result: _____

(4) Date of result (if you know): _____

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

(h) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐   No ☒

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

    Yes ■ No ☐

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: ____ Superior Court of Wilmington ____

        (2) Docket or case number (if you know): _____ 0101004412 _____

        (3) Date of filing (if you know): _____ September, 26th 2003 _____

        (4) Nature of the proceeding: _ Rule 61, Post-Conviction Relief _

        (5) Grounds raised: ____ *Ineffective Assistance of Counsel* ____

_____

_____

_____

_____

_____

_____

_____

_____

        (6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ☐  No ■

        (7) Result: _____

        (8) Date of result (if you know): _____

    (b) If you filed any second petition, application, or motion, give the same information:

        (1) Name of court: _____

        (2) Docket or case number (if you know): _____

        (3) Date of filing (if you know): _____

        (4) Nature of the proceeding: _____

        (5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or

motion?        Yes ☐   No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion. give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or

motion?        Yes ☐  No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your

petition, application, or motion?

(1)  First petition:       Yes ☒   No ☐

(2)  Second petition:    Yes ☐   No ☐

(3)  Third petition:      Yes ☐   No ☐

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

_____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE: Trial courts denial of the defendants request to proceed Pro-se violated the defendants Sixth Amendment right to represent himself.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

[see attached Brief & Appendix]

_____
_____
_____
_____
_____
_____

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____
_____
_____

(c) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☛ No ☐

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____
_____

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court? Yes ☐ No ☛

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Page 7

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____    ‾

_____

_____

(3) Did you receive a hearing on your motion or petition?

    Yes ☐  No ◼

(4) Did you appeal from the denial of your motion or petition?

    Yes ☐  No ◼

(5) If your answer to Question (d)(4) is "Yes." did you raise this issue in the appeal?

    Yes ☐  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

issue: __The direct appeal was affirmed by the highest state__

__court, and the petitioner had other issues to present in__

__order not to have a 2nd successive Habeas Corpus.__

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative

remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

_____

GROUND TWO: ____Ineffective Assistance of Counsel

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

__Public defender, James Bayard Jr, violated the petitioner's__

__4th, 5th, 6th, 8th, and 14th Amendment rights. The petitioner's__

__Constitutional rights were maliciously violated by the public__

__defender as well as the state!!!!!!!__

[see Post-Conviction, Opening Brief, and Exhibits for

supporting facts.]

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

_____

(c) Direct Appeal of Ground Two:

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ☒

    (2) If you did not raise this issue in your direct appeal, explain why: The Public Defender this issue is against filed the direct appeal, Ineffective Assistance of Counsel can't be raised on direct appeal.

(d) Post-Conviction Proceedings:

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        Yes ☒   No ❑

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition:   Post-Conviction Relief "Rule 61"

    Name and location of the court where the motion or petition was filed: _____

         Superior Court of Delaware, Wilmington, DE 19801

    Docket or case number (if you know): _____ 0101004412

    Date of the court's decision: _____ February, 28th 2005

    Result (attach a copy of the court's opinion or order, if available): _____ Denied

              [decision is attached]

_____

    (3) Did you receive a hearing on your motion or petition?

        Yes ❑   No ☒

    (4) Did you appeal from the denial of your motion or petition?

        Yes ☒   No ❑

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

        Yes ☒   No ❑

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: _____

         Supreme Court of Delaware, Dover, DE 19901

Docket or case number (if you know): __87-2005__

Date of the court's decision: ____July 11, 2005__

Result (attach a copy of the court's opinion or order, if available): __AFFIRMED__ —

__[see attached Order]__

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

GROUND THREE: _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c) Direct Appeal of Ground Three:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑ No ❑

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?          Yes ❑    No ❑

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____
_____
_____

(3) Did you receive a hearing on your motion or petition?

    Yes ❑    No ❑

(4) Did you appeal from the denial of your motion or petition?

    Yes ❑    No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑    No ❑

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____
_____
_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____
_____
_____
_____

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____
_____
_____

GROUND FOUR: _____

---

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ❑

    (2) If you did not raise this issue in your direct appeal, explain why: _____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a

    state trial court?      Yes ❑ No ❑

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

    (3) Did you receive a hearing on your motion or petition?

        Yes ❑   No ❑

    (4) Did you appeal from the denial of your motion or petition?

        Yes ❑   No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐ No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    Yes ☒    No ☐

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_____

_____

_____

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _____

_____

_____

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    Yes ☐    No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    Yes ☐    No ■
    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

    (a) At preliminary hearing: There was not a preliminary hearing for any
    of the charges that accured before August, 1st 2001.
    (b) At arraignment and plea: Arlene Mecler esq. Wilm. DE, then it was
    public defender James Bayard Jr. in Wilmington.
    (c) At trial: James Bayard Jr. public defender

    (d) At sentencing: James Bayard Jr. public defender

    (e) On appeal: James Bayard Jr. did the direct appeal.

    (f) In any post-conviction proceeding: Pro-se

    (g) On appeal from any ruling against you in a post-conviction proceeding: _____
                                    Pro-se

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐    No ■

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _____

_____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?   Yes ☐  No ☐

13. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*  My conviction was over a year ago from this

date. The statue of limitations was tolled by the Rule 61

in the state court on September 26, 2003, and denied on

February 28, 2005, then was also tolled by the Supreme

Court which is before the One year deadline given in 28

U.S.C. § 2244(d)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(continued...)

Therefore, petitioner asks that the Court grant the following relief: <u>Petitioner asks this</u>
<u>Honorable Court to dismiss all charges, and to be released from</u>
<u>custudy, or to have conviction remanded and held over for new trial.</u>
or any other relief to which petitioner may be entitled.

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct
and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on
_June 3, 05_____ (month, date, year).

Executed (signed) on _June 3, 05_____ (date).

Signature of Petitioner

*(...continued)

    (A) the date on which the judgment became final by the conclusion of direct review or the
    expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in
    violation of the Constitution or laws of the United States is removed, if the applicant was
    prevented from filing by such state action;

    (C) the date on which the constitutional right asserted was initially recognized by the
    Supreme Court, if the right has been newly recognized by the Supreme Court and made
    retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been
    discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral
review with respect to the pertinent judgment or claim is pending shall not be counted toward
any period of limitation under this subsection.